Imran F. Vakil, Esq. (Bar No. 248859)
    ivakil@nexiolaw.com
Randal Robinson (Bar No. 327417)
    rrobinson@nexiolaw.com
**NEXIO, PC**
18012 Cowan, Suite 200
Irvine, California 92614
Phone:      (949) 478-6830
Facsimile: (949) 478-1275
*Attorneys for Defendants No Bad Days Enterprises,*
*Inc. and Scott Sample*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVE USA LLC, a California limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>NO BAD DAYS ENTERPRISES, INCORPORATED, a California corporation; SCOTT SAMPLE, an individual; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No. 8:20-cv-02314-JLS-KES<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE COMPLAINT**<br><br><br>Date:    June 18, 2021<br>Time:    10:30 A.M.<br>Dept:    10A |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 18, 2021, at 10:30 A.M., or as soon thereafter as counsel may be heard in Courtroom 10A of the above entitled Court, located at 411 W. Fourth St., Santa Ana, California, 92701, before the Honorable Josephine L. Staton, Defendants No Bad Days Enterprises, Inc. ("NBD") and Scott Sample ("Sample") (collectively, "Defendants") will and hereby do move for an order dismissing Plaintiff Cove USA LLC's ("Plaintiff") Complaint ("Complaint") pursuant to Fed. R. Civ. Proc. 12(b)(6) and/or California Code of Civ. Proc. § 425.16, or, alternatively, striking specific portions of the Complaint pursuant to Fed. R. Civ. Proc. 12(f).

This Motion is made on the grounds that:

1.     The Complaint's Third through Sixth Causes of Action (the "State Law Claims") assert violations of California law predicated on NBD's sending of infringement notices alleging copyright and trademark infringements by Plaintiff, which are absolutely privileged under Federal and California law;

2.     The State Law Claims fail to allege proper claims under California law;

3.     The State Law Claims are barred under California's Anti-SLAPP statute, because (a) the underlying activity is protected pre-litigation correspondence and (b) Plaintiff cannot meet its burden of establishing a probability of success on the merits of these claims, due to their privileged nature and the other defects in the claims; and

4.     The Complaint improperly seeks monetary damages for the alleged violation of California's Unfair Competition Law, despite the fact that monetary damages are not permitted.

Furthermore, pursuant to California's Anti-SLAPP statute, Defendants are entitled to their reasonable attorneys' fees and costs incurred in pursuing this motion and hereby seek the same.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place telephonically on January 7 and 22, 2021, and in correspondence between the parties. *See* Declaration of Randal Robinson.

**DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

1        This Motion is based upon this Notice, the accompanying Memorandum of Points

2   and Authorities, Declaration of Randal Robinson and Request for Judicial Notice, all the

3   pleadings, files, and records in this proceeding, all other matters of which the Court may

4   take judicial notice, and any argument or evidence that may be presented to or considered

5   by the Court before its ruling.

6

7   Dated:  February 1, 2021          **NEXIO, PC**

8

9             By:   /s/ Imran F. Vakil /

10                 Imran F. Vakil

11                 *Attorneys for Defendants No Bad*

              *Days Enterprises, Inc. and Scott*

12                 *Sample*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This action represents a straightforward dispute in which Defendants followed the proper procedures to alert an online retailer that Plaintiff was infringing Defendants' intellectual property. In retribution, Plaintiff is now seeking not only declaratory judgment as to the parties' respective rights, but also asserts a number of utterly specious tort and unfair competition claims under California law, all predicated entirely on Defendants' "takedown" notices. Those claims are not only without merit, but they are also ***barred*** by California's anti-SLAPP statute and well-settled authorities in California, this district and this Circuit.

California's anti-SLAPP statute applies to claims arising from certain protected activity, including pre-litigation cease and desist and takedown notices. Because Plaintiff's claims are solely based on such activity, the burden consequently shifts to Plaintiff to establish a probability of success on its claims. But Plaintiff cannot possibly meet this burden, because each of these claims fails as a matter of law:

<u>First</u>, each of the claims is barred by California's litigation privilege, which applies to pre-litigation takedown notices and is "absolute," without exception even for allegedly "bad faith" notices.

<u>Second</u>, each of the claims is barred by the *Noerr-Pennington* doctrine, which also applies to pre-litigation takedown notices. Moreover, the "sham litigation" exception to this doctrine would only apply if Plaintiff pled "with particularity" specific facts establishing that Defendants' position cannot even be ***arguably*** warranted by existing law, a standard to which Plaintiff comes nowhere close.

<u>Third</u>, Plaintiff's interference with relations claims both fail to articulate any action by Defendants which was "independently wrongful" separate and apart from the purported interference itself, an essential requirement to these torts.

