Imran F. Vakil, Esq. (Bar No. 248859)
    ivakil@nexiolaw.com
Randal Robinson (Bar No. 327417)
    rrobinson@nexiolaw.com
**NEXIO, PC**
18012 Cowan, Suite 200
Irvine, California 92614
Phone:      (949) 478-6830
Facsimile: (949) 478-1275

*Attorneys for Defendant/Counterclaimant,*
*No Bad Days Enterprises, Inc.*
*and Defendant Scott Sample*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVE USA, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>NO BAD DAYS ENTERPRISES, INC.;<br>SCOTT SAMPLE; and DOES 1-10,<br><br>      Defendants.<br><hr>NO BAD DAYS ENTERPRISES, INC.<br><br>      Counterclaimant,<br><br>v.<br><br>COVE USA, LLC; SEAN ARCHER<br>TODD; and ROES 1-10 INCLUSIVE,<br><br>      Counterdefendants. | Case No. 8:20-cv-02314-JLS-KES<br><br>**ANSWER AND COUNTERCLAIM FOR:**<br>**(1)TRADEMARK INFRINGEMENT [15 U.S.C. § 1114];**<br>**(2)FALSE DESIGNATION OF ORIGIN [15 U.S.C. § 1125];**<br>**(3)COUNTERFEITING [15 U.S.C. § 1117];**<br>**(4)COPYRIGHT INFRINGEMENT;**<br>**(5)STATUTORY UNFAIR COMPETITION [CAL. BUS. & PROF. CODE §17200]; and**<br>**(6)COMMON LAW UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

1

## ANSWER

2
On February 1, 2021, Defendants No Bad Days Enterprises, Inc. ("**NBD**") and Scott

3
Sample ("**Sample**"; NBD and Sample are collectively "**Defendants**") filed their Motion to

4
Dismiss Cove USA, LLC's ("Cove" or "Plaintiff")'s Complaint, which is set for hearing on

5
June 18, 2021. (Dkt. 16). Defendants hereby submit this answer without prejudice to Motion.

6
While the parties await the Court's order regarding the Motion to Dismiss, Defendants,

7
by and through its undersigned counsel, respectfully submit their Answer to Cove USA,

8
LLC's ("Cove") originally filed Complaint. The headings below track those used in the and

9
are for convenience only. They do not constitute any part of Defendants' Answer to the

10
Complaint or any admission by Defendants as to the truth of the matters asserted. Defendants

11
hereby submit their Answer and Affirmative Defenses in response to Cove's Complaint.

12
Defendants deny each and every allegation in the Complaint that are not expressly admitted

13
herein and further respond as follows:

14
Summary Of The Action

15
1.   Defendants admit that "Cove and No Bad Days are business competitors both offering

16
beach inspired clothing for sale" and that "[NBD] provides t-shirts, sweatshirts, hats,

17
hoodies, bags, decals, keychains, and other products featuring the [registered

18
trademark] "NO BAD DAYS." Defendants deny all other allegations and

19
characterizations.

20
2.   Denied.

21
3.   Defendants admit that Plaintiff's Complaint purports to recite an action for declaratory

22
relief. Defendants deny all other allegations and characterizations.

23
Parties

24
4.   Admit

25
5.   Admit

26
6.   Defendants admit that Sample is an individual, over the age of eighteen and a resident

27
of the County of Riverside in the State of California. Defendants deny all other

28
allegations and characterizations.

2

**ANSWER AND COUNTERCLAIM**

7. Defendants admit that Sample is an officer and director of NBD, with corresponding powers and duties arising from those roles. Defendants deny all other allegations and characterizations.

8. The allegations of Paragraph 8 of the Complaint contain legal conclusions and/or legal argument to which no responses are required. To the extent any response is required, Defendant are without information sufficient to form an opinion or belief as to the truth of these allegations, and therefore denies the same.

9. Denied.

10. Denied.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

<u>Jurisdiction and Venue</u>

15. Defendants do not dispute that this Court has subject matter jurisdiction over the claims alleged in the Complaint. Defendants deny all other allegations and characterizations.

16. Defendants do not dispute that this Court has personal jurisdiction over NBD and Sample by virtue of both Defendants' residence in the district. Defendants deny all other allegations and characterizations.

17. Defendants do not dispute that venue is proper in this Court by virtue of both Defendants' residence in the district. Defendants deny all other allegations and characterizations.

<u>Factual Background</u>

18. Defendants are without information sufficient to form an opinion or belief as to the truth of the allegations in Paragraph 18 of the Complaint, and therefore denies the same.

**ANSWER AND COUNTERCLAIM**

19. Defendants are without information sufficient to form an opinion or belief as to the truth of the allegations in Paragraph 19 of the Complaint, and therefore denies the same.

20. Defendants admit that Plaintiff maintain a store using the Shopify e-commerce platform. Defendants are without information sufficient to form an opinion or belief as to the truth of the remaining allegations in Paragraph 20 of the Complaint, and therefore denies the same.

21. Defendants admit that Plaintiff has advertised products using third-party trademarks including "RESPECT THE SEA," "ENDLESS SUMMER," "LET'S GET HAMMERED," "THE SEA WILL PROVIDE," "LOCALS ONLY," and other registered or unregistered trademarks. Based on conversations with counsel for at least two of those marks, their preliminary assessment was that such use was infringing. Defendants deny all other allegations and characterizations.

22. Denied.

23. Defendants admit that Defendants "were motivated by trips to Cabo San Lucas, Mexico, which features a 'laid back way of life,'" as the inspiration for developing the trademark NO BAD DAYS. Defendants deny all other allegations and characterizations.

24. Defendants admit that, between October and November 2020, NBD submitted three takedown claims through Shopify to have various products incorporating the registered trademark NO BAD DAYS removed from Plaintiff's website (www.coveusa.co). Defendants deny all other allegations and characterizations.

25. Defendants admit that on or around October 9, 2020, Sample emailed Plaintiff accusing various [clothing products and decals] incorporating the registered trademark NO BAD DAYS of trademark and copyright infringement. Defendants deny all other allegations and characterizations.

26. Defendants admit Plaintiff declined the offer to resolve the dispute contained in the October 2020 communication, and that the counterproposal submitted by Plaintiff – to

4

1   allow infringement to continue - was a non-starter. As a resulted of Plaintiff's refusal

2   to take down the infringing goods, NBD submitted a complaint to Shopify. Shopify,

3   after investigation within the ambit of their policies elected to take-down the goods

4   that they believed were infringing on the NO BAD DAYS trademark. NBD does not

5   control the actions of Shopify. Defendants deny all other allegations and

6   characterizations.

7  27. Defendants are without information sufficient to form an opinion or belief as to the

8   truth of the allegation that "Plaintiff is an entity in good standing with Shopify and

9   repeated claims of infringement, regardless of merit, can detrimentally affect its ability

10  to sell products in this marketplace" in Paragraph 27 of the Complaint, and therefore

11  denies the same. Defendants deny all other allegations and characterizations.

12  28. Denied.

13                First Claim for Relief

14     (Declaratory Judgement of Non-Infringement of Trademark)

15  29. Defendants incorporate by reference the answers provided to Paragraphs 1 through 28.

16  30. NBD Admits that it asserts that Plaintiff advertised, offered for sale, sold, and

17   distributed certain clothing and decals bearing the words "NO BAD DAYS" infringing

18   on NBD's registered trademarks in the same.

19  31. Denied.

20  32. Denied.

21              Second Claim for Relief

22     (Declaratory Judgement of Non-Infringement of Copyright)

23  33. Defendants incorporate by reference the answers provided to Paragraphs 1 through 32.

24  34. NBD Admits that it asserts that Plaintiff advertised, offered for sale, sold, and

25   distributed certain decals infringing on NBD's copyrights.

