Omid E. Khalifeh, SBN 267340
Ariana Santoro, SBN 300767
Lara A. Petersen, SBN 318475
**OMNI LEGAL GROUP**
2029 Century Park E, Suite 400
Los Angeles, California 90067
Phone:        310.276.6664
Facsimile:    310.305.1550
omid@omnilegalgroup.com
ariana@omnilegalgroup.com
lara@omnilegalgroup.com

Attorneys for Plaintiff,
COVE USA LLC

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVE USA LLC, a California limited liability company, | Case No.: 8:20-cv-02314-JLS-KES |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT** |
| vs. | |
| NO BAD DAYS ENTERPRISES, INCORPORATED, a California corporation; SCOTT SAMPLE, an individual; and DOES 1-10, inclusive, | Hearing Date: June 18, 2021 Hearing Time: 10:30 a.m. |
| Defendants. | *Hon. Josephine L. Staton* |
| NO BAD DAYS ENTERPRISES, INCORPORATED, a California corporation, | |
| Counterclaimant, | |
| vs. | |
| COVE USA LLC, a California limited liability company; SEAN ARCHER TODD, an individual; and DOES 1-10, inclusive, | |
| Counterdefendants | |

# **TABLE OF CONTENTS**

I.    INTRODUCTION……………………………………………………...1

II.    FACTUAL BACKGROUND………………………………………….4

    A.    Plaintiff's Business and Ornamental Use of Ubiquitous Phrases…….4

    B.    Defendants' Unlawful Interference with Plaintiff's Business………..5

    C.    Present Dispute……………………………………………………….6

III.    LEGAL    STANDARD    FOR    MOTIONS    TO    DISMISS    AND/OR STRIKE……………………………………………………………………….6

    A.    This Court's Local Rules……………………………………………….6

    B.    Motions to Dismiss and/or Strike…………………………………..7

IV.    PLAINTIFF'S COMPLAINT PROPERLY STATES CLAIMS FOR RELIEF AGAINST ALL DEFENDANTS………………………………………...8

    A.    Plaintiff's Claims Should Not Be Stricken Because Defendants Cannot Satisfy the Two-Part Inquiry of California's Anti-SLAPP Statute…………………..8

    B.    The California Litigation Privilege Does Not Bar Plaintiff's Claims Because Those Claims Arise Out of Unprotected Activity………………………10

    C.    The *Noerr-Pennington* Doctrine Does Not Bar Plaintiff's Claims Because the Sham Exception Applies…………………………………………….12

    D.    Plaintiff Has Plausibly Plead All Essential Elements of Tortious Interference and Unfair Competition…………………………………………...16

        *1.    Plaintiff Plausibly Alleged Each Essential Element of Intentional Interference with Prospective Economic Relations*……..16

        *2.    Defendants' Motion to Dismiss Plaintiff's Fifth Claim for Relief is Improper Because It Violates the Local Rules and This Court's Standing Order*…………………………………………..18

        *3.    Plaintiff Plausibly Alleged Each Essential Element of Intentional Interference with a Contractual Relationship*…………..18

        *4.    Plaintiff Plausibly Alleged Each Essential Element of Unfair*

ii

*Competition Under Cal. Bus. & Prof. Code § 17200*...................19

E.      Defendants Failed to Properly Meet and Confer Regarding its
Argument that Plaintiff's Tortious Interference Claims are Preempted Under the
DMCA..................................................................................................20

V.      AT A MINIMUM, THE COURT SHOULD GRANT PLAINTIFF LEAVE
TO AMEND.........................................................................................21

VI.     CONCLUSION..............................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Action Apartment Assn., Inc. v. City of Santa Monica,*

