Michaela Battista Sozio, Esq., SBN 179148
msozio@tresslerllp.com
TRESSLER LLP
6100 Center Drive, Suite 1175
Los Angeles, California 90045
Telephone: (310) 203-4800
Fax: (323) 486-2704

Attorneys for Defendants
No Bad Days Enterprises, Inc. and Scott Sample

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVE USA LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>NO BAD DAYS ENTERPRISES INCORPORATED, a California corporation; SCOTT SAMPLE, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 8:20-cv-02314-JLS-KES<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE THE COMPLAINT**<br><br>Date:           June 25, 2021<br>Time:          10:30 a.m.<br>Courtroom.:  10A |

Defendant No Bad Days Enterprises, Inc. ("NBD") and Scott Sample ("Sample") (jointly, "Defendants") hereby submit this Reply in support of their Motion to Dismiss and/or Strike the Complaint of Plaintiff Cove USA LLC.

/ / /

/ / /


# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This is a straightforward dispute. As alleged in the Complaint, Defendant No Bad Days Enterprises, Inc. ("NBD") and Plaintiff Cove USA LLC ("Plaintiff") are business competitors that both offer beach-inspired clothing. NBD's clothing prominently features the phrase "NO BAD DAYS," (the "Mark"), a recognizable mark for which NBD holds no less than six active Federal trademark registrations, including an incontestable registration issued in 2008 specifically covering clothing.

Plaintiff began selling clothing, primarily through Shopify, which features the "NO BAD DAYS" Mark in or before October 2020. On or about October 9, 2020, Defendants emailed Plaintiff, notifying Plaintiff that certain of its products were infringing NBD's Mark. Plaintiff responded by rejecting Defendants' position and denying any infringement. In light of Plaintiff's position and its refusal to voluntarily remove the infringing articles, NBD submitted notice of infringement to Shopify, alerting Shopify to the dispute. Pursuant to Shopify's terms of use, Shopify removed the accused products from its platform.

Plaintiff filed this action shortly thereafter, asserting a declaratory relief action and also asserting multiple claims based on California state law which are all predicated upon Defendants' "takedown" notices.  Plaintiff's claims are not only without merit, but as set forth in the moving papers, these claims are also ***barred*** by California's anti-SLAPP statute and well-established law.

In its Opposition, Plaintiff appears to argue that use of the "NO BAD DAYS" phrase isn't an infringement on Defendants' Mark but instead is a "ubiquitous phrase paired with beachy designs" and therefore Defendants' takedown notices were baseless and constituted an attempt to allegedly wrongfully interfere with Plaintiff's business. (Oppo. at 1:13).  Regardless of whether or not Plaintiff is offering "sustainable and stylish" clothing and trying to "make a difference in the world",

Plaintiff nonetheless made a conscious decision to ignore Defendants' cease and desist communications, which resulted in the takedown notices being sent. Plaintiff now attempts to argue that takedowns were malicious and an attempt to disrupt Plaintiff's business as opposed to being an effort by Defendants to protect the Mark. As set forth in the moving papers and as set forth below, each of Plaintiff's claims fail as a matter of law.

*First*, each of the claims is barred by California's litigation privilege, which applies to pre-litigation takedown notices and is "absolute," without exception even for allegedly "bad faith" notices. In its Opposition, Plaintiff argues that the litigation privilege does not apply because "there is nothing to suggest that Defendants seriously contemplated any court involvement in this matter." (Oppo. 11:12-13). Plaintiff's argument are purely speculative. "Takedown" notices asserting trademark and/or copyright infringement – like the present notices to Shopify – are within the California litigation privilege and cannot, as a matter of law, support a claim for tortious interference. *See TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *23 ("the litigation privilege is intended to protect the sort of communication at issue here, the reporting of suspected wrongdoing to a party capable of halting or remedying it.") (granting anti-SLAPP).  Further, simply because Plaintiff "won" the race to the courthouse does not support the contention that Defendants did not contemplate court involvement.