<u>Fourth</u>, Plaintiff's negligent interference claim further runs afoul of California law in that such claims cannot apply to actions between direct competitors.

**DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

Fifth, Plaintiff's interference with contract claim suffers from the simple fact that Plaintiff doesn't actually allege that its contract with Shopify was disrupted or breached.

Sixth, Plaintiff's unfair competition claim fails because it is predicated upon the other, improper tort claims. Because those fail, so too does this cause of action.

Accordingly, Plaintiff cannot possibly prevail on any of these state law causes of action, and therefore they should be stricken, both under the anti-SLAPP statute as well as Fed. R. Civ. Proc. 12(b)(6).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   No Bad Days' Registered Trademarks and Plaintiff's Use on Competing Clothing

As alleged in the Complaint, NBD and Plaintiff are business competitors that both offer beach-inspired clothing. Dkt. 1 ("Complaint") ¶ 1. NBD's clothing prominently features the phrase "NO BAD DAYS," (*Id.*) (the "Mark"), a recognizable mark for which NBD holds no less than six active Federal trademark registrations, including an incontestable registration issued in 2008 specifically covering clothing. Request for Judicial Notice ("RJC"), Ex. A.[1]

No later than October 2020, Plaintiff also began selling clothing which features the "NO BAD DAYS" Mark. Complaint ¶ 22. Plaintiff primarily sells its goods through Shopify, a third-party, e-commerce platform. Complaint ¶ 20.

On or about October 9, 2020, Defendants emailed Plaintiff, notifying Plaintiff that certain of its products were infringing NBD's Mark. Complaint ¶ 25. Plaintiff responded by rejecting Defendants' position and denying any infringement. *Id.* In light of Plaintiff's position and its refusal to voluntarily remove the infringing articles, NBD submitted notices of infringement to Shopify, alerting Shopify to the dispute. Complaint ¶¶ 24, 26. Pursuant

---

[1] Trademark Registration Nos. 3,396,343 (clothing); 5,871,273 (cups, mugs, beverage sleeves); 6,038,033 and 6,042,951 (alcoholic products); 6,058,338 (keychains); and 6,111,733 (decals).

to Shopify's terms of use, Shopify removed the accused products from its platform.
Complaint ¶¶ 26, 58-60. Shortly thereafter, on or about December 7, 2020, Plaintiff filed
this action. Dkt. 1.

**B.    Plaintiff's Complaint**

Plaintiff's complaint is styled primarily as one for declaratory judgment, directly
stemming from the parties' competing claims over Plaintiff's copyright and trademark
infringement. *See, e.g.,* Complaint ¶ 15 ("This is a declaratory judgment action for non-
infringement ….").

Notwithstanding the otherwise straightforward nature of this dispute, Plaintiff also
inexplicably tacked on various claims arising under California state law for purported
violations of California's unfair competition law, and the torts of intentional and negligent
interference with prospective economic relations and intentional interference with contract
(Plaintiff's Third through Sixth Causes of Action, collectively, the "State Law Claims").
Each of these claims is ***solely*** based on Defendants' sending of infringement notices to
Shopify. *See* Complaint ¶¶ 39, 46, 53, 60. Moreover, during the parties' meet and confer
efforts leading to this Motion, Plaintiff confirmed that the State Law Claims solely relate to
Plaintiff's relationship to Shopify, and not any alleged disruption of potential customers or
other third parties. *See* Declaration of Randal Robinson ("Robinson Decl."), Ex. A.
("During the January 7, 2021 phone call, we clarified that the relationship with which
Defendants' unlawful takedown notices interfered is that between Plaintiff and the e-
commerce platform for its primary storefront, Shopify.")

**III.   LEGAL STANDARD**

**A.    California's Anti-SLAPP Legal Standard**

California's anti-SLAPP statute provides a special motion to strike a complaint or
claim where the alleged conduct arises from activity exercising the rights of petition or free
speech. Cal. Code of Civ. Proc. ("CCP") § 425.16(b)(1); *Mindy Cosmetics, Inc. v. Dakar*,
611 F.3d 590, 595 (9th Cir. 2010) ("The statute was designed to allow courts 'to promptly

expose and dismiss meritless and harassing claims seeking to chill protected expression.'" (citation omitted)). The statute unambiguously "shall be construed broadly." *See* CCP § 425.16(a); *Mindy Cosmetics*, 611 F.3d at 595. CCP § 425.16(e) lists four categories of protected activity, including "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law…." *Id.* § 425.16(e)(2).