26  35. Denied.

27  36. Denied.

28               Third Claim for Relief

**ANSWER AND COUNTERCLAIM**

(Unfair Competition Under Cal. Bus. & Prof. Code Section 17200 et seq.)

37. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Defendants incorporate by reference the answers provided to Paragraphs 1 through 36.

38. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: The allegations of Paragraph 38 of the Complaint contain legal conclusions and/or legal argument to which no responses are required.

39. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

40. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

41. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

42. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

Fourth Claim for Relief

(Intentional Interference with Prospective Economic Relations)

43. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Defendants incorporate by reference the answers provided to Paragraphs 1 through 42.

ANSWER AND COUNTERCLAIM

44. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Defendants admit that Plaintiff maintain a store using the Shopify e-commerce platform. Defendants are without information sufficient to form an opinion or belief as to the truth of the remaining allegations in Paragraph 44 of the Complaint, and therefore denies the same.

45. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Admit.

46. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

47. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

48. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

49. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

<u>Fifth Claim for Relief</u>

(Negligent Interference with Prospective Economic Relations)

50. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Defendants incorporate by reference the answers provided to Paragraphs 1 through 49.

51. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021

7

**ANSWER AND COUNTERCLAIM**

[DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Defendants admit that Plaintiff maintain a store using the Shopify e-commerce platform. Defendants are without information sufficient to form an opinion or belief as to the truth of the remaining allegations in Paragraph 51 of the Complaint, and therefore denies the same.

52. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Admit.

53. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

54. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

55. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

56. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

<u>Sixth Claim for Relief</u>

(Intentional Interference with a Contractual Relationship)

57. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Defendants incorporate by reference the answers provided to Paragraphs 1 through 56.

58. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion,

**ANSWER AND COUNTERCLAIM**

Defendants respond: Defendants admit that Plaintiff maintain a store using the Shopify e-commerce platform. Defendants are without information sufficient to form an opinion or belief as to the truth of the remaining allegations in Paragraph 58 of the Complaint, and therefore denies the same.

59. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

60. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

61. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

62. This claim is subject to a pending motion to dismiss set for hearing on June 18, 2021 [DE 16]. To the extent a response is required during the pendency of that motion, Defendants respond: Denied.

## DEFENDANTS' AFFIRMATIVE DEFENSES

Based on the information presently available, or information believed to be available after a reasonable opportunity for further investigation and discovery, Defendants allege the following affirmative defenses, specifically reserving all rights to allege additional defenses that become known through the course of discovery:

## First Affirmative Defense

The Complaint, and each of its claims for relief, fails to state a claim against Defendants upon which relief can be granted.

## Second Affirmative Defense

The Complaint is barred, in whole or in part, because Defendants' conduct was reasonable, justified, in good faith and/or innocent.

**ANSWER AND COUNTERCLAIM**

1

**Third Affirmative Defense**

2  The Complaint is barred, in whole or in part, because Defendants' conduct falls

3  within California's litigation privilege and/or Noerr-Pennington doctrine.

**Fourth Affirmative Defense**

5  The Complaint is barred, in whole or in part, because Defendants have not acted with

6  the requisite degree of intent or fault.

**Fifth Affirmative Defense**

8  Plaintiff failed to take adequate steps to minimize, alter, reduce or otherwise diminish

9  their damages, if any, with respect to the matters alleged in the Complaint, and by reason of

10  the foregoing, Plaintiff is barred from recovery of damages.

**Sixth Affirmative Defense**

12  There are no actionable interference claims because NBD acted only to protect its

13  legitimate economic interests in its intellectual property rights, and did so in good faith.

**Seventh Affirmative Defense**

15  The Complaint is barred, in whole or in part, by the doctrine of unclean hands.

**Eighth Affirmative Defense**

17  Without admitting any truth to the allegations contained in the Complaint,

18  Defendants contend that there has been no damage in any amount, manner or at all by

19  reason of any alleged acts by Defendants.

**Ninth Affirmative Defense**

21  The complaint is barred, in whole or in part, because Plaintiff's damages, if any, are

22  vague, uncertain, imaginary, and/or speculative.

**Tenth Affirmative Defense**

24  The damage suffered by Plaintiff, if any, is partially or completely offset by the

25  damages caused to Defendants by Plaintiff's wrongful acts and/or omissions.

**Eleventh Affirmative Defense**

27  Each and all of the purported causes of action asserted in the Complaint is barred

28  because Plaintiff would be unjustly enriched if they prevailed on these causes of action.

10

**ANSWER AND COUNTERCLAIM**

### Twelfth Affirmative Defense

The Complaint, to the extent that it seeks punitive and/or statutory damages against Defendants violates Defendants' right to procedural and substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the California Constitution because, among other things, the alleged wrongful conduct at issue here is not sufficiently reprehensible to warrant any punitive damage recovery and/or any assessment of statutory damages would grossly exceed any actual damages to Plaintiff. Therefore, Plaintiff cannot recover statutory and/or punitive damages against Defendants in this case.

### Thirteenth Affirmative Defense

The Complaint, to the extent that it seeks punitive and/or statutory damages against Defendants violates Defendants' right to procedural and substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the California Constitution because, among other things, of the vagueness and uncertainty of the criteria for the imposition of punitive damages and the lack of fair notice of what conduct will result in the imposition of such damages. Therefore, Plaintiff cannot recover statutory and/or punitive damages against Defendants in this case.

### Fourteenth Affirmative Defense

Plaintiff's claims for injunctive relief are barred because Plaintiff cannot show that they will suffer any irreparable harm from Defendants' actions.

### Fifteenth Affirmative Defense

The alleged injury or damage suffered by Plaintiff, if any, would be adequately compensated by damages. Accordingly, Plaintiff have a complete and adequate remedy at law and are not entitled to seek equitable relief.

### Sixteenth Affirmative Defense

Plaintiff's claims against Defendants are barred because Plaintiff's damages, if any, were not caused by Defendants.

<u>Seventeenth Affirmative Defense</u>

The claims made in the Complaint are barred, in whole or in part, because Defendants are not liable for the acts of others over whom it has no control.

## **PRAYER FOR RELIEF (ANSWER)**

WHEREFORE, Defendants pray for the following relief:

1.  That Plaintiff take nothing by their Complaint;

2.  That Defendants be dismissed from this action with prejudice;

3.  For its costs of suit herein; and

4.  For such other and further relief as the Court may deem just and proper.

Dated:  April 27, 2021                    **NEXIO, PC**

By:  ___/s/ Imran F. Vakil /_____
     Imran F. Vakil
     *Attorneys for Defendants,*
     *No Bad Days Enterprises, Inc.*
     *and Scott Sample*

**ANSWER AND COUNTERCLAIM**

1

### **COUNTERCLAIM**

2   Counterclaimant, No Bad Days Enterprises, Inc. ("NBD" or "Counterclaimant"), by

3   and through its attorneys of record, complains against Cove USA, LLC ("Cove"), Sean

4   Archer Todd ("Todd"), and ROES 1-10 inclusive, (collectively, Cove, Todd, and ROES 1-

5   10 inclusive are "Counterdefendants") as follows:

6

7

### **JURISDICTION AND VENUE**

8   1.   This is an action primarily for Counterdefendants' intentional infringement of

9   NBD's federally registered NO BAD DAYS trademark on clothing and decals. Below is a

10   comparison of Cove's infringing t-shirt design (center of top row; dashed in red) and a

11   sampling of NBD's t-shirt designs:

12
  
13
14
15
16
17
18
  
19
20
21
22
23
24

25   2.   Further, this action also includes claims for Counterdefendants' intentional

26   infringement of NBD's copyrighted designs. Thus, NBD's primary claims arise under the

27   Lanham Act and Copyright Act.

28   3.   Accordingly, this Court has subject matter jurisdiction under 15 U.S.C. §§

13

**ANSWER AND COUNTERCLAIM**

1051 *et seq.* (the Lanham Act), 17 U.S.C. §§ 501 *et seq.* (the Copyright Act)*,* 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) and (b), and pendent jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) in that the claim arises in this Judicial District, the Counterdefendants may be found and transact business in this Judicial District, and the injury suffered by Counterclaimant took place in this Judicial District. Counterdefendants are subject to the general and specific personal jurisdiction of this Court because of their contacts with the State of California.