     41 Cal.4th 1232, 63 Cal. Rptr. 3d 398, 163 P.3d 89 (2007)………………….12

*Albillo v. Intermodal Container Services, Inc.,*

     114 Cal. App. 4th 190, 8 Cal. Rptr. 3d 350 (2003)…………………………19

*Ashcroft v. Iqbal,*

     556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)………….2, 7

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,*

     457 F.3d 1062 (9th Cir. 2006)……………………………………………...13, 14

*Bell Atlantic Corp. v. Twombly,*

     550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)…………...……2, 7

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*

     20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999)………………9, 19

*Chang v. Chen,*

     80 F.3d 1293 (9th Cir. 2011)……………………………………………...21

*Conley v. Gibson,*

     355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)…………………………2, 7

*Downing v. Abercrombie &* Fitch,

     265 F.3d 994 (9th Cir. 2001)……………………………………………...21

*Edwards v. Centex Real Estate Corp.,*

     53 Cal.App.4th 15 (1997)………………………………………..2, 11, 12

*Equilon Enters. v. Consumer Cause, Inc.,*

     29 Cal. 4th 53, 124 Cal. Rptr. 2d 507, 52 P.3d 685 (2002)……………………8

*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.,*

     365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961)………………………...15

*Ex rel. Farnan v. Capistrano Unified Sch. Dist.,*

     654 F.3d 975 (9th Cir. 2011)……………………………………………...21

iv

*Foman v. Davis*,

　　　371 U.S. 178 (1962)……………………………………………..21

*Fuhrman v. California Satellite Systems*,

　　　179 Cal.App.3d 408, 231 Cal. Rptr. 113……………………………12

*Gilligan v. Jamco Dev. Corp.*,

　　　108 F.3d 246  (9th Cir. 1997)……………………………………7

*Hard2Find Access., Inc. v. Amazon.com, Inc.*,

　　　689 Fed. Appx. 406 (9th Cir. 2017)………………………………15

*Korea Supply Co. v. Lockheed Martin Corp.*,

　　　29 Cal. 4th 1134 (2003)……………………………………..3, 17

*Laffer v. Levinson, Miller, Jacobs & Phillips*,

　　　34 Cal.App.4th 117, 40 Cal. Rptr. 2d 233……………………………12

*Laws v. Sony Music Entm't, Inc.*,

　　　448 F.3d 1134 (9th Cir. 2006)……………………………………..21

*Lenz v. Universal Music Corp.*,

　　　815 F.3d 1145  (9th Cir. 2016)……………………………………17

*Liberty Lake Invs., Inc. v. Magnuson*,

　　　12 F.3d 155 (9th Cir. 1993)……………………………………15

*LTTB LLC v. Redbubble, Inc.*,

　　　840 Fed. Appx. 148 (9th Cir. 2021)……………………………13, 14

*LTTB LLC v. Redbubble, Inc.*,

　　　385 F.Supp.3d 916 (N.D. Cal. July 12, 2019)…………………………14

*Mason Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*,

　　　632 F.3d 1056 (9th Cir. 2011)……………………………………...8

 *Or. National Res. Council v. Mohla*,

　　　944 F.2d 531  (9th Cir. 1991)…………….……………………13

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,

　　　50 Cal. 3d 1118 (1990)...…………………….………………18, 19

*Padilla v. Yoo*,

    678 F.3d 748 (9th Cir. 2012)………………………..…….…………….2, 8

*Pareto v. F.D.I.C.*,

    139 F.3d 696 (9th Cir. 1998)…..…………………………….…………….2, 8

*Parks Sch. of Bus., Inc. v. Symington*,

    51 F.3d 1480 (9th Cir. 1995)…..……………………….………………….2, 8

*PMC, Inc. v. Saban Entertainment, Inc.*,

    45 Cal.App.4th 579, 52 Cal.Rptr.2d 877 (1996)……………………………..16

*Podolsky v. First Healthcare Corp.*,

    50 Cal. App. 4th 632, 58 Cal. Rptr. 2d 89 (1996)…………………………….19

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,

    508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)……………..2, 13, 15

*Qualitex Co. v. Jacobson Products Co.*,

    514 U.S. 159, 115 S. Ct. 1300, 131 L. Ed. 2d 248 (1995)…………………13

*Rock River Communs., Inc. v. Universal Music Group, Inc.*,

    745 F.3d 343 (9th Cir. 2014)…………………………………………3, 13, 15, 16

*Rothman v. Jackson*,

    49 Cal.App.4th 1134 (1996)………………………………………………11

*Settimo Associates v. Environ Systems, Inc.*,

    14 Cal. App. 4th 842, 845, 17 Cal.Rptr.2d 757 (1993)……………………16

*Shamblin v. Berge,*

    166 Cal.App.3d 118, 212 Cal. Rptr. 313 (1985)…………………………….18

*Silberg v. Anderson*,

    50 Cal. 3d 205 (1990)………………………………………………………10

*Sosa v. DirecTV, Inc.*,

    437 F.3d 923 (9th Cir. 2006)………………………………………………15

*Sprewell v. Golden State Warriors*,

    266 F.3d 979 (9th Cir. 2001)………………………………………………2, 8

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,

    546 F.3d 991 (9th Cir. 2008)……………………………………………...15

*TP Link United States Corp. v. Careful Shopper LLC*,

    No. 8:18-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065, at \*3 (C.D. Cal. Mar. 23, 2020)……..….………….………………….……………9,10

*Vess v. Ciba-Geigy Corp. USA*,

    317 F.3d 1097 (9th Cir. 2003)……………………………….……………8

**Statutes, Rules, Regulations**

Cal. Bus. & Prof. Code § 17200…………………………………………..2, 6, 19

Cal. Code of Civ. Proc. § 425.16……………………………………2, 8, 9, 10

Fed. R. Civ. P. 12(b)(6)………………………………………………….2, 8

Local Rule 7-3…………………………………………………………3, 7, 20

Local Rule 11-8………………………………………………………….6

Local Rule 83-7………………………………………………………….7

15 U.S.C. § 1115(b)(8)……………………………………………………13

17 U.S.C. § 512(c)(3)(A)…………………………………………………17

17 U.S.C. § 512(f)……………………………………………………17, 21

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Cove USA LLC ("Plaintiff"), which operates a family-owned eco-friendly clothing brand, respectfully files this Memorandum of Points and Authorities in Opposition to the Motion to Dismiss and/or Strike the Complaint filed by Defendants No Bad Days Enterprises, Incorporated ("NBD") and Scott Sample ("Sample" and collectively, "Defendants"), which has continually and wrongfully interfered with Plaintiff's business.

## I.  INTRODUCTION

Inspired by Southern California's beautiful oceans and beaches and with an aim toward making a difference in the world, Plaintiff began offering ethically sourced clothing. *See* Dkt. 1, ¶¶ 1, 18-19. Each of Plaintiff's offerings is sustainable, stylish, comfortable and affordable. *See id.*, ¶ 18. Much of Plaintiff's apparel features ubiquitous phrases paired with beachy designs, including "RESPECT THE SEA" with a ship being taken over by an angry octopus, and "WATCH OUT BELOW" with a skeleton peering over a surfboard that has a shark swimming directly underneath. *Id.*, ¶ 21.

At issue in the present litigation is Plaintiff's ornamental use of the phrase "NO BAD DAYS," for which Defendants' claim copyright and trademark rights. *Id.*, ¶ 22. Defendants have continually filed numerous takedown notifications against these items on Plaintiff's storefront on Shopify's platform. *Id.*, ¶¶ 24, 26, 28. As a result of these bogus complaints, various of Plaintiff's products bearing the common phrase "NO BAD DAYS" (the "Accused Products") have been removed from Plaintiff's Shopify storefront. *Id.* Since Plaintiff filed its Complaint, Shopify has completely shut down Plaintiff's storefront thereon, for the sole reason of Defendants' unrelenting, yet continually baseless takedown claims. *See* Declaration of Lara A. Petersen ("LAP Decl."), ¶ 6.

To address Defendants' anticompetitive conduct, Plaintiff initiated the present litigation. Plaintiff's Complaint (Dkt. 1) clearly sets forth six coherent and plausible

claims for relief: (1) declaratory judgment of non-infringement of trademark; (2) declaratory judgment of non-infringement of copyright; (3) unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.*; (4) intentional interference with prospective economic relations; (5) negligent interference with prospective economic relations; and (6) intentional interference with a contractual relationship. *See* Dkt. 1.