*Second*, each of the claims is barred by the *Noerr-Pennington* doctrine, which also applies to pre-litigation takedown notices. In its Opposition, Plaintiff contends that the "sham litigation" exception applies because "there can be little doubt that consumers seek to purchase Plaintiff's Accused Products because they want goods bearing the phrase "NO BAD DAYS" and not because they associate the goods with Defendants." (Oppo. at 14:16-17). Plaintiff also argues that Defendants actions were solely intended to vex and harass Plaintiff.  These arguments are based on speculation

and are completely unsupported by *any* evidence. Moreover, the "sham litigation" exception to this doctrine would only apply if Plaintiff pled "with particularity" specific facts establishing that Defendants' position cannot even be ***arguably*** warranted by existing law, a standard to which Plaintiff comes nowhere close.

  ***Third***, Plaintiff's interference with relations claims both fail to articulate any action by Defendants which was "independently wrongful" separate and apart from the purported interference itself, an essential requirement to these torts. In its Opposition, Plaintiff contends that the alleged wrongful conduct was Defendants' attempts to protect the Mark and Defendants' apparent failure to acquiesce to Plaintiff's response to the cease and desist letter that Plaintiff's use of the Mark was purportedly lawful. Plaintiff does not – and cannot - allege that, separate and apart from any alleged interference, Defendants' notices to Shopify violated any statute or regulation or were otherwise illegal.  As such, this claim must fail.

  ***Fourth***, Plaintiff's negligent interference claim further runs afoul of California law in that such claims cannot apply to actions between direct competitors. *See, e.g., Stolz v. Wong Communications Limited Partnership*, 25 Cal. App. 4th 1811, 1825 (1994). Instead of addressing this argument on the merits, Plaintiff self-servingly attempts to argue that, purportedly, the meet and confer was inadequate because the specific issue of a legal duty of care was apparently not mentioned. Plaintiff was well aware of that a motion to dismiss was being filed on this cause of action and a good faith meet and confer was conducted. The motion to dismiss as to this baseless cause of action should not be overruled on a perceived technicality.

  ***Fifth***, Plaintiff's interference with contract claim suffers from the simple fact that Plaintiff does not actually allege that its contract with Shopify was disrupted or breached. Plaintiff argues in its Opposition that Plaintiff's storefront on Shopify has been removed. While Plaintiff blames the takedown notices, it was Plaintiff's failure to comply with the cease and desist that led to the takedown of the storefront. Thus,

any resulting damage or disruption to the alleged contractual relationship was a direct result of Plaintiff's own actions, not any alleged act by Defendants.

**Sixth**, Plaintiff's unfair competition claim fails because it is predicated upon the other, improper tort claims and that Plaintiff has failed to properly allege any conduct on the part of Defendants that was unlawful, unfair, or fraudulent. *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007). In its Opposition, Plaintiff audaciously contends that the takedown notices sent by Defendants (which was a clear attempt to protect the Mark) were somehow fraudulent.  Plaintiff's arguments are wholly without merit. Further, by failing to address the arguments that the Complaint improperly seeks disgorgement of profits and damages, Plaintiff concedes this issue.

**Seventh,** the DMCA expressly preempts any state law interference claim based upon a DMCA takedown notice. *See Online Policy Group v. Diebold, Inc*., 337 F. Supp. 2d 1195, 1205-1206 (N.D. Cal. 2004); *Lenz v. Universal Music Corp.*, No. C 07-03783 JF, 2008 U.S. Dist. LEXIS 44549, at *4 (N.D. Cal. Apr. 8, 2008). Thus., Plaintiff's own allegations render its claims preempted and subject to dismissal. Once again, instead of addressing the merits of this argument and in an attempt to sidestep the validity of this argument, Plaintiff attempts to reduce it to being a "throw-away" argument and claims there was no meet and confer.