California's anti-SLAPP statute applies in Federal court actions when state law governs the particular claims at issue – such as the State Law Claims in the present case. *Globetrotter Software, Inc. v. Elan Computer Group, Inc*., 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) ("The *Erie* doctrine applies to pendent state law claims to the same extent it applies to state law claims before a federal court on the basis of diversity jurisdiction. Accordingly, … the anti-SLAPP statute may be applied to state law claims which, as in this case, are asserted pendent to federal question claims.") (internal citations omitted).

Courts follow a two-step process in considering an anti-SLAPP motion:

First, "'the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.' The burden is on the moving defendant to demonstrate that the actions at issue fall within the definition of furthering the defendant's right of petition or free speech regarding a public issue. The defendant's burden in this regard is only to make a *prima facie* showing of protected activity, which is 'not an onerous one.'" *Tensor Law P.C. v. Rubin*, 2:18-cv-01490-SVW-SK, 2019 U.S. Dist. LEXIS 131942, at *9-10 (C.D. Cal. Apr. 10, 2019) (*quoting Equilon Enters. v. Consumer Cause, Inc*., 29 Cal. 4th 53, 67 (2002) and *Okorie v. L.A. Unified Sch. Dist*., 14 Cal. App. 5th 574, 590 (2017)).

"Once the defendant satisfies his or her initial burden, the defendant 'faces no additional requirement of proving the plaintiff's subjective intent' and does not need to demonstrate that the plaintiff's lawsuit 'actually has had a chilling effect on the exercise of such rights.'" *Id.* (*quoting Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002)).

Second, if the defendant satisfied its initial burden, the burden shifts to the plaintiff to establish "a probability [of] prevail[ing] on the claim." CCP § 425.16(b)(1). Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the [FRCP] 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018). The plaintiff must also overcome substantive legal defenses, such as the application of the litigation privilege, to meet its burden of establishing a probability of success. *See, e.g., Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,* 47 Cal.App.4th 777, 783-785 (1996) (plaintiff could not show probability of success where the defendant's prelitigation communication was privileged, trial court therefore did not err in granting motion to strike under the anti-SLAPP statute.)

## B.    Standard for Motion to Dismiss Under Fed. R. Civ. Proc. 12(b)(6)

A motion to dismiss should be granted if, accepting the facts alleged to be true, such facts are insufficient "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citation omitted*). A pleading is insufficient "if it tenders 'naked assertion(s)' devoid of 'further factual enhancement.'" *Id.*, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). In the Ninth Circuit, the standard to be applied on a Rule 12(b)(6) motion is as follows:

> [W]e begin 'by identifying pleadings that, because they are no more than conclusions,  are not entitled to the assumption of truth.' We disregard '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ....' After eliminating such unsupported legal conclusions, we identify 'well-pleaded factual allegations,' which we assume to be true, 'and then determine whether they plausibly give rise to an entitlement to relief.' 'To survive a motion to dismiss, a complaint must

8

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face;' that is, plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Telesaurus VPC, LLC v. Power*, 623 F. 3d 998, 1003 (9th Cir. 2010), *quoting Iqbal*, 556 U.S. at 678.

## IV.   **THE NOTICES TO SHOPIFY CONCERNED PROTECTED ACTIVITY**

The State Law Claims are, as noted above, predicated solely on the notices sent by Defendants to Shopify. Statements made to enforce intellectual property rights fall squarely within the activity protected by the anti-SLAPP statute.

"Protected activity" is defined as an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue, and includes . . .any other conduct in furtherance of the exercise of the [aforementioned rights] in connection with a public issue or an issue of public interest." CCP § 425.16(e). This includes "written or oral statements . . . made in connection with an issue under consideration or review by a [] judicial body." CCP § 425.16(e)(2).

Furthermore, "the California Supreme Court has held that 'communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within' the broad ambit of and entitled to protection under § 425.16." *TP Link United States Corp. v. Careful Shopper LLC*, No. 8:19-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065, at *14-15 (C.D. Cal. Mar. 23, 2020) (*quoting Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999)). This includes statements made to third parties. *GWS Techs., Inc. v. Furth*, 2010 WL 11520562, at *2 (C.D. Cal. Mar. 25, 2010) ("A statement is made in connection with litigation . . . 'if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation.'") (*citing Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1266 (2008)).

9

**DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

1   Just last year, this very Court found that "takedown" notices issued by a trademark

2   holder to a third party retailer (Amazon.com) alleging counterfeiting was "indeed covered

3   by § 425.16." *TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *15-18 ("the

4   Court concludes that these communications are related to the substantive issues of this

5   litigation, and that the thrust or gravamen of Defendant's counterclaims is litigation

6   conduct falling within the anti-SLAPP statute. Further, the communications were clearly

7   made to a party with an interest in this litigation, as this dispute concerns the propriety of

8   activity that Amazon facilitates on its amazon.com marketplace platform.") *See also Fitbit,*

9   *Inc. v. Laguna 2, LLC,* No. 17-cv-00079-EMC, 2018 U.S. Dist. LEXIS 2402, at *14 (N.D.