5.     This Court has personal jurisdiction over Counterdefendants. Amongst other things, Counterdefendants designed, sourced, imported, offered for sale, sold, distributed, and/or shipped infringing merchandise to persons within this State; engaged in acts or omissions outside of this State causing injury within this State; manufactured, sourced, imported, or distributed products used or consumed within this State in the ordinary course of trade; and/or otherwise made or established contacts with this State sufficient to permit exercise of personal jurisdiction.

**PARTIES**

6.     Counterclaimant NBD is a corporation incorporated and existing under the laws of California, with its principal place of business located at 42255 Baldaray Circle, Suite B, Temecula, California 92590.

7.     Counterdefendant Cove is a limited liability company incorporated and existing under the laws of California. NBD is informed and believes and thereon alleges that Cove's primary place of business is located at 126 Mongoose, Irvine, California 92618.

8.     Counterdefendant Todd is an individual who NBD is informed and believes and thereon alleges is a resident of Orange County, California. NBD is informed and believes and thereon alleges that Todd is an officer, director or managing agent of Cove and is the individual or one of the individuals responsible for the infringement and other tortious acts identified in these Counterclaims.

**ANSWER AND COUNTERCLAIM**

9.      ROES 1 through 10, inclusive, are unknown to NBD, who therefore sues said Counterdefendants by such fictitious names. NBD will ask leave of Court to amend this Counterclaim and insert the true names and capacities of said Counterdefendants when the same have been ascertained. NBD is informed and believes and, upon such, alleges that each of the Counterdefendants designated herein as a "ROE" is legally responsible in some manner for the events and happenings herein alleged, and that NBD's damages as alleged herein were proximately caused by such Counterdefendants.

## **FACTS COMMON TO ALL COUNTS**

### The Sample Family, NBD, and the NO BAD DAYS Mark

10.      NBD is the owner of the trademark "NO BAD DAYS," a brand which has been consistently used on clothing and gift items for over twenty years and is particularly well known and beloved in the surfing, sport fishing and vintage car communities. The mark was first used in the late 1990s by the late Thomas G. Sample, who began manufacturing a line of clothing and sun visors bearing the mark. Mr. Sample eventually passed the mark and the business down to his son, Scott Sample ("Scott"), who in turn incorporated the family business as NBD and assigned the mark and its associated goodwill to that entity.

11.      Over the past twenty-plus years, the Sample family and NBD built the mark and its recognition amongst consumers, marketing and selling millions of units of clothing and other items bearing the mark, including t-shirts, swim trunks, dresses, decals, mugs, and license plate holders. The NO BAD DAYS brand is heavily promoted on social media and has developed a loyal following amongst the relevant consuming public.

12.      Scott and his family take great pride in ensuring that their products are of premium quality and satisfy their customers. As a result of this dedication and the family's hard work, the NO BAD DAYS brand has blossomed, and has been distributed to national and regional chains including JCPenney, TJ Maxx, Marshalls, the Men's Wearhouse, and U.S. Military Base Exchange stores as well as to hundreds of independent retailers

throughout the United States (such as the California Surf Museum). NBD also sells many of its products through its website www.nobaddays.com as well as other internet channels.

13.     The Sample family received several United States Trademark Registrations stemming back as early as 1999 for (a) clothing items in international class 25 and (b) decals in international class 16. Over time, and due to the brand's success, NBD expanded the NO BAD DAYS product line to gift items and alcoholic beverages.

14.     At present, NBD holds six (6) United States Trademark Registrations, one of which – in international class 25 – is incontestable. The United States Trademark Office's TESS records of the NO BAD DAYS Registrations are attached as **Exhibit A** and incorporated herewith. Collectively these registrations are referred to as the "NO BAD DAYS Mark." A summary is set forth below:

| U.S. Registration No. (Date, and Status) | [International Class] Goods & Services | First Use in Commerce |
|---|---|---|
| 3,396,343 (Registered: 3/11/08; Incontestable) | [IC 025] Hats; Jackets; Pants; Shirts; Shorts; Sweaters; Swimsuits; T-shirts *(Note: Replacement for U.S. Registration Nos. 2,219,259 and 3,396,364, registered on 1/19/99 and 3/11/08, respectively)* | 11/26/02 |
| 5,871,273 (Registered: 10/1/19) | [IC 021] Cups and mugs; Insulating sleeve holder for bottles; Insulating sleeve holders for beverage cans. | 6/21/09 |
| 6,038,033 (Registered: 4/21/20) | [IC 033] Vodka; Whiskey; Wine. | 2/12/20 |
| 6,042,951 (Registered: 4/28/20) | [IC 032] Beer, lager. | 2/12/20 |
| 6,058,338 (Registered: 5/19/20) | [IC 014] Key chains. | 5/10/10 |

**ANSWER AND COUNTERCLAIM**

| 6,111,733 | [IC 016] Decals. | 7/1/98 |
| (Registered: 7/28/20) | *(Note: Replacement for U.S. Registration No. 3,453,878, registered on 6/24/08)* | |

15.  Additionally, NBD holds trademark registrations for NO BAD DAYS outside the United States, including without limitation, in Canada (Reg. No. TMA875736) and Australia (Reg. No.1678359).

16.  The NO BAD DAYS Mark has been in continuous use in commerce since at least the dates of first use identified in the Registrations to the present day. Registration No. 3,396,343, registered on March 11, 2008, has become incontestable within the meaning of 15 U.S.C. §1065. Likewise, the NO BAD DAYS Mark acquired common law rights.

17.  In addition, Scott's wife, Marcia Sample, designed several original graphical designs incorporating the NO BAD DAYS Mark for use on NBD's clothing and other items over the years. Several of those images were subsequently registered with the U.S. Copyright Office. NBD is the sole owner of all right, title and interest in and to the copyright of the image entitled "No Bad Days Sunset Wave" (US Copyright Reg. No. VA 2-248-307) (the "NBD Copyrighted Image").

<u>Cove and Todd's Unlawful Activities</u>

18.  In or about October 2020, NBD first learned that Cove and Todd were infringing upon the NO BAD DAYS Mark, by *inter alia*, placing the NO BAD DAYS Mark on a line of competing men's clothing ("Cove's Infringing Clothing"), which on information and belief, is of inferior quality to NBD's products.



***Representative Samples of Cove's Infringing Clothing***

17

**ANSWER AND COUNTERCLAIM**

19.     NBD also learned that Cove and Todd were infringing upon NBD's Copyrighted Image by placing a strikingly similar version of the NBD Copyrighted Image on Cove's decals (the "Infringing Decal"). In additioA comparison is shown below:

| NBD's Copyrighted Designs | Cove's Infringing Decal |
|---|---|
|  |  |

20.     The wave motif is also regularly used by NBD as in other logo and decals that NBD produces, as shown below:



21.     Cove's Infringing Clothing (as identified in paragraph 20) and Cove's Infringing Decal (as identified in paragraph 21) are hereinafter collectively referred to as "Cove's Infringing Goods", "infringing products", "infringing line", or "infringing activities."