After Plaintiff filed its Complaint, Defendants filed this motion to dismiss. *See* Dkt. 16. Motions to dismiss under Fed. R. Civ. P. 12(b)(6) should only be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). To survive such a motion, Plaintiff's complaint must provide sufficient factual matter so as to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929). Such motions are viewed in the light most favorable to the non-moving party and all well-pleaded facts in the complaint are accepted as true. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *Padilla v. Yoo*, 678 F.3d 748, 757 (9th Cir. 2012); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

In this motion, Defendants' first contend that its takedown claims fall within the activity protected by California's anti-SLAPP statute, CCP § 425.16. Under the requisite two-party inquiry, it is clear that Plaintiff's claims for relief do not arise out of protected activity and Plaintiff is likely to prevail on such claims. Along these lines, Defendants also maintain that these takedowns constitute communications protected by California's litigation privilege. However, there exists no facts to suggest Defendants "seriously considered" instituting a judicial proceeding but rather, were content with their baseless, but successful takedown claims. *Edwards v. Centex Real Estate Corp.*, 53 Cal.App.4th 15, 32 (1997) (*quoting* Rest.2d Torts §

586, 587, com. e). Had Plaintiff not filed the present lawsuit, it seems dubious Defendants ever would have initiated any legitimate proceeding and thus, Defendants cannot claim this privilege.

Defendants also argue the *Noerr-Pennington* doctrine protects their conduct. Under this doctrine, pre-litigation material is immune from suit unless the threatened lawsuit was a "sham." *See Rock River Communs., Inc. v. Universal Music Group, Inc.*, 745 F.3d 343, 351 (9th Cir. 2014). Here, Defendants' threatened lawsuit was a sham in that Defendants' accusations were objectiveless baseless given the ornamental nature of Plaintiff's use of "NO BAD DAYS." Moreover, Defendants' accusations were clearly aimed at interfering with Plaintiff's business.

Finally, in their motion, Defendants argue that Plaintiff failed to allege essential elements of its causes of action. In particular, Defendants claim Plaintiff did not allege any "independently wrongful" conduct by Defendants apart from the interference itself. To the contrary, Plaintiff has sufficiently demonstrated that Defendants' conduct was independently wrongful in that it is "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003). Moreover, Plaintiff has plausibly alleged unfair competition by way of its allegations regarding Defendants' unfair and fraudulent disruption of Plaintiff's business on Shopify's platform.

Defendants' motion also includes a couple of Hail Mary grounds for dismissal, neither of which were discussed during either of counsels' Local Rule 7-3 meet and confer phone calls. *See* LAP Decl., ¶¶ 7-8. The first alleges that Plaintiff's claims for relief are preempted by the Digital Millennium Copyright Act (DMCA). The other provides that Plaintiff's negligent interference with prospective economic relations claim fails because Plaintiff failed to allege a duty of care owed by Defendants to Plaintiff. For the sole reason that neither of these grounds were discussed during the conference of counsel, Defendants' motion cannot be granted

1  on these grounds.

2   Because Plaintiff's Complaint plausible plead its third through sixth claims

3  for relief, Defendants' motion to dismiss should be denied in full.

4  **II. FACTUAL BACKGROUND**

5   **A. Plaintiff's Business and Ornamental Use of Ubiquitous Phrases**

6   Plaintiff offers ethically sourced clothing with a mission of protecting the

7  environment and ultimately, making a difference in the world. *See* Dkt. 1, ¶¶ 1, 18.

8  Local to Southern California, Plaintiff was inspired by the beauty of the oceans and

9  beaches and sought to eliminate any business practices which harm the same. *See id.*

10  To further its mission, Plaintiff packages and ships each order in 100%

11  biodegradable parcels derived from plant-based materials and has also eliminated

12  the use of harmful plastic in its manufacturing process. *Id.* Even more, Plaintiff

13  donates 10% of its profiles to nonprofit organizations, including those dedicated to

14  beach clean ups and ocean conservation efforts, and also uses its platform and other

15  outreach campaigns to promote nonprofits. *See id.*, ¶ 19.

16   Plaintiff's apparel is not only sustainable but is also stylish, comfortable and

17  affordable. *Id.*, ¶ 18. As its primary aesthetic, Plaintiff's garments incorporate

18  ubiquitous phrases paired with beachy designs. *Id.*, ¶ 21. Many of these designs

19  playfully conjure a beach/surfing lifestyle, as is prevalent in Southern California,

20  through use of designs and common, beachy phrases. *Id.* As a few examples,

21  Plaintiff has paired "RESPECT THE SEA" with a ship being taken over by an angry

22  octopus, "ENDLESS SUMMER" with a surfboard leaning against a van, "LET'S

23  GET HAMMERED" with a hammerhead shark, "THE SEA WILL PROVIDE" with

24  a skeleton reeling in a large fish, and "LOCALS ONLY" with dolphins and a wave.

25  *See id.*, ¶ 21, Ex. A. As is apparent with reference to Exhibit A appended to

26  Plaintiff's Complaint, each of these designs is displayed across the back of Plaintiff's

27  garments, with Plaintiff's trademark "Cove" appearing along the front.

### B.    Defendants' Unlawful Interference with Plaintiff's Business

NBD offers t-shirts, sweatshirts, hats, hoodies, bags, decals, keychains, and other products featuring the phrase "NO BAD DAYS." *See* Dkt. 1, ¶ 1. However, NBD was neither the first nor the only provider of apparel and other products bearing this ubiquitous phrase. *See id.*, ¶¶ 22-23, Ex. B. Indeed, "NO BAD DAYS" is *commonly* used on a variety of products, especially apparel. *See id.* As with Plaintiff's use of the phrase, many third-party uses are purely ornamental and do not serve a trademark function. *See id.*, ¶ 22.