**Finally,** in recognition that its legal arguments are not plausible, Plaintiff seizes upon the fact that a table of contents and table of authorities were inadvertently not included with the moving papers and that there was allegedly not a proper meet and confer. First, the failure to include the tables of contents/authorities was unintentional and will be rectified; and it not a basis to deny the motion. Second, Plaintiff acknowledges that there were multiple meet and confer attempts, including a detailed and comprehensive meet and confer letter from attorney Randal Robinson.

1 Plaintiff's reliance on an allegedly improper meet and confer argument in an attempt
2 to defeat Defendants' motion underscores the lack of merit to its arguments.
3   Thus, Plaintiff cannot possibly prevail on any of these state law causes of
4 action, and therefore they should be stricken, both under the anti-SLAPP statute as
5 well as Fed. R. Civ. Proc. 12(b)(6).

## II.   ARGUMENT

### A. Defendants Have Fully Satisfied Both Prongs of the Anti-SLAPP Statute

Courts follow a two-step process in considering an anti-SLAPP motion. First, "'the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.' The burden is on the moving defendant to demonstrate that the actions at issue fall within the definition of furthering the defendant's right of petition or free speech regarding a public issue. The defendant's burden in this regard is only to make a *prima facie* showing of protected activity, which is 'not an onerous one.'" *Tensor Law P.C. v. Rubin*, 2:18-cv-01490-SVW-SK, 2019 U.S. Dist. LEXIS 131942, at *9-10 (C.D. Cal. Apr. 10, 2019) (*quoting Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002) and *Okorie v. L.A. Unified Sch. Dist.*, 14 Cal. App. 5th 574, 590 (2017)). Plaintiff concedes that this prong has been met.

Once a defendant satisfied its initial burden, the burden shifts to the plaintiff to establish "a probability [of] prevail[ing] on the claim." CCP § 425.16(b)(1). Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the [FRCP] 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018). The plaintiff must also overcome substantive legal defenses, such as the application of the litigation privilege, to meet its burden of establishing a probability of success. *See, e.g., Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,* 47 Cal.App.4th

777, 783-785 (1996). Here, Plaintiff contends that the third through sixth claims for relief do not arise out of protected activity and therefore Plaintiff is likely to prevail on such claims. Plaintiff makes the conclusory assertion, without any factual support, that "Defendants unfairly competed with Plaintiff by filing fraudulent takedown notices with the sole intention of disrupting Plaintiff's business." (Oppo. 10:18-20).

*This* is the basis for Plaintiff's claim that it will prevail on these claims. A fundamental flaw in Plaintiff's argument is that Plaintiff continuously refuses to address the legitimacy of Defendants' Mark and acknowledge that the takedown notices issued by Defendants as the trademark holder to a third-party retailer, Shopify, is a protected activity. *See TP Link United States Corp. v. Careful Shopper LLC*, No. 8:19-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065, at *14-15 (C.D. Cal. Mar. 23, 2020) (*quoting Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999)). Plaintiff attempts to distinguish its conduct by claiming that it is "merely using a [sic] ubiquitous phrase on some of its apparel and is doing so in an ornamental fashion." (Oppo. at 10:5-6). Clearly, Defendants disagree, or the takedown notices would not have been sent. Statements made to enforce intellectual property rights – such as the ones at issue in this litigation - fall squarely within the activity protected by the anti-SLAPP statute. Accordingly, Plaintiff is not likely to prevail and Defendants have satisfied *both* prongs of the anti-SLAPP statute.

**B. The Litigation Privilege Bars Plaintiff's Claims**

California Code of Civil Procedure § 47(b) provides that communications made in or related to judicial proceedings are immune from tort liability. The privilege applies to any communications "(1) made in a judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action." *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006).