10  Cal. Jan. 5, 2018) (infringement notices sent to third-party Groupon were still "reasonably

11  relevant" to the "subject matter" of the lawsuit, *i.e.*, the Fitbit products "improperly being

12  sold in the marketplace."); *Thimes Sols. v. Tp Link United States Corp.*, No. CV 19-10374

13  PA (Ex), 2020 U.S. Dist. LEXIS 138591, at *16 (C.D. Cal. June 8, 2020) (in declaratory

14  judgment action, takedown notices to Amazon.com "constitute prelitigation

15  communications that fall within California's anti-SLAPP statute protections"); *Sparrow*

16  *LLC v. Lora,* No. CV-14-1188-MWF (JCX), 2014 WL 12573525 (C.D. Cal. Dec. 4, 2014)

17  ("letters to and communications with companies doing business or contemplating business

18  with Defendants and relating to the alleged infringement of Plaintiff's intellectual property

19  that form the basis of the [] litigation, were protected activities covered by the anti-SLAPP

20  statute.").

21  Here, just as in the above cases, the State Law Claims are predicated solely on

22  allegations of intellectual property infringement to Shopify, seeking the removal of

23  infringing articles from the online retailer. It is beyond dispute that such allegations relate

24  to the "subject of [this] dispute," as the basis of the claims raised in those notices is

25  **identical** to the basis for Plaintiff's own declaratory judgment claims raised in this very

26  litigation. That Shopify temporarily removed those items, delaying the need to file

27  litigation, does not change the fact that litigation remained imminent – as aptly

28

demonstrated by the fact that ***Plaintiff itself*** filed the present action within weeks of the first notice seeking a judicial declaration regarding its infringing activities.[2]

## V.   THE STATE LAW CLAIMS FAIL AS A MATTER OF LAW

Because the underlying activity – the sending of the notices to Shopify – qualifies as "protected activity," the burden then shifts under the anti-SLAPP statute to Plaintiff to establish a probability of succeeding on these claims. Plaintiff cannot do so, as a matter of law, because the notices to Shopify are absolutely privileged and because Plaintiff's own allegations show that Plaintiff cannot establish all of the required elements of these claims.

### A.   The State Law Claims Are Absolutely Privileged Under California Law

CCP § 47(b) provides that communications made in or related to judicial proceedings are immune from tort liability. "Although originally enacted with reference to defamation, the privilege is [given a broad application and] now held applicable to any communication, whether or not it amounts to a publication, and all torts except malicious prosecution." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990) (internal citations omitted). The privilege applies to any communications "(1) made in a judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action." *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (citations omitted).

The privilege broadly applies to cease and desist letters and other litigation and pre-litigation communications. *Castaline v. Aaron Muellers Arts,* No. C 09-02543 CRB, 2010 U.S. Dist. LEXIS 13111, at *11 (N.D. Cal. Feb. 16, 2010); *Blanchard v. DirecTV, Inc*., 123 Cal. App. 4th 903, 919 (2004). California law has further expanded the privilege "to

---

[2] Indeed, Plaintiff's declaratory judgment claims are ***only*** viable if litigation was anticipated and imminent. The Declaratory Judgment Act allows courts to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201. An actual controversy exists if the declaratory action "plaintiff has a real and reasonable apprehension that he will be subject [to suit]." *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co*., 655 F.2d 938, 944 (9th Cir. 1981).

**DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

include publication to nonparties with a substantial interest in the proceeding." *Susan A. v. County of Sonoma*, 2 Cal. App. 4th 88, 94 (1991) (*citing Costa v. Superior Court*, 157 Cal. App. 3d 673, 678 (1984)).

Accordingly, "takedown" notices asserting trademark and/or copyright infringement – like the present notices to Shopify – are within the California litigation privilege and cannot, as a matter of law, support a claim for tortious interference. *See TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *23 ("the litigation privilege is intended to protect the sort of communication at issue here, the reporting of suspected wrongdoing to a party capable of halting or remedying it.") (granting anti-SLAPP motion); *Thimes Sols.*, 2020 U.S. Dist. LEXIS 138591, at *21 ("Defendants' communications to Amazon are reasonably related to this litigation and therefore fall under California's litigation privilege.") (same); *Fitbit, Inc.,* 2018 U.S. Dist. LEXIS 2402, at *27 (applying litigation privilege to infringement notice sent to third-party Groupon).