22.     These infringing products were initially offered for sale on Cove's website located at www.coveusa.co. Cove advertised these infringing products on social media, such as Instagram and Facebook. On information and belief, NBD's NO BAD DAYS products and Cove's Infringing Goods are advertised in similar manners and are targeted toward the same buying demographic. A comparison of the advertising of NBD's products and Counterdefendants' infringing products (center; dashed in red) are shown below:

**ANSWER AND COUNTERCLAIM**

  

23.     Upon discovering Cove's infringing activities, NBD issued a complaint to both Cove and Cove's service provider – Shopify – requesting that Cove's Infringing Goods be removed from Cove's website located at www.coveusa.co. Shopify caused Cove's Infringing Goods to be delisted. Further, Shopify's November 10, 2020 email stated "[w]e have informed the merchant that the reported content must remain offline..."

24.     However, in late March 2021, NBD learned that Cove and Todd either never stopped or resumed advertising and selling Cove's Infringing Goods using four tactics:

a.     First, by hiding the sale of Cove's Infringing Goods using obscured titles such as "Mystery Tee," "Sticker Pack," and under other obscured titles so as to prevent easy discovery by NBD using search terms.

b.     Second, relisting Cove's Infringing Goods on www.coveusa.co as "new" items, when in fact they are the same infringing items delisted in late 2020.

c.     Third, by opening a second online store hosted by Shopify at www.coveusa.shop and relisting Cove's Infringing Goods on that website.

d.     Fourth, by selling Cove's Infringing Goods, either directly or indirectly downstream, through a number of third-party commercial websites.

25.     On information and belief, Shopify is the ecommerce provider for both www.coveusa.co and www.coveusa.shop. Both Counterdefendants and Shopify have the ability to control the listings on the Shopify platform. Further, on information and belief, Shopify also acts as Cove's payment processor, and has a financial interest in each sale

**ANSWER AND COUNTERCLAIM**

transacted on these websites.

26.     Further, on information and belief, Todd acts as chief executive officer of Cove. On April 14, 2021, Cove issued certain discovery responses that identify Todd as the officer solely responsible for selecting all products that are advertised, offered for sale, or sold by Cove.

27.     Thus, on information and belief, at some time in the past three years, Cove and Todd caused such infringing products to be manufactured under their control and/or direction. Thereafter Cove and Todd distributed, offered for sale, and/or sold Cove's infringing line of "NO BAD DAYS" clothing through third party distributors as well as Cove's own websites, including without limitation, www.coveusa.co and www.coveusa.shop. Attached as **Exhibit B** are sample photographs of this infringement.

28.     On information and belief, Cove's either directly, or through downstream distribution, caused the promotion, advertisement, offer for sale, sale, and distribution of infringing goods on a number of commercial websites, such as Gongchashirt.com, Karmaloop.com, ebay.com, tshirtat.com, tshirt21.com, as well as others.

29.     Cove, Todd, and those presently unidentified ROE counterdefendants working in concert with them, were undoubtedly familiar with NBD's trademark and Copyrighted Image when they elected to proceed with and then continue their infringing activities. Thus, Counterdefendants willfully and intentionally infringed the NO BAD DAYS Mark and the Copyrighted Image in reckless disregard of NBD's rights. Counterdefendants intentionally sought to mislead and deceive consumers into believing that their clothing and decals were produced by, originated from, or authorized or licensed by NBD. In fact, none of the Counterdefendants are associated with, or connected to, NBD, and at no time has NBD licensed, authorized, sponsored, endorsed, or approved of these infringing activities.

30.     Although inferior in quality, the infringing clothing sold by Counterdefendants is nevertheless similar to, and competes with, products sold by NBD, and the parties' goods are sold through overlapping channels of trade.

31.     Counterdefendants' use of confusingly similar imitations of the NO BAD

20

**ANSWER AND COUNTERCLAIM**

DAYS Mark is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that the clothing sold by Cove is manufactured by, authorized by, or in some manner associated with NBD, which it is not. The likelihood of confusion, mistake, and deception engendered by Counterdefendants' misappropriation of NBD's NO BAD DAYS Mark is causing irreparable harm to the goodwill symbolized in that Mark and the reputation of quality that it embodies.

32.     Counterdefendants' activities are likely to cause confusion before, during, and after the time of purchase, because purchasers, prospective purchasers, and others viewing Counterdefendants' infringing clothing at the point of sale or on a wearer are likely to mistakenly attribute the product to NBD. This is particularly damaging with respect to those persons who perceive a defect or lack of quality in Counterdefendants' products. By causing such a likelihood of confusion, mistake, and deception, Counterdefendants are inflicting irreparable harm to the goodwill symbolized by the NO BAD DAYS Mark and the reputation for quality that it embodies.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement, 15 U.S.C. § 1114 Against all Counterdefendants)

33.     Counterclaimant NBD incorporates here by reference the allegations in paragraphs 1 through 31 above.

34.     NBD is the legal owner of the federally registered trademarks for NO BAD DAYS as set forth in more detail in the foregoing paragraphs.

35.     The NO BAD DAYS Mark is a valid, protectable and distinctive trademark that NBD, and its predecessors in interest, continuously used to promote its goods for over twenty years. NBD is informed and believes and thereon alleges that a substantial segment of the relevant purchasing public recognizes the NO BAD DAYS Mark as coming from and/or affiliated with NBD.

36.     Counterdefendants have used marks confusingly similar to NBD's federally registered NO BAD DAYS Mark in violation of 15 U.S.C. § 1114. Counterdefendants' use

of confusingly similar imitations of the NO BAD DAYS Mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Counterdefendants' products are manufactured, produced, distributed, endorsed, sponsored, approved, or licensed by NBD, or are associated or connected with NBD. Counterclaimant is informed and believes and thereon alleges that Counterdefendants utilized the NO BAD DAYS Mark in order to create consumer confusion, and have in fact created consumer confusion, including but not limited to initial interest confusion and confusion as to an affiliation or association between NBD and Counterdefendants.

37.    At no time did Counterdefendants have the authorization, legal right, or consent to engage in such activities in disregard of NBD's rights in the NO BAD DAYS Mark.

38.    Counterdefendants' actions complained of herein were intentional, willful, and malicious with a deliberate intent to trade on the goodwill associated with NBD's federally registered NO BAD DAYS Mark.

39.    Counterclaimant is informed and believes and thereon alleges that as a proximate result of the unfair advantage accruing to Counterdefendants' business from deceptively trading on NBD's advertising, sales, and consumer recognition, Counterdefendants have made substantial sales and profits in amounts to be established according to proof.

40.    As a proximate result of the unfair advantage accruing to Counterdefendants' business from deceptively trading on NBD's advertising, sales, and consumer recognition, NBD has been damaged and deprived of substantial sales and has been deprived of the value of its trademark as a commercial asset, in amounts to be established according to proof.

41.    NBD is informed and believes, and thereon alleges that, unless restrained by the Court, Counterdefendants will continue to infringe NBD's trademark, thus engendering a multiplicity of judicial proceedings, and that pecuniary compensation will not afford NBD adequate relief for the damage to its trademark in the public perception. Further,

**ANSWER AND COUNTERCLAIM**

NBD is informed and believes and thereon alleges that in the absence of injunctive relief, customers are likely to continue to be mistaken or deceived as to the true source, origin, sponsorship, and affiliation of Counterdefendants and their goods.

42.     NBD is informed and believes and thereon alleges that Counterdefendants' acts were committed, and continue to be committed, with actual notice of NBD's exclusive rights and with an intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with NBD and its products. At a minimum, NBD is entitled to injunctive relief and to recover Counterdefendants' profits, actual damages, enhanced profits, and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114 and 1116. Moreover, given Counterdefendants' intentional acts, NBD is entitled to recover three times its actual damages or three times Counterdefendants' profits, whichever is greater, together with NBD's attorneys' fees pursuant to 15 U.S.C. § 1117. In addition, pursuant to 15 U.S.C. § 1118, Counterclaimant is entitled to an order requiring destruction of all infringing materials in Counterdefendants' possession.