Defendants have purportedly acquired numerous trademark registrations for "NO BAD DAYS." *See* Dkt. 23, ¶ 14, Ex. A. Notably, many of the products for which Defendants allege use of their mark do not appear to be offered for sale anywhere by Defendants. *See* LAP Decl., ¶ 3. Rather, Defendants use these registrations as an anticompetitive weapon to shakedown third parties who are likely using the phrase in a lawful manner. *See id.*, ¶ 4. This practice of sending cease-and-desist letters and forcing others to license use of this common phrase is evidenced by Defendants' own submittals to the United States Patent and Trademark Office (USPTO) during the prosecution of one of Defendants' trademark applications, Serial No. 88076747. *See id.*; Req. for Jud. Not. Within these submittals, Defendants provided evidence of multiple instances wherein they accused third parties of infringing their alleged trademark and compelled a licensing agreement. *Id.* In this manner, Defendants are not using their alleged trademark for the intended purpose but rather, to profit by trolling third parties. *See id.*

Unfortunately, owing to Plaintiff's commercial success, Plaintiff has been the most recent of Defendants' targets. *See* Dkt. 1, ¶ 2. For months, Defendants have been submitting baseless takedown claims through Shopify based on purported copyright and trademark rights in an effort to have various of Plaintiff's products incorporating the phrase "NO BAD DAYS" (the "Accused Products") removed from Plaintiff's Shopify storefront. *See* Dkt. 1, ¶ 24. On or around October 9, 2020,

Sample emailed Plaintiff accusing the Accused Products of trademark and copyright infringement. *See id.*, ¶ 25. Although Plaintiff promptly responded to Defendants' concerns, Defendants refused to engaging in any sort of discussion with Plaintiff, thereby blatantly ignoring Plaintiff's valid defense to its allegations of infringement. *Id.*, ¶¶ 25-26. Instead, Defendants continued to submit takedown claims through Shopify. *Id.*

### C. Present Dispute

Because Defendants' repeated takedown notices to Shopify so severely disrupted Plaintiff's relationship with Shopify, and business as a whole, Plaintiff initiated the present action. In its Complaint, Plaintiff provides claims for relief for (1) declaratory judgment of non-infringement of trademark; (2) declaratory judgment of non-infringement of copyright; (3) unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.*; (4) intentional interference with prospective economic relations; (5) negligent interference with prospective economic relations; and (6) intentional interference with a contractual relationship. *See* Dkt. 1, *passim*. Since the filing of the Complaint, Defendants have continued to lodge takedown notices with Shopify, ultimately resulting in the entire removal of Plaintiff's storefront thereon. *See* LAP Decl., ¶ 6.

## III.  LEGAL STANDARD FOR MOTIONS TO DISMISS AND/OR STRIKE

### A.  This Court's Local Rules

As a preliminary matter, Defendants' memorandum in support of its motion to dismiss and/or strike Plaintiff's third through sixth causes of action from the Complaint violates the Local Rules for the Central District of California by failing to comply with formatting requirements set forth thereby. In particular, Local Rule 11-8 requires that

> Any memoranda of points and authorities or any brief exceeding ten (10) pages in length, excluding exhibits, shall be accompanied by an indexed table of contents setting forth the headings or subheadings contained in the body thereof, and by an indexed table of the cases, statutes,

rules, and other authorities cited.

While Defendants' memorandum of points and authorities spans nineteen (19) pages, Defendants failed to include either a table of contents nor a table of authorities.

Additionally, Local Rule 7-3 provides that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." Section 8(b) of Your Honor's Initial Standing Order further provides that the issues should be discussed "to a sufficient degree that if a motion is still necessary, the briefing may be directed to those substantive issues requiring resolution by the Court." There are multiple grounds in Defendants' motion which were not even mentioned during either of counsels' meet and confer discussions.

Local Rule 83-7 further provides for sanctions, the imposition of costs and attorneys' fees to opposing counsel, or other sanctions deemed appropriate by the Court for "[t]he violation of or failure to conform to any of these Local Rules."

### B.   Motions to Dismiss and/or Strike

Motions to dismiss and/or strike test the sufficiency of the claims provided in the complaint. *See* Fed. R. Civ. P. 12 (b)(6). To survive the motion, a pleading need only allege plausible facts that, if proven true, establish that the complainant is entitled to the relief sought. A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

Motions to dismiss are disfavored as there exists "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). "[A] complaint should not be dismissed for failure to state a claim unless it appears ***beyond doubt*** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.Gibson*,

355 U.S. 41, 45-46 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (emphasis added). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *Padilla v. Yoo*, 678 F.3d 748, 757 (9th Cir. 2012). Further, the complaint must be read in the light most favorable to the non-moving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

## IV.   PLAINTIFF'S COMPLAINT PROPERLY STATES CLAIMS FOR RELIEF AGAINST ALL DEFENDANTS

### A.   Plaintiff's Claims Should Not Be Stricken Because Defendants Cannot Satisfy the Two-Part Inquiry of California's Anti-SLAPP Statute

Defendants preliminarily argue that Plaintiff's third through sixth claims for relief should be stricken pursuant to California's anti-SLAPP statute, Cal. Code of Civ. Proc. § 425.16(b)(1). *See* Dkt. 16, 9:8-27, 10:1-27, 11:1-2. However, these claims for relief do not arise out of protected activity and Plaintiff is likely to prevail on such claims.

When exercising supplemental jurisdiction over state law claims, the Court applies California substantive law. *See Mason Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). California's anti-SLAPP statute necessitates a two-part inquiry to determine whether a lawsuit involves First Amendment rights and is aimed at chilling expression. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). First, the defendant must "make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Id.* Second, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.*

The California Supreme Court has recognized that the "'arising from' requirement is not always easily met." *Equilon Enters. v. Consumer Cause, Inc.*, 29

Cal. 4th 53, 66, 124 Cal. Rptr. 2d 507, 52 P.3d 685 (2002). Defendants assert that Plaintiff's third through sixth causes of action involve takedown notices "seeking the removal of infringing articles from [an] online retailer." *See* Dkt. 16, 10:22-23. Contrary to this characterization, which, if accurate, would constitute protected activity under CCP § 425.16, the present lawsuit did not arise out of Defendants' enforcement of their trademark rights. Rather, the third through sixth causes of action in the Complaint center around Defendants' Shopify takedown notices based on Plaintiff's conduct that clearly does not infringe any of Defendants' alleged trademark rights. Such trademark misuse is not equivalent to the enforcement of intellectual property rights but rather constitutes unfair competition and tortious interference, as alleged in Plaintiff's Complaint (Dkt. 1).