The privilege broadly applies to cease and desist letters and other litigation and pre-litigation communications. *Castaline v. Aaron Muellers Arts,* No. C 09-02543 CRB, 2010 U.S. Dist. LEXIS 13111, at *11 (N.D. Cal. Feb. 16, 2010); *Blanchard v. DirecTV, Inc.*, 123 Cal. App. 4th 903, 919 (2004). California law has further expanded the privilege "to include publication to nonparties with a substantial interest in the proceeding." *Susan A. v. County of Sonoma*, 2 Cal. App. 4th 88, 94 (1991) (*citing Costa v. Superior Court*, 157 Cal. App. 3d 673, 678 (1984)). Accordingly, "takedown" notices asserting trademark and/or copyright infringement – like the present notices to Shopify – are within the California litigation privilege and cannot, as a matter of law, support a claim for tortious interference. *See TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *23 ("the litigation privilege is intended to protect the sort of communication at issue here, the reporting of suspected wrongdoing to a party capable of halting or remedying it.") (granting anti-SLAPP); *Thimes Sols.*, 2020 U.S. Dist. LEXIS 138591, at *21 ("Defendants' communications to Amazon are reasonably related to this litigation and therefore fall under California's litigation privilege.")

  In its Opposition, Plaintiff speciously argues that the Litigation Privilege does not apply in the case at bar because "there is nothing to suggest that Defendants seriously contemplated any court involvement in this matter." (Oppo. 11:12-13). Plaintiff then points out that it was the one to initiate the litigation. Other than offering its unsubstantiated opinion on Defendants' motives, Plaintiff has offered no viable evidence or argument to support its contention that the Litigation Privilege does not apply. Indeed, the California litigation privilege "is absolute," and is *not* subject to any exception based on the alleged bad faith of the accuser. *TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *23-24; *Mansell v. Otto*, 108 Cal. App. 4th 265, 277 n.47 (2003) ("the presence or absence of malice or good or bad faith is irrelevant to the inquiry whether the litigation privilege is applicable). "Even

fraudulent, deliberately false, or other types of tortious communication must be susceptible to coverage by the litigation privilege; if that were not true, the privilege would be unable to achieve its purpose of ensuring that fear of being subjected to derivative tort suits does not prevent open communication and the 'utmost freedom of access to the courts' and other channels of redress." *TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *23-24 (citation omitted). Here, Defendants' infringement notices to Shopify were absolutely privileged. Because those notices are the sole predicate for each of the State Law Claims, those claims fail as a matter of law.

### C. The Sham Exception Does Not Apply

In the Ninth Circuit, "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr-Pennington* doctrine." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008); *Sosa*, 437 F.3d at 929 (activities protected by the doctrine include pre-suit cease-and-desist letters, demand letters and other efforts "to settle legal claims short of filing a lawsuit."). Furthermore, pre-suit infringement notices to third parties – such as the notices at issue here – are equally protected. *OG Int'l, Ltd.,* 2012 U.S. Dist. LEXIS 145408, at *8.

Despite the clarity of the law, Plaintiff argues the Sham Exception applies here because Plaintiff is simply using an "ubiquitous" phrase in an "ornamental" manner and Defendants sent the takedown notices for improper reasons as opposed to protecting the Mark. Yet Plaintiff concedes that it is using the phrase "No Bad Days" – NBD's registered trademark – on the *very same products* for which NBD holds a registered trademark. This alone establishes that NBD's infringement position was at a bare minimum "arguably warranted" by trademark law. While Plaintiff makes arguments attempting to excuse its infringement -such as claiming that its use was "ornamental" – Plaintiff fails to plead any supporting facts that would demonstrate

that the Sham Exception is applicable here. Thus, the *Noerr-Pennington* doctrine preclude Plaintiff from bringing the third through sixth claims.