Moreover, the California litigation privilege "is absolute," and is not subject to any exception based on the alleged bad faith of the accuser. *TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *23-24; *Mansell v. Otto*, 108 Cal. App. 4th 265, 277 n.47 (2003) ("the presence or absence of malice or good or bad faith is irrelevant to the inquiry whether the litigation privilege is applicable"); *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.,* No. CV 14-3466 MMM (JPRx), 2015 U.S. Dist. LEXIS 192159, at *62 (C.D. Cal. Oct. 30, 2015) ("there is no exception to the litigation privilege for communications made in bad faith.") "Even fraudulent, deliberately false, or other types of tortious communication must be susceptible to coverage by the litigation privilege; if that were not true, the privilege would be unable to achieve its purpose of ensuring that fear of being subjected to derivative tort suits does not prevent open communication and the 'utmost freedom of access to the courts' and other channels of redress." *TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *23-24 (citation omitted).

Accordingly, Plaintiff's allegations that Defendants' actions were "anticompetitive" or "objectively baseless," in addition to being utterly meritless, are also totally irrelevant.

As in the other cases references above, Defendants' infringement notices to Shopify were absolutely privileged. And because those notices are the sole predicate for each of the State Law Claims, those claims fail as a matter of law.

**B.    The State Law Claims Are Also Barred By The *Noerr-Pennington* Doctrine**

"The *Noerr-Pennington* doctrine protects 'the right of the people . . . to petition the Government for a redress of grievances' by providing immunity from liability for petitioning conduct. 'The right of access to the courts is . . . one aspect of the right of petition.' While the *Noerr-Pennington* doctrine was developed in response to antitrust claims, courts have expanded it to other contexts." *OG Int'l, Ltd. v. Ubisoft Entm't,* No. C 11-04980 CRB, 2012 U.S. Dist. LEXIS 145408, at *5 (N.D. Cal. Oct. 9, 2012) (*quoting Sosa v. DirecTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)).

In the Ninth Circuit, "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr-Pennington* doctrine." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008); *Sosa*, 437 F.3d at 929 (activities protected by the doctrine include pre-suit cease-and-desist letters, demand letters and other efforts "to settle legal claims short of filing a lawsuit."). Furthermore, pre-suit infringement notices to third parties – such as the notices at issue here – are equally protected. *OG Int'l, Ltd.,* 2012 U.S. Dist. LEXIS 145408, at *8 ("the fact that Crave and GameStop were never sued and are non-parties to the present suit does not preclude application of *Noerr-Pennington* immunity."); *Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406 (9th Cir. 2017) (infringement takedown notice sent by Apple to Amazon.com protected by *Noerr-Pennington* immunity); *Rock River Commc'ns., Inc. v. Univ. Music Group, Inc.*, 745 F.3d 343, 351 (9th Cir. 2014) (infringement notice to accused infringer's business partners protected); *Enttech Media Grp. LLC v. Okularity, Inc.*, No. 2:20-cv-06298 RGK (Ex), 2020 U.S. Dist. LEXIS 222489 (C.D. Cal. October 2, 2020) (holding that *Noerr-Pennington* applied to takedown notice to third party Instagram).

1    The *Noerr-Pennington* doctrine prohibits a plaintiff from asserting state law tort

2  claims, including tortious interference claims based on protected activity. *Theme*

3  *Promotions, Inc.*, 546 F. 3d at 1007 ("There is no reason that *Noerr-Pennington* and

4  California privilege law cannot both apply to Theme's intentional interference claims, and

5  we hold that the district court properly considered both doctrines.").

6    During the parties' meet and confer, Plaintiff did not deny that the *Noerr-Pennington*

7  doctrine applies in this instance. *See* Robinson Decl., Ex. C. Rather, Plaintiff contends that

8  the doctrine does not bar its claims because the "sham" exception to the doctrine applies

9  here. *Id.*

10    It does not. "The Supreme Court has endorsed a two-part test for sham litigation.

11  First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could

12  reasonably expect success on the merits. Only if the challenged litigation is objectively

13  baseless may we consider the litigant's subjective motivation. The question then is

14  'whether the baseless lawsuit conceals an attempt to interfere directly with the business

15  relationships of a competitor, through the use of the governmental ***process*** – as opposed to

16  the ***outcome*** of that process – as an anticompetitive weapon." *Theme Promotions, Inc*., 546

17  F.3d at 1007 (citations omitted) (emphasis in original). Conduct does not qualify as

18  "objectively baseless" if it is even "arguably warranted by existing law or at the very least

19  [is] based on an objectively good faith argument for the extension, modification, or reversal

20  of existing law." *Prof'l Real Estate Investors v. Columbia Pictures Indus.,* 508 U.S. 49, 60

21  (1993). Further, sham litigation allegations must be "plead[ed] with particularity."