## SECOND CLAIM FOR RELIEF

### (False Designation of Origin, 15 U.S.C. § 1125)

43.     Counterclaimant NBD incorporates here by reference the allegations in paragraphs 1 through 42 above.

44.     Each of the Counterdefendants caused to enter into interstate commerce infringing products that Counterdefendants marketed through use of marks that are confusingly similar to the unregistered variants of the NO BAD DAYS Mark. NBD is informed and believe and thereon allege that unregistered variants of the NO BAD DAYS Mark have become associated in the minds of consumers with NBD and its NO BAD DAYS goods.

45.     The marketing and sale of Counterdefendants' infringing goods as described above constitutes false designation of origin which is likely to cause confusion and mistake and to deceive consumers as to the source or origin of such goods or sponsorship or

23

1   approval of such goods by NBD.

2       46.    NBD is informed and believes and thereon alleges that as a proximate result of

3   Counterdefendants' false designation of origin, each of the Counterdefendants stand to

4   make substantial sales and profits in amounts to be established according to proof.

5       47.    NBD is informed and believe and thereon allege that as a proximate result of

6   Counterdefendants' false designation of the origin of their goods and services, NBD has

7   been damaged and deprived of substantial sales of its goods and has been deprived of the

8   value of its NO BAD DAYS Mark as a commercial asset, in amounts to be established

9   according to proof.

10      48.    NBD is informed and believes and thereon alleges that unless restrained by

11  this Court, each of the Counterdefendants will continue to falsely designate the origin of

12  their goods, causing irreparable damage to NBD and engendering a multiplicity of lawsuits.

13  Pecuniary compensation will not afford NBD adequate relief for its resulting damages.

14  Further, NBD is informed and believes and thereon alleges that in the absence of injunctive

15  relief, customers are likely to continue being mistaken or deceived as to the true source,

16  origin, sponsorship, and affiliation of Counterdefendants' goods and services.

17      49.    NBD is informed and believes and thereon alleges that each of the

18  Counterdefendants' acts was committed, and continues to be committed, with actual notice

19  of NBD's exclusive rights and with intent to cause confusion, to cause mistake, and/or to

20  deceive, and to cause injury to the reputation and goodwill associated with NBD and

21  genuine NO BAD DAYS products. Pursuant to 15 U.S.C. § 1117, NBD is therefore entitled

22  to recover three times its actual damages or three times each of the Counterdefendants'

23  profits, whichever is greater, together with NBD's attorneys' fees. In addition, pursuant to

24  15 U.S.C. § 1118, NBD is entitled to an order requiring destruction of all infringing

25  materials in Counterdefendants' possession.

26  ///

27  ///

28  ///

**ANSWER AND COUNTERCLAIM**

## **THIRD CLAIM FOR RELIEF**

### (Counterfeiting, 15 U.S.C. § 1116)

50.     Counterclaimant NBD incorporates here by reference the allegations in paragraphs 1 through 49 above.

51.     Counterfeiting has been recognized as a serious issue resulting in tremendous losses to American businesses. To combat counterfeits, Congress passed the "Anti-counterfeiting Consumer Protection Act of 1966" (ACPA).

52.     Counterdefendants' actions also constitute the use by Counterdefendants of one or more "counterfeit marks" as defined in 15 U.S.C. §1116(d)(1)(B).

53.     Specifically, Counterdefendants have designed, sourced, imported, offered for sale, sold, distributed, and/or shipped Infringing Decals that only identify NO BAD DAYS and do not identify any other source. Unauthorized use of a registered mark without any other source information is, by definition, counterfeiting. A reproduction of Cove's Infringing Decal is shown below:



54.     Each of the Counterdefendants' unauthorized uses of the NO BAD DAYS Mark on counterfeit products that they have distributed has caused and is causing consumer confusion about the source and sponsorship of these counterfeit goods.

55.     Each of the Counterdefendants' sales of these counterfeit products has caused considerable damage to the goodwill of NBD and diminished the brand recognition of the NO BAD DAYS Mark.

56.     The sales of these counterfeit products by Counterdefendants have further resulted in lost profits to NBD and resulted in a windfall for Counterdefendants.

**ANSWER AND COUNTERCLAIM**

57.     NBD reserves the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(1) and/or (2).

58.     Because of the willful nature of the counterfeiting, NBD is entitled to an award of statutory damages of up to $2,000,000 per mark infringed under 15 U.S.C. § 1117(c)(2).

59.     In the alternative, and at a minimum, NBD is entitled to injunctive relief and to recover Counterdefendants' profits, actual damages, enhanced profits, and treble damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1117(b).

60.     Counterdefendants' acts of direct and/or contributory counterfeiting have caused, and will continue to cause, NBD irreparable harm unless enjoined by this Court.

## FOURTH CLAIM FOR RELIEF

### (Copyright Infringement, 17 U.S.C. §501)

61.     Counterclaimant NBD incorporates here by reference the allegations in paragraphs 1 through 60 above.

62.     This claim arises under 17 U.S.C. § 501 for direct, contributory and/or vicarious infringement of registered copyright(s) as against the Counterdefendants.

63.     As set forth above, NBD is the owner of all rights, title and interest in the Copyrighted Image. NBD has complied in all respects with the provisions of the Copyright Act, 17 U.S.C. §§ 101 et seq., and all other laws of the United States governing copyrights to secure the exclusive rights and privileges in and to the copyrights of the items identified herein.

64.     NBD has complied with the registration requirements of 17 U.S.C. § 411(a) for the Copyrighted Image and obtained Copyright Registration No. VA 2-248-307 for "No Bad Days Sunset Wave" with an Effective Date of Registration of April 21, 2021.  assigned to NBD effective April 22, 2021 (recordation of assignment was submitted to the U.S. Copyright Office and is currently pending).

65.     Counterdefendants unlawfully reproduced, distributed and displayed protected

elements of the Copyrighted Image in Cove's Infringing Decal. A comparison is shown below:

| NBD's Copyrighted Designs | Cove's Infringing Decal |
|---|---|
|  |  |

66.    In addition to reproducing physical copies of this decal, Counterdefendants have caused, enabled, facilitated, and/or materially contributed to the infringement by, *inter alia*, distributing digital copies of Cove's Infringing Decal to each visitor via the Cove's websites, www.coveusa.co and www.coveusa.shop.

67.    Cove's Infringing Decal, shown above, is strikingly similar (and at the very least substantially similar) to the Copyrighted Image.

68.    Upon information and belief, Counterdefendants had access to the Copyrighted Image by virtue of NBD's widespread sales of products bearing those images.

69.    Without permission from NBD, Counterdefendants directly infringed the Copyrighted Image by distributing, displaying, and reproducing identical and/or substantially similar designs bearing protected elements of the Copyrighted Image.

70.    Upon information and belief, Counterdefendants have direct control over and/or monitor the design, manufacture, promotion, sale and/or distribution of identical and/or substantially similar designs bearing protected elements of the Copyrighted Image.

71.    Upon information and belief, Counterdefendants have the right and ability to supervise the infringing products.

72.    Counterdefendants also profit from the sale of goods which infringe upon the Copyrighted Image.

73.    Counterdefendants' deliberate reproduction, distribution and display of the Copyrighted Image infringed and continues to infringe NBD's rights in violation of 17

**ANSWER AND COUNTERCLAIM**

U.S.C. § 501(a). Defendant is directly infringing on Plaintiff's exclusive right to reproduce, distribute, display, and make derivative works of the Copyrighted Image under 17 U.S.C. §§ 106(1)-(3), (5).