As to the second prong of the anti-SLAPP inquiry, Plaintiff is highly likely to prevail on its third through sixth causes of action. In particular, as discussed in greater detail below, Plaintiff has sufficiently alleged each of the elements of tortious interference and unfair competition. Unfair competition is interpreted broadly and encompasses "acts and practices not specifically proscribed by any other law." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999). In the present case, Defendants unfairly competed with Plaintiff by filing fraudulent takedown notices with the sole intention of disrupting Plaintiff's business. In this manner, Defendants also interfered with not only Plaintiff's contractual relationship with Shopify but also, its prospective economic relations with customers of its Shopify storefront.

Further, in support of its anti-SLAPP motion, Defendants cited a recent decision by this Court, *TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065. This case is, however, inapposite to the present dispute. Specifically, the accused infringer in that case alleged in its counterclaims that it purchased TP-Link® branded products and then sold them on its amazon.com storefront. *TP Link United States Corp. v. Careful Shopper LLC*, No. 8:18-cv-00082-JLS-KES, 2020 U.S. Dist.

LEXIS 104065, at *3 (C.D. Cal. Mar. 23, 2020). Therefore, there is no doubt that the accused infringer in that case was indeed offering for sale products bearing the trademark owner's registered trademark because the accused infringer purchased products emanating originally from the trademark owner. *Id.* On the other hand, Plaintiff is merely using a ubiquitous phrase on some of its apparel and is doing so in an ornamental fashion. *See* Dkt. 1, ¶ 22. Moreover, the trademark owner in the *TP Link* case initiated the lawsuit based on the infringer's online sale of certain goods bearing the infringing marks. *TP Link*, at *7-8. Here, Defendants appeared intent on improperly interfering with Plaintiff's business rather than actually resolving this dispute through the initiation of litigation.

Because Defendants' complained-of conduct is not protected under California's anti-SLAPP statute and Plaintiff has demonstrated a probability of success on the merits of its claims, the Complaint should not be stricken pursuant to CCP § 425.16. Along these lines, Defendants are also not entitled to recover attorney's fees and costs.

**B.    The California Litigation Privilege Does Not Bar Plaintiff's Claims Because Those Claims Arise Out of Unprotected Activity**

Defendants also argue Plaintiff's third through sixth causes of action are privileged under the California litigation privilege. The aforementioned third through sixth causes of action, that is, Plaintiff's tortious interference and unfair competition claims, stem primarily from the copyright and trademark takedown notices sent by Defendants to Shopify. California's litigation privilege protects communications (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. *See Silberg v. Anderson*, 50 Cal. 3d 205, 219 (1990). The privilege does not apply to the conduct underlying Plaintiff's claims.

The privilege is not limitless, however, and "[s]tatements to nonparticipants

in the action are generally not privileged under Section 47(b)." *Rothman v. Jackson*, 49 Cal.App.4th 1134, 1141 (1996). With respect to the takedown notifications, they are not communications made in a judicial or quasi-judicial proceeding. To the contrary, the takedown procedures are designed to avoid court involvement. The litigation privilege extends to communications preliminary to a proposed judicial proceeding to the extent that such communication "has some relation to a proceeding that is *contemplated in good faith and under serious consideration*." *See Edwards v. Centex Real Estate Corp.*, 53 Cal.App.4th 15, 32 (1997) (*quoting* Rest.2d Torts § 586, 587, com. e). Indeed, "[t]he *bare possibility* that the proceeding might be instituted is not to be used as a cloak to provide immunity…when the possibility is not seriously considered." *Id.*

There is nothing to suggest that Defendants seriously contemplated any court involvement in this matter. Instead, as evidenced by Defendants' own submittals to the USPTO during prosecution of a trademark application, Defendants make a practice of sending frivolous demand letters and filing takedown notices in an attempt to force third parties to settle and/or license Defendants' alleged trademark. *See* LAP Decl., ¶ 4, Ex. A; Req. for Jud. Not. In particular, during this prosecution, Defendants submitted evidence of at least eight instances in which they successfully trolled third parties. *See id.*

In the present case, Defendants sent a cease-and-desist email to Plaintiff on October 9, 2020. *See* LAP Decl., ¶ 5. Notably, Defendants' demand came from the email licensing@nobaddays.com, which suggests a significant (if not the primary) aspect of Defendants' business comprises licensing their purported trademarks. *See* LAP Decl., ¶ 5. Plaintiff promptly retained counsel and responded to this demand, explaining in detail the bases for its position of non-infringement. *See* Dkt. 1, ¶ 25. To date, Defendants have made no attempt to engage in meaningful discussions aimed at a proper resolution of this dispute, nor did Defendants actually institute a judicial proceeding. *See id.*, ¶¶ 25-26. Rather, during the subsequent two-month

period that ensued prior to Plaintiff initiating the present litigation, Defendants continued to interfere with Plaintiff's Shopify storefront by filing baseless takedown notices. *See id.*, ¶ 26.

California courts have acknowledged the distinction between a good faith intention to bring a lawsuit and communications aimed at inducing settlement of a claim not in good faith contemplation of a lawsuit. *See Edwards*, 53 Cal.App. 4th at 35 ("even a threat to file a lawsuit would be insufficient to activate the privilege if the threat is merely a negotiating tactic and not a serious proposal made in good faith contemplation of going to court"); *see also Action Apartment Assn., Inc. v. City of Santa Monica,* 41 Cal.4th 1232, 1241, 63 Cal. Rptr. 3d 398, 163 P.3d 89 (2007) (*quoting Fuhrman v. California Satellite Systems*, 179 Cal.App.3d 408, 422, 231 Cal. Rptr. 113 ("[n]o public policy supports extending a privilege to persons who attempted to profit from hollow threats of litigation"); *Laffer v. Levinson, Miller, Jacobs & Phillips*, 34 Cal.App.4th 117, 124-125, 40 Cal. Rptr. 2d 233. "[T]he privilege does not attach prior to the actual filing of a lawsuit unless and until litigation is seriously proposed in good faith for the purpose of resolving the dispute." *Edwards*, fn. 10.