### D. Defendants' Takedown Notices Do Not Constitute "Wrongful Conduct"

Plaintiff's interference with relations claims both fail to articulate any action by Defendants which was "independently wrongful" separate and apart from the purported interference itself, an essential requirement to these torts. In its Opposition, Plaintiff contends that the alleged wrongful conduct was Defendants' attempts to protect the Mark and Defendants' apparent failure to acquiesce to Plaintiff's response to the cease and desist letter that Plaintiff's use of the Mark was purportedly lawful. Defendants' efforts to protect the Mark does not constitute "wrongful conduct" for purposes of the intentional interference claim. Plaintiff does not, and cannot, allege that Defendants' notices to Shopify violated any statute or regulation or were otherwise illegal. As such, this claim must fail.

### E. Plaintiff's Claim for Negligent Interference Must Be Dismissed

As set forth in the moving papers, Plaintiff's negligent interference claim further runs afoul of California law in that such claims cannot apply to actions between direct competitors. *See, e.g., Stolz v. Wong Communications Limited Partnership*, 25 Cal. App. 4th 1811, 1825 (1994). Plaintiff fails to address this issue o the merits and instead makes the self-serving contention that the meet and confer was inadequate because the specific issue of a legal duty of care was apparently not mentioned. Notwithstanding these contentions, the parties clearly met and conferred on this claim. The motion to dismiss as to this baseless cause of action should not be overruled on a perceived technicality.

### F. Plaintiff's Claim for Interference with Contract Must Fail

Plaintiff's argue that Plaintiff's storefront on Shopify has been removed as a result of Defendants' alleged interference with contractual relations. While Plaintiff blames the takedown notices, it was Plaintiff's failure to comply with the cease and

desist that led to the takedown of the storefront. Thus, any resulting damage or disruption to the alleged contractual relationship was a direct result of Plaintiff's own actions, not any alleged act by Defendants.

### G. Plaintiff Has Alleged No Wrongful Conduct as to Unfair Competition

Plaintiff's unfair competition claim fails because it is predicated upon the other, improper tort claims and that Plaintiff has failed to properly allege any conduct on the part of Defendants that was unlawful, unfair, or fraudulent. *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007). In its Opposition, Plaintiff audaciously contends – despite the fact that Defendants have a trademark for the Mark – that the takedown notices sent by Defendants in a clear attempt to protect the Mark were somehow fraudulent. Plaintiff's arguments are wholly without merit and this cause of action must fail. Further, Plaintiff failed to address their improper claim for disgorgement of profits and damages, and thereby concedes this issue.

### H. The State Law Claims Are Preempted By The DMCA

DMCA expressly preempts any state law interference claim based upon a DMCA takedown notice. *See Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1205-1206 (N.D. Cal. 2004). *Plaintiff's own allegations render its claims preempted and subject to dismissal.* Again, instead of addressing the merits of this argument and in an attempt to sidestep the validity of this argument, Plaintiff reduces it to being a "throw-away" argument and claims there was no meet and confer.

### III. CONCLUSION

As Plaintiff cannot possibly prevail on any of these state law causes of action, Defendants respectfully request that the Motion be granted, and the Third through Sixth Claims be dismissed in their entirety, without leave to amend, pursuant to Fed. R. Civ. Proc. 12(b)(6) and CCP § 425.16, and that Defendants be awarded their reasonable attorneys' fees and costs associated with bringing this Motion.

| | | |
|---|---|---|
| 1 | Dated: June 4, 2021 | TRESSLER LLP |
| 2 | | |
| 3 | | By: __/s/ *Michaela Battista Sozio*__ |
| 4 | | Michaela Battista Sozio, Esq. |
| 5 | | Attorneys for Defendants No Bad Days Enterprises, Inc. and Scott Sample |
| 6 | | |
| 7 | LA # 4830-6412-1581 (443-340) | |

# CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2021, a copy of foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE THE COMPLAINT** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: June 4, 2021                    TRESSLER LLP

                                       By:   /s/ *Michaela Battista Sozio*
                                             Michaela Battista Sozio, Esq.
                                             Attorneys for Defendants
                                             No Bad Days Enterprises, Inc. and
                                             Scott Sample