22  *Hard2Find*, 691 F. App'x at 407; *see also Toyo Tire & Rubber Co., Ltd. v. CIA Wheel*

23  *Grp.,* No. SACV 15-246-JLS (DFMx), 2015 U.S. Dist. LEXIS 98939, at *7 (C.D. Cal. July

24  8, 2015) ("In the Ninth Circuit, a plaintiff alleging the sham exception must include

25  specific allegations explaining why the exception should apply; '[c]onclusory allegations

26  are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection.'")

27  (*quoting Oregon Natural Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991)).

28

1       Plaintiff's Complaint comes nowhere close to meeting this standard. Plaintiff

2   concedes that it is using the phrase "No Bad Days" – NBD's registered trademark – on the

3   *very same products* for which NBD holds a registered trademark. This alone establishes

4   that NBD's infringement position was at a bare minimum "arguably warranted" by

5   trademark law. While Plaintiff makes certain arguments attempting to excuse its

6   infringement (such as claiming that its use was "decorative"), it fails to plead any

7   supporting facts "with particularity," much less establish that such defenses are so

8   overwhelming that NBD's position was not even "arguably warranted" by existing law.

9       Plaintiff also argues that NBD's purported lack of a copyright registration

10  demonstrates that its claims were "baseless." Complaint ¶ 28. But this ignores the fact that

11  the takedown notices alleged both copyright *and* trademark infringement, not just

12  copyright. More importantly, Plaintiff is just flat wrong on the law. Neither the Copyright

13  Act nor the Digital Millennium Copyright Act ("DMCA") requires a party to register a

14  copyright before asserting infringement in a prelitigation notice or issuing a takedown

15  notice. *Johnson v. New Destiny Christian Ctr. Church*, No. 6:17-cv-710-Orl-37DCI, 2019

16  U.S. Dist. LEXIS 33513, at *11 n.3 (M.D. Fla. Mar. 4, 2019) ("Contrary to Plaintiff's

17  argument, the DMCA does not limit the ability to submit § 512 Takedown Notifications to

18  registered copyright owners alone. Rather, registration is a precondition to filing a

19  copyright infringement *lawsuit*.") (emphasis in original). The mere fact that Defendants

20  needed to take the additional ministerial step of registering a copyright before commencing

21  their lawsuit in no way establishes that such a lawsuit would be "objectively meritless."

22      Plaintiff also alleges that Defendants' purported failure to engage in settlement

23  communications before issuing their takedown notices in some way demonstrates bad faith.

24  But this ignores that (1) Defendants *did* attempt to contact Plaintiff, and Plaintiff denied

25  Defendants' claims (Complaint ¶ 25), suggesting that further discussions would have been

26  fruitless, and (2) there is no legal obligation in any event for a party to spend time

27  negotiating with an ongoing infringer before attempting to protect its rights.

28

**DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

1
2
3
4
5

The fact that Plaintiff claims it has a defense (applicable or not, merited or not) to trademark infringement is not even close to sufficient to establishing that Defendants' disagreement with such a defense is "objectively baseless." Rather, Plaintiff's burden is to plead ***specific*** facts showing that NBD had ***no possible*** legal basis to claim infringement. That Plaintiff does not – and cannot – do.

6

7   **C.   The State Law Claims Fail To Allege Essential Elements**

8   *1.   The Complaint fails to allege essential elements of intentional*
9   *interference with prospective economic relations*

10   The elements of an intentional interference with relations claim are: "(1) an
11   economic relationship between the plaintiff and some third party, with the probability of
12   future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship;
13   (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4)
14   actual disruption of the relationship; and (5) economic harm to the plaintiff proximately
15   caused by the acts of the defendant." *Westside Center Assoc. v. Safeway Stores 23, Inc.*, 42
16   Cal. App. 4th 507, 521-22 (1996) (*citation omitted*). Moreover, the purported interference
17   must be "wrongful 'by some measure beyond the fact of the interference itself.'" *Della*
18   *Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal. 4th 376, 393 (1995). "Wrongful" in this
19   context means some conduct which is "proscribed by some constitutional, statutory,
20   regulatory, common law, or other determinable legal standard." *Korea Supply Co. v.*
21   *Lockheed Martin Corp*., 29 Cal. 4th 1134, 1159 (2003)

22   Nowhere in the Complaint does Plaintiff allege that Defendants' actions were
23   independently "wrongful," i.e., in violation of a legal standard. Plaintiff does not (and
24   cannot) allege that – separate and apart from any alleged interference – Defendants' notices
25   to Shopify violated any statute or regulation or were otherwise illegal. Indeed, quite the
26   opposite – Defendants' actions were both privileged and permitted under Federal and
27   California law in an effort to protect Defendants' rights and try to avoid the need for this
28   very litigation, as discussed above.

**DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

2.       *The Complaint fails to allege essential elements of negligent interference with prospective economic relations*

This independently wrongful requirement applies to a claim for negligent interference as well. *National Medical Transportation Network v. Deloitte & Touche*, 62 Cal.App.4th 412, 439-440 (1998). Again, however, Plaintiff does not aver ***any*** independently wrongful conduct by Defendants, a fact that is absolutely fatal to its claim.

Moreover, a claim for negligent (as distinguished from intentional) interference carries an additional requirement of pleading a legal duty of care owed to the plaintiff. However, California courts ***do not recognize*** any such legal duty where – as here – the parties are allegedly competing for the same customers (Complaint ¶ 1). *See, e.g., Stolz v. Wong Communications Limited Partnership*, 25 Cal. App. 4th 1811, 1825 (1994) ("The tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care. The complaint did not allege such a duty, nor could it, since it was plain that plaintiff and defendants were competitors") (*citation omitted*); *Cal. Expanded Metal Prods. Co. v. ClarkWestern Dietrich Bldg. Sys. LLC,* No. CV 12-10791 DDP (MRWx), 2014 U.S. Dist. LEXIS 153374, at *9 (C.D. Cal. Oct. 29, 2014) (no liability for negligent interference as a matter of law where parties were in competition); *Sierra National Ins. Holdings, Inc. v. Altus Finance, S.A.,* No. CV 01-1339 AHM, 2001 U.S. Dist. LEXIS 22301, *17 (C.D. Cal. June 20, 2001) (same; allowing parties in competition to sue one another for negligent interference "would expand the theoretical scope of this tort far beyond its sensible boundaries.")

3.       *The Complaint fails to allege essential elements of intentional interference with a contractual relationship*

The elements of a claim for intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this

contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998).

The Complaint fails to actually allege these essential elements, however. More specifically, nowhere does Plaintiff assert any "actual breach or disruption of the contractual relationship" between itself and Shopify, nor any "resulting damage." *Id.* The only contract referenced in the Complaint is Shopify's terms and conditions. Complaint ¶ 58. Plaintiff does not identify any aspect of this contract which was actually breached or disrupted, though, either by itself or by Shopify. Plaintiff alleges that its products were removed ***pursuant to*** this contract but does not (and presumably cannot) allege that this removal constituted a breach. Nor does Plaintiff allege that the contract was disrupted, i.e. that Plaintiff's performance under the contract was "made more costly or more burdensome." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1129 (1990). Plaintiff's obligation – to refrain from selling infringing materials on the platform – remained exactly the same before and after Defendants sent their infringement notice.

### 4.   *The Complaint fails to allege a violation of California's Unfair Competition Law*

To state a claim for unfair competition pursuant to California Business and Professions Code § 17200, a "plaintiff must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)." *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007) (citation omitted).

The Complaint fails to satisfy any of these three criteria:

First, for the reasons set forth above, the Complaint fails to establish that Defendants' sending of the infringement notice to Shopify was "unlawful." The action was privileged and did not violate any law, statutory or common.

**DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

Second, Defendants' actions were not unfair. "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Nowhere does the Complaint plead that the sending of a notice seeking to preserve and protect a party's intellectual property rights – an action which is permitted under California and Federal law – constituted or is comparable to a violation of antitrust laws, simply because the action was directed against a competitor. Indeed, the very fact that the parties ***are*** competitors is what increases the likelihood of consumer confusion and supports the need for NBD to act to protect its Mark. Were it otherwise, every cease and desist letter and every attempt by any trademark holder to protect itself would constitute a violation of §17200.

Third, in order to state a claim under the "fraudulent" prong, a party must plead that the defendant's "allegedly fraudulent business practice is one in which 'members of the public are likely to be deceived.'" *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 952 (S.D. Cal. 2016) (citation omitted). The Complaint fails to plead that Defendants committed any "fraudulent" activities, much less that they did so to any members of the public.

### D.      The State Law Claims Are Preempted By The DMCA

Plaintiff also alleges that the notices to Shopify constituted takedown notices made pursuant to the Digital Millennium Copyright Act ("DMCA"). Complaint ¶ 28. However, the DMCA expressly preempts any state law interference claim based upon a DMCA takedown notice. *See Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1205-1206 (N.D. Cal. 2004); *Lenz v. Universal Music Corp.*, No. C 07-03783 JF, 2008 U.S. Dist.

LEXIS 44549, at *4 (N.D. Cal. Apr. 8, 2008). Accordingly, Plaintiff's own allegations render its claims preempted and subject to dismissal.