74.    Counterdefendants' infringement has been continuous, willful and deliberate.

75.    Counterdefendants, by their actions, damaged NBD in an amount to be determined at trial.

76.    Counterdefendants, by their actions, irreparably injured NBD. Such irreparable injury will continue unless Counterdefendants are preliminarily and permanently enjoined by this Court from further violation of NBD's rights, for which NBD has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### (Unfair Competition, Cal. Bus. & Prof. Code §§17200 and 17500)

77.    Counterclaimant NBD incorporates here by reference the allegations in paragraphs 1 through 76 above.

78.    Counterdefendants' conduct as alleged herein constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce, in violation of Cal. Bus. & Prof. Code §§ 17200 and 17500, *et seq.*

79.    NBD is informed and believes and thereon alleges that as a direct and proximate result of Counterdefendants' wrongful conduct as described above, Counterdefendants have gained property and revenues properly belonging to NBD. NBD therefore seeks restitution of these amounts. NBD also seeks injunctive relief restraining Counterdefendants, their officers, agents, and employees, and all persons acting in concert with them, from further engaging in acts of unfair competition and/or fraudulent business acts against NBD and its intellectual property.

///

///

///

**ANSWER AND COUNTERCLAIM**

## SIXTH CAUSE OF ACTION

### (Common Law Unfair Competition)

80.     Counterclaimant NBD incorporates here by reference the allegations in paragraphs 1 through 79 above.

81.     This cause of action arises under the common law.

82.     By the acts and activities of Counterdefendants complained of herein, Counterdefendants have caused substantial harm to NBD as a result of Counterdefendants' unfair competition.

83.     As a direct and proximate result of the acts and activities of Counterdefendants complained of herein, NBD has been damaged in an amount not yet ascertainable. When NBD has ascertained the full amount of damages, it will seek leave of court to amend this counterclaim accordingly.

84.     NBD is informed and believes, and based thereon allege, that Counterdefendants, in doing the things herein alleged, acted willfully, maliciously, oppressively and despicably, with full knowledge of the adverse effect of their actions to NBD, and with willful and deliberate disregard for the consequences to NBD.

## PRAYER FOR RELIEF (COUNTERCLAIM)

WHEREFORE, No Bad Days Enterprises, Inc. requests judgment against Counterdefendants as follows:

1.  Finding Counterdefendants liable for trademark infringement and counterfeiting by virtue of their past and ongoing unauthorized use of the NO BAD DAYS Mark;

2.  Finding Counterdefendants' trademark infringement, false designation of origin, and counterfeiting to be a voluntary and intentional violation of Counterdefendants' known duties, and therefore willful;

3.  Finding Counterdefendants liable for copyright infringement by virtue of their past and ongoing unauthorized use of NBD's Copyrighted Image;

4.  Finding Counterdefendants' copyright infringement to be a voluntary and intentional

**ANSWER AND COUNTERCLAIM**

1    violation of Counterdefendants' known duties, and therefore willful;

2  5.  Ordering Counterdefendants and all of their agents, officers, employees,

3    representatives, successors, assigns, and all other persons acting for, with, by,

4    though, or under authority from Counterdefendants, or in concert or participation

5    with Counterdefendants, and each of them, be enjoined permanently, from:

6      a.  Using "NO BAD DAYS" or any other copy, reproduction, colorable

7        imitation or simulation of the NO BAD DAYS Mark on or in connection

8        with Counterdefendants' products;

9      b.  Using any trademark, logo, design, or source designation of any kind on, or

10        in connection with, Counterdefendants' goods that is a copy, reproduction,

11        colorable imitation, or simulation of, or confusingly similar to "NO BAD

12        DAYS;"

13      c.  Displaying, reproducing or distributing the Copyrighted Image or any other

14        designs substantially similar thereto in advertising or promotion of

15        Counterdefendants' products;

16      d.  Manufacturing, distributing, shipping, importing, reproducing, displaying,

17        advertising, marketing, promoting, transferring, selling, and/or offering to

18        sell any products bearing or using the Copyrighted Image or any designs

19        substantially similar thereto; and

20      e.  Otherwise infringing the NO BAD DAYS Mark any/or of the Copyrighted

21        Image.

22  6.  Counterdefendants be ordered to recall and retrieve all products bearing the "NO

23    BAD DAYS" Mark or any other confusingly similar variation thereof, which have

24    been shipped by Counterdefendants or under their authority, to any store or

25    customer, including, but not limited to, any retail store, marketer, distributor, or

26    distribution center, and also to deliver to each such store or customer a copy of this

27    Court's order as it relates to said injunctive relief against Counterdefendants.

28  7.  Counterdefendants be ordered to deliver for impoundment and for destruction all

**ANSWER AND COUNTERCLAIM**

clothing, boxes, labels, tags, signs, packages, advertising, sample books, promotional materials, or other materials in the possession, custody or under the control of Counterdefendants that are found to adopt, use, feature, or infringe any of NBD's trademarks or Copyrighted Image or that otherwise unfairly compete with NBD or NBD's products.

8. Counterdefendants be compelled to account to NBD for any and all profits derived by Counterdefendants from the sale or distribution of infringing goods as described in these Counterclaims;

9. NBD be awarded all damages caused by the acts forming the basis of these Counterclaims;

10. Based on Counterdefendants' knowing and intentional use of confusingly similar imitations of the "NO BAD DAYS" Mark, the damages award be trebled and the award of Counterdefendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a) and (b);

11. Counterdefendants be required to pay NBD the costs and reasonable attorney's fees incurred by NBD in this action pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. §§ 504-505;

12. Based on Counterdefendants' willful and deliberate infringement of NBD's marks, and to deter such conduct in the future, NBD be awarded punitive damages;

13. Counterdefendants be required to pay prejudgment and post-judgment interest on the damages and profits awarded; and

14. NBD have such other and further relief as the Court may deem just.

Dated:  April 27, 2021                    **NEXIO, PC**


By:    /s/ Imran F. Vakil /
          Imran F. Vakil
          *Attorneys for Counterclaimant*
          *No Bad Days Enterprises, Inc.*

**ANSWER AND COUNTERCLAIM**

1

## **DEMAND FOR JURY TRIAL**

2      Counterclaimant No Bad Days Enterprises, Inc. hereby demands trial by jury of all

3  issues so triable under the law.

4

5  Dated:  April 27, 2021                    **NEXIO, PC**

6

7                                    By:   /s/ Imran F. Vakil /

8                                        Imran F. Vakil
                                          *Attorneys for Counterclaimant*
9                                        *No Bad Days Enterprises, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANSWER AND COUNTERCLAIM**

**EXHIBIT "A"**

**Int. Cl.: 25**

**Prior U.S. Cls.: 22 and 39**

**United States Patent and Trademark Office**

Reg. No. 3,396,343
Registered Mar. 11, 2008

**TRADEMARK**
**PRINCIPAL REGISTER**

# NO BAD DAYS

SAMPLE, SCOTT T (UNITED STATES INDIVI-
    DUAL), DBA NO BAD DAYS,
40758 CARTIER ST
MURRIETA, CA 92563

FOR: HATS; JACKETS; PANTS; SHIRTS; SHORTS;
SWEATERS; SWIMSUITS; T-SHIRTS, IN CLASS 25
(U.S. CLS. 22 AND 39).

FIRST USE 7-1-1998; IN COMMERCE 11-26-2002.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

SN 78-898,963, FILED 6-2-2006.

KEVIN CORWIN, EXAMINING ATTORNEY

# United States of America

## United States Patent and Trademark Office

# No Bad Days

**Reg. No. 5,871,273**

**Registered Oct. 01, 2019**

**Int. Cl.: 21**

**Trademark**

**Principal Register**

No Bad Days Enterprises, Incorporated  (CALIFORNIA CORPORATION)
42255 Baldaray Circle Ste B
42255 Baldaray Circle Ste B
Temecula, CALIFORNIA 92590

CLASS 21: Cups and mugs; Insulating sleeve holder for bottles; Insulating sleeve holders for beverage cans

FIRST USE 6-21-2009; IN COMMERCE 6-21-2009

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 3396343

SER. NO. 88-076,747, FILED 08-13-2018



Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and  an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** h ttp://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# No Bad Days

**Reg. No. 6,038,033**

No Bad Days Enterprises, Incorporated  (CALIFORNIA CORPORATION), DBA NO BAD DAYS

**Registered Apr. 21, 2020**

42255 Baldaray Circle Suite B
Temecula, CALIFORNIA 92590

**Int. Cl.: 33**

CLASS 33: Vodka; Whiskey; Wine

**Trademark**

FIRST USE 2-12-2020; IN COMMERCE 2-12-2020

**Principal Register**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 3396343

SER. NO. 88-173,748, FILED 10-29-2018



Director of the United States
Patent and Trademark Office



> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# NO BAD DAYS

**Reg. No. 6,042,951**

**Registered Apr. 28, 2020**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

No Bad Days Enterprises, Incorporated  (CALIFORNIA CORPORATION)
42255 Baldaray Circle Ste B
Temecula, CALIFORNIA 92590

CLASS 32: Beer, lager

FIRST USE 2-12-2020; IN COMMERCE 2-12-2020

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY
PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 3396343, 3453878

SER. NO. 87-561,331, FILED 08-09-2017



Director of the United States
Patent and Trademark Office



> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America
## United States Patent and Trademark Office

# NO BAD DAYS

**Reg. No. 6,058,338**

**Registered May 19, 2020**

**Int. Cl.: 14**

**Trademark**

**Principal Register**

No Bad Days Enterprises, Incorporated  (CALIFORNIA CORPORATION)
42255 Baldaray Circle Ste B
Temecula, CALIFORNIA 92590

CLASS 14: Key chains

FIRST USE 5-10-2010; IN COMMERCE 5-10-2010

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY
PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 3396343, 5871273

SER. NO. 88-661,449, FILED 10-20-2019



Director of the United States
Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and  an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# NO BAD DAYS

**Reg. No. 6,111,733**

**Registered Jul. 28, 2020**

**Int. Cl.: 16**

**Trademark**

**Principal Register**

No Bad Days Enterprises, Incorporated  (CALIFORNIA CORPORATION)
42255 Baldaray Circle Ste B
Temecula, CALIFORNIA 92590

CLASS 16: Decals

FIRST USE 7-1-1998; IN COMMERCE 7-1-1998

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-661,156, FILED 10-19-2019



Director of the United States
Patent and Trademark Office



**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT "B"



Home    Shop Now    Our Story    Organizations    FAQ's    Contact Us

Free Shipping for Orders $75+!





# No Bad Days Tee - White

 1043 reviews

**Sale**  $20.00  ~~$25.00~~

Shipping calculated at checkout.

**SIZE**

Medium ▾

**QUANTITY**

− 1 +

**Add to Cart**

**EMAIL WHEN AVAILABLE**

---

Product Description —

No Bad Days means regardless of the negativity or obstacles that come and go, a day where we wake up in the morning is a day well-lived.

**Product details:**

- Ultra Soft (100% Combed & Ringspun Cotton)
- Premium Quality 5.5oz Tee (Check Out the reviews below, our customers love them!)
- Regular Fit (Not boxy, and not slim fit, just right!)
- Pre-Shrunk
- Tagless Neck
  **Sustainability Details**

- 10% of our profits are donated to Ocean Conservation (see our organizations tab for more info!)
- Shipped in 100% compostable packaging made from Corn Starch
- All of our shirts are made from 100% recyclable material

Satisfaction Guarantee +

Shipping Policy +

**Size Guide**

Share   f   𝕏   𝕡

---

# Customer Reviews




Based on 1043 reviews



| ★★★★★ | ▓▓▓▓▓▓ | 94% | (977) |
| ★★★★☆ | ▓ | 5% | (48) |

Write a review



Home     Shop Now     Our Story     Organizations     FAQ's     Contact Us

Free Shipping for Orders $75+!





# No Bad Days Tee - Black



★★★★★ 1043 reviews

$25.00

Shipping calculated at checkout.

**SIZE**

Small ▾

**QUANTITY**

− 1 +    **Add to Cart**

─────────────────────────────

**Product Description** —

No Bad Days means regardless of the negativity or obstacles that come and go, a day where we wake up in the morning is a day well-lived.

**Product details:**

- Ultra Soft (100% Combed & Ringspun Cotton)
- Premium Quality 5.5oz Tee (Check Out the reviews below, our customers love them!)
- Regular Fit (Not boxy, and not slim fit, just right!)
- Pre-Shrunk
- Tagless Neck
  **Sustainability Details**

- 10% of our profits are donated to Ocean Conservation (see our organizations tab for more info!)
- Shipped in 100% compostable packaging made from Corn Starch
- All of our shirts are made from 100% recyclable material

Satisfaction Guarantee +

Shipping Policy +

**Size Guide**

Share        📌



 

Home    Shop Now    Our Story    Organizations    FAQ's    Contact Us

 Free Shipping for Orders $75+!



  

# No Bad Days Pullover Hoodie - Black

★★★★★ 14 reviews

$55.00

Shipping calculated at checkout.

**SIZE**

Small ▼

**QUANTITY**

− 1 +

**Sold Out**

**EMAIL WHEN AVAILABLE**

---

**Product Description** —

No Bad Days means regardless of the negativity or obstacles that come and go, a day where we wake up in the morning is a day well-lived. Printed on our premium heavyweight fleece lined hoodies.

**Product details:**

- Ultra Soft Cotton/Polyester blend
- Generous Fit
- Pre-Shrunk

**Sustainability Details**

- 10% of profits donated to Ocean Conservation efforts
- Shipped in 100% biodegradable packaging

Satisfaction Guarantee +

Shipping Policy +

**Size Guide**

Share



Free 2-3 Day Shipping for Orders $59+ with Code "SHIP"

Home    Shop Now ⌄    Our Story    Organizations    FAQ's    Contact Us                    Account

# Search results

6 matches for **no bad days**

no bad days     ›

**Products**



View

**No Bad Days Tee - Black**
★★★★★ 113 reviews
From $25



**No Bad Days Tee - White**
★★★★★ 39 reviews
From $25



**No Bad Days Pullover Hoodie
- Black**
★★★★★ 5 reviews
From $55



**Build Your Own Sticker Pack**
★★★★☆ 5 reviews
$2



**No Bad Days Long Sleeve -
Navy**
★★★★★ 3 reviews
Sold Out



**No Bad Days Long Sleeve -
Black**
★★★★★ 5 reviews
Sold Out

https://www.coveusa.co/products/no-bad-days-tee-black?_pos=1&_sid=7f4c74ee3&_ss=r

Chat with us 💸  

4:29 PM
10/9/2020

         

 **Cove USA**  🛍 Shop Now  👍 Like  💬 Message  🔍  ...



**Classic Alpine Green Crewneck**
$39.00

### Hoodies
See All (10+)

    

**Bolt Hoodie - Forest Camo**
$55.00

**The Sea Will Provide Pullove...**
$55.00

**Don't Tread on Me Pullover H...**
$55.00

**Sunset Hoodie - Slate Blue**
$55.00

**No Bad D...**
$55.00

### Stickers
See All (3)

  

**Spring Sticker Pack**
$10.00

**Build Your Own Sticker Pack**
$2.00

**Sharktooth 9" Sticker**
$7.00

### Hats
See A...

 **Cove USA**
June 30, 2020 · 🌐

Who's excited for our bonfire bundles to drop tomorrow?! You'll get ALL of the following for only $75!😱😍

1 x Classic Crewneck 🔥
1 x Hat 🧢
1 x T-Shirt 👕... See More







Listed by Cove USA

## No Bad Days Tee - White

$25.00

**Save**    ...

### Details

No Bad Days means regardless of the negativity or obstacles that come and go, a day where we wake up in the morning is a day well-lived.

Product details:

- Ultra Soft (100% Combe... **See More**

### Product Rating

☆☆☆☆☆

There are no customer reviews yet.

### Shipping & Returns

You can return new and unused items within 30 days

### Store Information          See Page

**Cove USA**
1,289 people like this Page

Typically replies within minutes

**Check Out on Website**

This will take you to www.coveusa.co





google.com/search?q=Oklahoma+state+university+no+bad+days+tee&rlz=1C1CHBF_enUS751US751&oq=Oklahoma+state+university+no+bad+days+...

    



Oklahoma state university no bad days tee



Q All  🛒 Shopping  🖼 Images  📰 News  📍 Maps  ⋮ More          Settings  Tools

About 180,000,000 results (0.59 seconds)

**Ads · See Oklahoma state university no bad days tee** ⓘ

       

| No Bad Days Tee - Black Large by Cove | No Bad Days Tee - White Medium by Cove | Oklahoma State Cowboys "All In The Fam" Top | Original Retro Brand Oklahoma State Cowboys Orange Logo... | Oklahoma State Cowboys Nike 2020 Inaugural Season O'Brat... | 1958 Oklahoma State Cowboys Snow Heather Raglan Hood... | NCAA Oklahoma State Cowboys Men's Short Sleeve Crew... | Oklahoma St... Cowboys "No Hiding" Camo V-Neck Top | Oklahom Cowboys Fanatics Branded |
| **$25.00** | **$20.00** | **$38.99** | **$32.99** | **$23.99** ~~$32~~ | **$34.99** | **$17.99** | **$42.00** | **$22.39** |
| Cove | Cove | Gameday Cout... | Rally House Special offer | Fanatics Special offer | Vintage Brand | Target $35 min. order | Gameday Cout... | Fanatics Special |

**Ad · shop.okstate.com/ ▾**
### Oklahoma State Cowboys Gear - Your Home For OK State Gear
Buy **Oklahoma State** Cowboys Gear! The **Oklahoma State** Cowboys Fan Shop. Gift Certificates. Free Order Tracking. Official Store. Sign Up & Save. Types: Sideline, Replica.

**Ad · www.fansedge.com/ncaa/ok_state ▾**
### OSU Cowboys Gear - Save 25% Today - FansEdge.com
Shop **Oklahoma State** Cowboys Gear. Everything For The Fan At FansEdge! Newest Styles.

www.usatoday.com › sports › dan-wolken › 2020/06/15 ▾
### Oklahoma State: Mike Gundy's T-shirt isn't the only issue for ...
Jun 15, 2020 — Opinion: 'It's about way more than **football**.' **Oklahoma** St. uprising isn't just about Mike Gundy's T-**shirt** ... a Tweet and said he would "**not** be doing anything with **Oklahoma State** until things CHANGE," though it wasn't ... Trump appeals to Macomb County voters Sunday, with 2 **days** to go before Election Day.
**Team:** Oklahoma State Cowboys football

www.foxsports.com › stories › college-football › gund... ▾

Cove on Instagram: "Two very fitting designs for the time being😵 which one is your favorite? Let us know in the comments and we mig…

# Instagram

Search    Log In    Sign Up



 coveusa • Follow
San Jose, California

 **coveusa** Two very fitting designs for the time being😵 which one is your favorite? Let us know in the comments and we might send you one if you're lucky!📢

📷:@shotsbymakk

#Cove
#BeTheDifference

30w

 **coveusa** .

225 likes

MAY 13

Log in to like or comment.

## More posts from **coveusa**





Cove on Instagram: "No Bad Days 💀☀️ @albertxhsiao #cove #seethedifference"

# Instagram

Search — Log In — **Sign Up**



 **coveusa** • **Follow**
Santa Barbara, California

•••

2w  Reply

**miax5_life** @coveusa when are you having this one again??

1w  Reply

—— Hide replies

 **coveusa** @miax5_life should be any day! Just working out some issues with it at the moment, we will blast out notifications

♡  ○  ⊲                                    🔖

**303 likes**

NOVEMBER 24

Log in to like or comment.

More posts from **coveusa**

  



Instagram





coveusa • Follow
Orange County, California

coveusa Our sticker packs are LIVE! Each sticker is made from weatherproof vinyl so it's perfect to put on your reusable water bottles, laptops, phones, surfboards, & whatever else you can think of!

As always 10% of the profits will go towards cleaning our beaches and oceans 

#Cove
#BeTheDifference
#Stickers

45w

theseantodd These are so sick 
45w  Reply

220 likes

APRIL 28, 2020

Add a comment...                                    Post









pinterest.ca

    

Business ∨    Create ∨    Analytics ∨    Ads ∨



    ···    ⬆    No Bad Days® Wood... ∨    **Save**    

coveusa.co

# No Bad Days Tee - Black

No Bad Days Tee - Black – Cove USA

**Photos**    Comments

Tried this Pin?
Add a photo to show how it went    **Add photo**

?

   





Ships free

Ready to Ship

Fast Shipping Delivery

something stupid like that, then he asked me he got to hear me go on and on about condensation and humidity. I used words like "cumulonimbus" or "temperate" or "sublimate." He found it interesting and he liked a real answer more than a cheap answer. He may not have

I come from what we in Chicago call the last generation of the belt. My father was a cop, so his belt was particularly nasty. This would have been all through the 1960s. If he came home and I had left a toy on the stairs, off came the belt. I was born in 1959, and was probably hit when I was around four. Once, I was in my underwear in bed, my dad had worked the 3PM-11PM shift. Off came the belt and I was whacked across my stomach and testicles, though I doubt the latter was meant to happen. At times, my dad would just hand the belt to my mother while he undressed or went to get a beer. Unfortunately, my mother had no aim, so I was hit everywhere, haphazardly. My sister has three daughters. They were never spanked, never grounded. To an extent, they are spoiled, and get what they want. Each went through stages and two of my nieces are doing well, one is ready for Harvard. The other, her twin, is difficult to be with. Their dad tells them stories about how he was hit by the belt (he is my age, 56), and at times I think that they should have been spanked years ago, not hard but just to know of consequences. Instead of being told to stay in their respective rooms for an hour. Thinking that might be wrong, it will always be one of my grey areas. Can't help it. You should also provide them with

"Free Shipping on orders overs 90$ "! Dismiss

 **t-shirt@.com** 

✉ CONTACT | 📞 +1 (302) 803 5456 👤 | CART / $0.00 🛒 0

HOME  TRACK MY ORDER  VALENTINE'S DAY  ST. PATRICK'S DAY



Sale! shirt@t.com

Ships free
Ready to Ship
Fast Shipping Delivery

 

HOME / TRENDING SHIRT

# Shark no bad days shirt

★★★★★

~~$24.99~~ **$22.99**

Shark no bad days shirt

5% OFF WITH CODE **SALE5**

Free Shipping on orders overs 90$

**Style***

| Classic Mens Shirt ▼ |
| --- |

**Color***

Black  Navi Blue  Sport Grey  White  Red  Light Blue  Royal

**Size***

◉ S  ○ M  ○ L  ○ XL  ○ 2XL  ○ 3XL

Total: $22.99

- 1 +  **ADD TO CART**