Defendants made no strides toward initiation of a judicial proceeding in this matter nor is there anything to indicate any intention or proposal to do so. Thus, it is far from clear that litigation was imminent had Plaintiff itself not sought formal resolution of this matter by filing the present lawsuit. As a result, the California litigation privilege does not cover Defendants' takedown notices and therefore, cannot bar Plaintiff's claims.

### C.   The *Noerr-Pennington* Doctrine Does Not Bar Plaintiff's Claims Because the Sham Exception Applies

Defendants further contend that the *Noerr-Pennington* doctrine bars Plaintiff's third through sixth causes of action. In particular, Defendants assert that their takedown notices to Shopify constitute "petitioning conduct" within the ambit

1  of this doctrine. Defendants also conclude that the sham exception to this doctrine is

2  inapplicable here. Plaintiff disagrees.

3  Under the *Noerr-Pennington* doctrine, pre-litigation material is immune from

4  suit unless the threatened lawsuit was a "sham." *See Rock River Communs., Inc. v.*

5  *Universal Music Group, Inc.*, 745 F.3d 343, 351 (9th Cir. 2014); *Or. National Res.*

6  *Council v. Mohla*, 944 F.2d 531, 534 (9th Cir. 1991). A lawsuit is a "sham" where it

7  is both "objectively baseless in the sense that no reasonable litigant could

8  realistically expect success on the merits" and "an attempt to interfere directly with

9  the business relationship of a competitor through the use of the governmental process

10 – as opposed to the outcome of that process." *Prof'l Real Estate Investors, Inc. v.*

11 *Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61, 113 S. Ct. 1920, 123 L. Ed. 2d

12 611 (1993). The sham exception, therefore, turns on whether a *Noerr-Pennington*

13 defendant engaged in objectively baseless activity in order to vex and harass the

14 opposing party.

15 Defendants' actions were objectively baseless as supported by the recent

16 Ninth Circuit opinion, *LTTB LLC v. Redbubble, Inc.*, 840 Fed. Appx. 148 (9th Cir.

17 2021), in addition to general notions of trademark law. It is well-accepted that "[t]he

18 principal role of trademark law is to ensure that consumers are able to identify the

19 source of goods." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062,

20 1067 (9th Cir. 2006); *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 164, 115

21 S. Ct. 1300, 131 L. Ed. 2d 248 (1995). The doctrine of aesthetic functionality

22 provides a defense to trademark infringement where a product feature serves an

23 aesthetic purpose wholly independent of any source-identifying function and which

24 contributes to the appeal of the object it adorns. *See Au-Tomotive Gold*, 457 F.3d at

25 1073; 15 U.S.C. § 1115(b)(8) (functionality defense to infringement of a registered

26 trademark).

27 In *LTTB LLC v. Redbubble, Inc.*, the plaintiff sold t-shirts and other goods

bearing the phrase "LETTUCE TURNIP THE BEET," for which the plaintiff also

held registered trademarks. *LTTB LLC*, 840 Fed. Appx. at 149. As stated by the lower court, the issue was whether there existed a viable infringement claim where the accused products merely displayed the phrase but did not otherwise include any indication that they were produced or licensed by the trademark owner. *LTTB LLC v. Redbubble, Inc.*, 385 F.Supp.3d 916, 919 (N.D. Cal. July 12, 2019). The District Court held, and the Ninth Circuit affirmed, that the mere use of the phrase on various products could not be source-identifying as the trademark owner provided no evidence that consumers sought to purchase the goods at issue because of the trademark owner's reputation. *LTTB LLC*, 840 Fed. Appx. at 150-151. To the contrary, it was clear that consumers were simply interested in purchasing products due to the aesthetic function of the phrase. *Id.* at 151; *contra Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 458 F.3d 1062, 1074 (9th Cir. 2006) (consumers desired the goods because they identified the sources and therefore "the alleged aesthetic function [was] indistinguishable from and tied to the mark's source-identifying nature").

Similarly, there can be little doubt that consumers seek to purchase Plaintiff's Accused Products because they want goods bearing the phrase "NO BAD DAYS" and not because they associate the goods with Defendants. As a result, Plaintiff clearly has not infringed any of Defendants' purported trademark rights to "NO BAD DAYS." Because Defendants could not reasonably expect to find infringement where Plaintiff's use of a ubiquitous phrase is so apparently ornamental, Defendants' takedown notices based on trademark infringement were objectively baseless.

Because Defendants largely profit from their licensing efforts, it is apparent that Defendants' motivation is not to halt trademark infringement but rather, to force third parties into licensing agreements for the common phrase "NO BAD DAYS." *See* LAP Decl., ¶¶ 4-5. *Noerr-Pennington* immunity "is not a shield for petitioning conduct that, although 'ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere

directly with the business relationship of a competitor.'" *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006) (*quoting E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961)). Defendants' transmission of numerous demand letters to third parties, and filing of takedown notices against Plaintiff's Shopify storefront, suggests that Defendants hope to enforce their trademark rights through a threat of litigation rather than through actual litigation. In this manner, Defendants have used Shopify's takedown notification procedures "as an anticompetitive weapon." *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (*quoting Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 157 (9th Cir. 1993)). Thus, a reasonable jury could therefore conclude that Defendants are attempting to achieve their aim through the litigation process rather than through the result of that process. *See Rock River Communs., Inc.*, 745 F.3d at 353; *see also Prof'l Real Estate Investors*, 508 U.S. at 60-61.

Furthermore, this case is distinguishable from the Ninth Circuit cases cited by Defendants for the proposition that "[c]onduct incidental to a lawsuit," such as takedown notices, falls within the protection of the *Noerr-Pennington* doctrine. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008). For instance, in one of such cases, *Hard2Find Access., Inc. v. Amazon.com, Inc.*, the Ninth Circuit found that the sham exception was inapplicable because the pleading party did not plead with particularity that the infringement notice was a sham. *Hard2Find Access., Inc. v. Amazon.com, Inc.*, 689 Fed. Appx. 406, 407 (9th Cir. 2017). Differently, here, Plaintiff plausibly and particularly plead specific facts demonstrating the sham of Defendants' notices. *See* Dkt. 1, ¶¶ 22, 25-28. As one example, the sham nature of Defendants' takedown notices is further evidenced by their lack of response to Plaintiff's substantive reply to Defendants' October 9th email. *Id.* It is Plaintiff's position that Defendants failed to engage in a meaningful discussion with Plaintiff because they had no valid to support their infringement

claims in light of Plaintiff's clearly ornamental use of "NO BAD DAYS."

Defendants' Shopify takedown notifications satisfy both criteria for the sham exception to the *Noerr-Pennington* doctrine. Thus, Plaintiff's third through sixth causes of action are not barred by such immunity.

**D.    Plaintiff Has Plausibly Plead All Essential Elements of Tortious Interference and Unfair Competition**

*1.    Plaintiff Plausibly Alleged Each Essential Element of Intentional Interference with Prospective Economic Relations*

Defendants argue that Plaintiff failed to allege that Defendants' actions were independently wrongful so as to satisfy the elements of an intentional interference with prospective economic relations claim. This type of tort claim requires: (1) the plaintiff and a third party were in an economic relationship that probably would have resulted in economic benefit to the plaintiff; (2) the defendant knew of the relationship; (3) the defendant intended to disrupt the relationship; (4) the defendant engaged in wrongful conduct; (5) the relationship was disrupted; (6) the plaintiff was harmed; and (7) the defendant's wrongful conduct was a substantial factor in causing the plaintiff's harm. Judicial Council of California Civil Jury Instructions (CACI) No. 2202; *see also Rock River Communs., Inc.*, 745 F.3d at 349. Conduct qualifies as independently wrongful if it falls outside the privilege of fair competition. *PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 603, 52 Cal.Rptr.2d 877; *see also Settimo Associates v. Environ Systems, Inc.* (1993) 14 Cal. App. 4th 842, 845, 17 Cal.Rptr.2d 757 (imposing liability under this tort "for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition.")

Here, Defendants' conduct was wrongful in that it not only implemented methods outside of the privilege of fair competition, it was also fraudulent. Despite the fact that Plaintiff was clearly not using the phrase "NO BAD DAYS" in a trademark manner, and thus had not infringed any of Defendants' purported

trademarks, Defendants continued to file takedown notices. Even worse, Plaintiff informed Defendants of the lawful nature of Plaintiff's use of the phrase in their prompt reply to Defendants' cease-and-desist email and again, during counsels' meet and confer phone call. *See* Dkt. 1, ¶ 25; LAP Decl., ¶ 7. Nonetheless, Defendants persisted in their filing of takedown notifications, which eventually (after the Complaint was filed) resulted in a complete shutdown of Plaintiff's Shopify storefront. In this way, Defendants unfairly competed with Plaintiff's legitimate business.

Additionally, to the extent Defendants' takedown notifications were based on their purported copyright, the DMCA requires such notifications to contain a statement that the copyright holder believes in good faith that the allegedly infringing material "is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c)(3)(A). Therefore, "a copyright owner must consider the existence of fair use before sending a takedown notification under § 512(c)." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016). If an entity abuses these DMCA takedown procedures, it may be subject to 17 U.S.C. § 512(f), which provides liability for "[a]ny person who knowingly material misrepresents…that material or activity is infringing." Despite being made aware of Plaintiff's lawful, ornamental use of a ubiquitous phrase, Defendants continued to file takedown notices against Plaintiff's Accused Products. *See* Dkt. 1, ¶ 26.

Due to the foregoing, at this stage in the litigation, Plaintiff has sufficiently demonstrated that Defendants' conduct was independently wrongful in that it is "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003). Accordingly, Plaintiff has sufficiently plead this claim for relief.

### 2. *Defendants' Motion to Dismiss Plaintiff's Fifth Claim for Relief is Improper Because It Violates the Local Rules and This Court's Standing Order*

Defendant contends that Plaintiff's fifth claim for relief for negligent interference with prospective economic relations also fails because "Plaintiff does not aver *any* independently wrongful conduct by Defendants." *See* Dkt. 16, 17:6-7. As explained above, Plaintiff does indeed adequately aver such wrongful conduct by Defendants.

In addition, Defendant argues that a claim for negligent interference requires an additional element of a legal duty of care owed to Plaintiff by Defendants. However, Defendants' motion to dismiss on this ground is improper because it violates Local Rules. At no point in Defendants' meet and confer letter nor during *either* of the conferences of the parties' respective counsel did Defendants' counsel mention this as a ground for bringing this motion. *See* LAP Decl., ¶ 8. As such, Plaintiff's fifth claim for relief must stand.

### 3. *Plaintiff Plausibly Alleged Each Essential Element of Intentional Interference with a Contractual Relationship*

Despite Defendants' suggestion to the contrary, Plaintiff clearly sets forth Defendants' intentional interference with Plaintiff's contractual relationship with Shopify. Defendants misguidedly focus on the lack of a pleaded *breach* of Plaintiff's contract with Shopify. More accurately stated, Defendants interfered with this contractual relationship through disruption. *See Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1129 (1990) ("Plaintiff need not allege an actual or inevitable breach of contract in order to state a claim for disruption of contractual relations"); *see also Shamblin v. Berge* (1985) 166 Cal.App.3d 118, 212 Cal. Rptr. 313.

As plead by Plaintiff, "repeated claims of infringement, regardless of merit,

can have a detrimental effect on Plaintiff's ability to offer products in [the Shopify] marketplace" and therefore, "Defendants have disrupted Cove's online business and damaged its business relationship with online distributors." *See* Dkt. 1*, e.g.,* ¶¶ 2, 20, 24, 26-28, 39, 44-48, 51-55, 58-61. Plaintiff further explains that its relationship with Shopify was harmed "by way of its present inability to offer for sale and sell the Accused Products via Shopify." *See id.*, ¶ 27. Moreover, due to Defendants' repeated claims of infringement, though ill-founded, Plaintiff's storefront has since been removed entirely from Shopify. *See* LAP Decl., ¶ 6. The California Supreme Court has acknowledged that "it may be actionable to induce a party to a contract to terminate the contract according to its terms." *Pacific Gas & Electric Co.*, 50 Cal. 3d at 1127. It is the contractual relationship, not any term of the contract, which is protected against outside interference. *Id.* As such, Plaintiff has properly and plausibly plead each essential element of its fifth claim for relief.

### 4.    *Plaintiff Plausibly Alleged Each Essential Element of Unfair Competition Under Cal. Bus. & Prof. Code § 17200*

Finally, Defendants argue Plaintiff's sixth claim for relief fails because the Complaint fails to satisfy the criteria for unfair competition pursuant to Cal. Bus. & Prof. Code § 17200. However, the scope of California's unfair competition law is broad and permits violations of other laws to be treated as independently actionable unfair competition. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999). Moreover, unfair competition sweeps within its scope acts and practices "not specifically proscribed by some other law." *Id.* As Defendants aptly point out, to prevail, Plaintiff "must establish that the practice is either unlawful (i.e. is forbidden by law), unfair (i.e. harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)." *Albillo v. Intermodal Container Services, Inc.*, 114 Cal. App. 4th 190, 206, 8 Cal. Rptr. 3d 350 (2003). Indeed, "a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful.'" *Podolsky v. First*

*Healthcare Corp.*, 50 Cal. App. 4th 632, 647, 58 Cal. Rptr. 2d 89 (1996) (citation omitted).

Plaintiff plausibly alleges Defendants filed fraudulent takedown notices in order to disrupt Plaintiff's business. *See, e.g.,* Dkt. 1, ¶¶ 2, 39. Because Plaintiff has merely used a common phrase in an ornamental manner, like many third parties, Plaintiff has done nothing in violation of Defendants' purported trademark rights. *See id.*, ¶ 22. Plaintiff further alleges that Defendants failed to engage in meaningful settlement discussions after sending a cease-and-desist email to Plaintiff, to which Plaintiff promptly responded. *See id.*, ¶¶ 25-26. Instead, Defendants achieved their objective of removing Plaintiff's products from Shopify and disrupting Plaintiff's business and thereby Defendants competed unfairly. Defendants have thereby maliciously disrupted Plaintiff's business in a deceptive and anticompetitive fashion. *See id.*, ¶ 28. Moreover, Plaintiff has plausibly alleged the same.

**E.    Defendants Failed to Properly Meet and Confer Regarding its Argument that Plaintiff's Tortious Interference Claims are Preempted Under the DMCA**

Defendants make a final, throw-away argument that Plaintiff is improperly seeking a remedy through state law and that the DMCA preempts such claims for relief. *See* Dkt. 16, 20:1-2. This argument is improper because it violates this Court's local rules and standing order. *See* L.R. 7-3; Dkt. 10, § 8(b). Specifically, Defendants never conferred with Defendants with Plaintiff to discuss this ground for seeking dismissal of Plaintiff's third through sixth claims for relief. *See* LAP Decl., ¶ 8. While the parties did engage in two meet and confer phone calls, at no point did Defendants' counsel mention this additional ground for dismissal. *See id.*, ¶¶ 7-8. For this reason alone, Defendants' motion to dismiss these claims should be denied.

Even if Defendants' motion to dismiss these claims based on the DMCA was properly brought, which it was not, Defendants' challenge of these claims is erroneous. The DMCA applies exclusively to copyright and therefore, is wholly

20

inapplicable to takedown notices grounded in trademark. *See* 17 U.S.C. § 512(f); *see also Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006) (*quoting Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001) (explaining that the first steps of a two-part test for state law preemption by the Copyright Act involves "whether the 'subject matter' of the state law claims falls within the subject matter of copyright'). As clearly alleged by Plaintiff in the Complaint, Defendants' takedown notices involve claims for both copyright ***and*** trademark infringement. *See* Dkt. 1, ¶¶ 24-28. Accordingly, Defendants' argument in this regard misses the mark and Plaintiff's third through sixth claims for relief against Defendants must stand.

## V.   AT A MINIMUM, THE COURT SHOULD GRANT PLAINTIFF LEAVE TO AMEND

In the event the Court grants this motion or any portion thereof, Defendants maintain no leave to amend should be granted. *See* Dkt. 16, 20:22-25, 21:1-10. Rule 15(a)(2) has liberal standards regarding the Court's discretion to grant leave to amend. *See also Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 15(a) provides that "[t]he court should freely grant leave [to amend] when justice so requires," and this policy is to be applied with "extreme liberality." *C.f. Ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011); *see also* Dkt. 10, § 9(a) *(citing Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 2011) (where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment). Therefore, Plaintiff respectfully submits that should this Court find the pleadings inadequate, Plaintiff should be granted leave to amend the Complaint to satisfy the plausibility standard.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff's Complaint adequately states a claim against Defendants for which relief can, and should, be granted. Accordingly, Defendants' motion to dismiss and/or strike should be denied. In the event the Court

does not believe Plaintiff plausibly averred its claims, Plaintiff respectfully requests leave to amend its Complaint.

RESPECTFULLY SUBMITTED this 28th day of May, 2021.

**OMNI LEGAL GROUP**

/Omid E. Khalifeh/
Omid E. Khalifeh
Ariana Santoro
Lara A. Petersen
Attorneys for Plaintiff,
Cove USA LLC

1
2

## CERTIFICATE OF SERVICE

3

I am over eighteen (18) years of age, employed in the County of Los Angeles, and

4

not a party to this action. My business address is 2029 Century Park E, Suite 400,

5

Los Angeles, CA 90067. I hereby certify that on the date listed below, I served the

6

following documents:

7
8

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

9
10

by delivering the document to:

11
12

Michaela Battista Sozio

13

Tressler, LLP
6100 Center Drive, Suite 1175

14

Los Angeles, CA 90045

15

msozio@tresslerllp.com

16
17

[ ]     BY MAIL: by placing the document listed above in a sealed envelope and

18

depositing the sealed envelope with the United States Postal Service with the postage

19

fully prepaid.

20

[X]     BY ELECTRONIC MAIL: by transmitting via electronic mail the document

21

listed above to the address listed above on this date pursuant to Fed. R. Civ. P.

22

5(b)(2)(e) and L.R. 5-3.2.

23
24

I declare, under penalty of perjury under the laws of the State of California, that the

25

foregoing is true and correct. Executed on May 28, 2021 at Los Angeles, California.

26
27

/Omid E. Khalifeh/
Omid E. Khalifeh