## VI.  THE COMPLAINT IMPROPERLY SEEKS MONETARY DAMAGES FOR VIOLATION OF THE UCL

Fed. R. Civ. Proc. 12(f) allows the courts to strike redundant, immaterial, impertinent or scandalous matter from a complaint. A court may strike damages that are not recoverable as a matter of law. *See Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n.34 (C.D. Cal. 1996).

The Complaint improperly seeks both disgorgement of profits and damages for Defendants' alleged violation of the UCL. Complaint ¶ 42; Prayer for Relief ¶¶ D.1, 2 (reference to "unfair competition"), 3. Even if that cause of action were proper – which, as explained above, it is not – monetary damages other than restitution (which is not applicable here)[3] are not a permissible remedy under the UCL. *Korea Supply Co.*, 29 Cal. 4th at 1146-47. Accordingly, the request for such remedies must be stricken. *See Napolean Banks v. GMAC Mortg. Corp.*, No. CV 04-02477 LGB (AJWx), 2004 U.S. Dist. LEXIS 32022, at *16 (C.D. Cal. Sep. 16, 2004) ("[t]his suit is an action by individual plaintiffs and therefore §17200 does not provide relief for disgorgement of profits or other monetary damages other than restitution.") (granting motion to strike request for monetary damages under UCL).

## VII.  PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND

Although a motion to dismiss should often be granted with leave to amend pursuant to Fed. R. Civ. P. 15(a), that is not the case where – as here – the Complaint fails because the claims are fundamentally barred by law. Specifically, because the sole predicate for

---

[3] Restitution is defined as an order "compelling a Section 17200 defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken." *Kraus v. Trinity Management Services, Inc.*, 23 Cal. 4th 116, 137-38 (2000). Here, no money or property was allegedly given to Defendants by Plaintiff.

each of the State Law Claims (the sending of the infringement notices to Shopify) is protected under the California litigation privilege and the *Noerr-Pennington* doctrine; because there is no independently "wrongful" action which would support an interference tort claim; because Plaintiff admits that the parties are direct competitors and thus Defendants could not have a legal duty towards Plaintiff; and because Plaintiff does not plead any disruption in the contract between itself and Shopify, none of the claims are permitted *as a matter of law*. Under these circumstances, no leave to amend need be given. *See TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *25 (granting motion t strike counterclaims without leave to amend); *Grant & Eisenhofer, P.A. v. Brown*, No. CV175968PSGPJWX, 2017 U.S. Dist. LEXIS 204184, at *9 (C.D. Cal. Dec. 6, 2017).

## VIII. <u>DEFENDANTS ARE ENTITLED TO RECOVER ATTORNEYS' FEES AND COSTS ASSOCIATED WITH THIS MOTION UNDER THE ANTI-SLAPP STATUTE</u>

Under California law, "a prevailing defendant on a special motion to strike ***shall*** be entitled to recover his or her attorney's fees and costs." Cal. Code Civ. Proc. § 425.16(c)(1) (emphasis added). "An award of attorney's fees and costs to a successful anti-SLAPP movant is mandatory." *Kearny v. Foley & Lardner LLP, et al.,* 553 F. Supp. 2d 1178, 1181 (S.D. Cal. 2008). The anti-SLAPP statute's fee-shifting provision equally applies in Federal courts. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999).

Because Plaintiff's State Law Claims arise from protected activity and Plaintiff does not – and cannot – demonstrate a probability of success on the merits of these claims, Defendants should be awarded their attorneys' fees and costs associated with bringing this anti-SLAPP motion to strike. Defendants respectfully request that, should the Court grant this motion to strike, Defendants be given an opportunity to bring a motion seeking their attorneys' fees and costs under CCP § 425.16. *TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *26 (granting motion for fees under anti-SLAPP motion; "TP Link

may seek those fees in a properly noticed motion, filed in accord with this Court's procedures.")

## IX. **CONCLUSION**

For the reasons set forth above, Defendants respectfully submit that this Motion should be granted, and the Third through Sixth Causes of Action be dismissed in their entirety, without leave to amend, pursuant to Fed. R. Civ. Proc. 12(b)(6) and CCP § 425.16, and that Defendants be awarded their reasonable attorneys' fees and costs associated with bringing this Motion. If the Court is not inclined to dismiss the Third Cause of Action in its entirety, Defendants also respectfully submit that paragraph 42 and subparagraphs D.1, 2 (reference to "unfair competition"), and 3 of the Prayer for Relief should be stricken.

Dated: February 1, 2021                    **NEXIO, PC**

By: ___/s/ Imran F. Vakil /_____
       Imran F. Vakil
       *Attorneys for Defendants No Bad*
       *Days Enterprises, Inc. and Scott*
       *Sample*

**DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT**