Omid E. Khalifeh, SBN 267340
Ariana Santoro, SBN 300767
Lara A. Petersen, SBN 318475
**OMNI LEGAL GROUP**
2029 Century Park E, Suite 400
Los Angeles, California 90067
Phone:      310.276.6664
Facsimile:   310.305.1550
omid@omnilegalgroup.com
ariana@omnilegalgroup.com
lara@omnilegalgroup.com

Attorneys for Plaintiff,
COVE USA LLC

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVE USA LLC, a California limited liability company, | Case No.: 8:20-cv-02314-JLS-KES |
| Plaintiff, | **PLAINTIFF'S/ COUNTERDEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| NO BAD DAYS ENTERPRISES, INCORPORATED, a California corporation; SCOTT SAMPLE, an individual; and DOES 1-10, inclusive, | Date: Friday, October 8, 2021 Time: 10:30 a.m. Courtroom: 10A Judge: Hon. Josephine L. Staton |
| Defendants. | |
| NO BAD DAYS ENTERPRISES, INCORPORATED, a California corporation, | |
| Counterclaimant, | |
| vs. | |
| COVE USA LLC, a California limited liability company; SEAN ARCHER TODD, an individual; and DOES 1-10, inclusive, | |
| Counterdefendants | |

# TABLE OF CONTENTS

I.     INTRODUCTION...................................................................1

II.    FACTUAL BACKGROUND...............................................5

    A.   Plaintiff's Business and Ornamental Use of Ubiquitous Phrases..................................................................................5

    B.   Defendants' Unlawful Interference with Plaintiff's Business.......6

    C.   Present Dispute..........................................................7

III.   THE HIGH STANDARD FOR GRANTING A PRELIMINARY INJUNCTION......................................................................7

IV.    ARGUMENT...................................................................8

    A.   Defendant Is Unlikely to Succeed on the Merits Because It Cannot Make a "Clear Showing" of a Likelihood of Confusion..............8

    B.   Defendant Does Not Establish Irreparable Harm....................11

        1.   Defendant's Delay in Seeking a Preliminary Injunction Belies Irreparable Harm................................................11

        2.   Defendant's Alleged Harm is Unfounded and Speculative.........................................................13

        3.   Defendant Does Not Establish That Monetary Relief Would Be Insufficient.....................................................14

    C.   The Balance of Equities Favors Plaintiff..........................14

    D.   A Preliminary Injunction Is Not in the Public's Interest..........15

    E.   Plaintiff Is Entitled to a Bond....................................16

V.     CONCLUSION.................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AK Metals, LLC v. Norman Indus. Materials, Inc.*,

    No. 12-cv-2595-IEG (WVG), 2013 WL 417323,

    (S.D. Cal. Jan. 31, 2013)……………………………………………4, 12

*Alto Velo Racing Club v. Rouleur Sports Grp., LLC*,

    No. 15-cv-02144, 2015 WL 5462055 (N.D. Cal. Sept. 17, 2015)…………...15

*AMF, Inc. v. Sleekcraft Boats*,

    599 F.2d 341 (9th Cir. 1979)……………………………………………8

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,

    750 F.2d 1470 (9th Cir. 1985)……………………………………………13

*Apple, Inc. v. Samsung Elecs. Co.*,

    877 F. Supp. 2d 838 (N.D. Cal. 2012)

    *rev'd on other grounds* 678 F.3d 1314 (Fed. Cir. 2012)……………………17

*Caribbean Marine Servs. Co. v. Baldridge*,

    844 F.2d 668 (9th Cir. 1988)……………………………………………...13

*Coffee Dan's Inc. v. Coffee Don's Charcoal Broiler*,

    305 F. Supp. 1210 (N.D. Cal. 1969)……………………………………...11

*Cuviello v. City of Vallejo*,

    944 F.3d 816 (9th Cir. 2019)……………………………………………...12

*Dahl v. Swith Distrib., Inc.*,

    No. 10-cv-00551-SJO (RZx), 2010 WL 1458957

    (C.D. Cal. April 1, 2010)………………………………………………..12, 14

*Glow Indus., Inc. v. Lopez*,

    252 F.Supp.2d 962 (C.D. Cal. 2002)……………………………………….14

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,

    736 F.3d 1239 (9th Cir. 2013)………………………….…..7, 8, 13, 14

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*,

4 F.3d 819 (9th Cir. 1993)……………………………………………………...14

*Johnson v. Couturier*,

572 F.3d 1067 (9th Cir. 2009)………………………………………………17

*Li v. Home Depot USA Inc.*,

No. 12-cv-2151-AG (RNBx), 2013 WL 12120065,

(C.D. Cal. Jan. 7, 2013)……………………………………………...4,12

*Lindeboom v. Plaster City Digital Post, LLC*,

No. 08-cv-8077, 2009 U.S. Dist. LEXIS 140499,

2009 WL 10670660 (C.D. Cal. Apr. 29, 2009)……………………………..15

*LTTB LLC v. Redbubble, Inc.*,

840 Fed. Appx. 148 (9th Cir. 2021)………………………………...8, 9, 10, 16

*LTTB LLC v. Redbubble, Inc.*,

385 F.Supp.3d 916 (N.D. Cal. Jul. 12, 2019)………………………..3, 8, 9, 10

*Lydo Enters., Inc. v. City of Las Vegas*,

745 F.2d 1211 (9th Cir. 1984)………………………………………………12

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,

762 F.2d 1374 (9th Cir. 1985)……………………………………...12, 15

*Pollution Denim & Co. v. Pollution Clothing Co.*,

547 F. Supp. 2d 1132 (C.D. Cal. 2007)……………………………………8

*Protech Diamond Tools v. Liao*,

No. 08-cv-3684-SBA, 2009 WL 1626587, at *6

(N.D. Cal. June 8, 2009)…………………………………………...11, 12

*Puma SE v. Forever 21*,

2017 U.S. Dist. LEXIS 211144 (C.D. Cal. Jun. 2, 2017)……………………..8

*R. Josephs Licensing, Inc. v. J.L.J., Inc.*,

No. 10-cv-1581 PSQ (CWx), 2010 WL 11595789

(C.D. Cal. Aug. 5, 2010)……………………………………………………11

*Sid Berk, Inc. v. Uniroyal, Inc.*,

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

425 F. Supp. 22 (C.D. Cal. 1977)……………………………………………….7

*Spark Indus., LLC v. Kretek Int'l, Inc.*,

No. CV 14-5726-GW (ASx), 2014 U.S. Dist. LEXIS 125538

(C.D. Cal. Aug. 28, 2014)………………………………………………….14

*Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*,

No. CV 05-0587 MHP, 2005 U.S. Dist. LEXIS 4581

(N.D. Cal. Mar. 23, 2005)………………………………………………..15

*Titaness Light Shop, LLC v. Sunlight Supply, Inc.*,

585 F. App'x 390 (9th Cir. 2014)……………………………………7, 13

*Vital Pharm., Inc. v. PhD Mktg., Inc.*,

No. 2:20-cv-06745-RSWL (JCx), 2020 WL 6545995,

(C.D. Cal. Nov. 6, 2020)………………………………………………4, 12

*Winter v. Natural Res. Def. Council, Inc.*,

555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)…………..2, 7, 8, 13, 14

**Statutes**

15 U.S.C. § 1116(a)…………………..………………………………………11

Fed. R. Civ. P. 65(c)………………………………………………………16

Trademark Modernization Act of 2020…………………………………....11

Plaintiff Cove USA LLC ("Plaintiff"), which operates a family-owned environmentally-friendly clothing brand, and counterdefendant Sean Todd (together with Plaintiff, "Counterdefendants"), respectfully files this Memorandum of Points and Authorities in Opposition to the Motion for Preliminary Injunction filed by Defendant No Bad Days Enterprises, Incorporated ("Defendant" and together with Scott Sample, "Defendants"), who has continually and unabashedly interfered with Plaintiff's business despite having no legal right to preclude Plaintiff's aesthetically functional use of a ubiquitous phrase.

## I.   <u>INTRODUCTION</u>

Inspired by Southern California's beautiful oceans and beaches and with an aim toward making a positive impact on the world, Plaintiff began offering ethically sourced clothing in furtherance of their humanitarian mission. *See* Dkt. 1, ¶¶ 1, 18-19. Each of Plaintiff's offerings is sustainable, stylish, comfortable and affordable. *See id.*, ¶ 18. Much of Plaintiff's apparel features ubiquitous phrases paired with beachy designs, including "RESPECT THE SEA" with a ship being taken over by an angry octopus, "WATCH OUT BELOW" with a skeleton peering over a surfboard that has a shark swimming directly underneath, and "THE SEA WILL PROVIDE" with a skeleton reeling in a tuna. *Id.*, ¶ 21.



**Respect the Sea Tee - Black**
★★★★★ 2647 reviews

**Watch Out Below Tee - Black**
★★★★★ 2647 reviews



**The Sea Will Provide Tee - Black**
★★★★★ 2647 reviews

One of Plaintiff's offerings features the commonly-used phrase "NO BAD DAYS" with a skeleton escaping the clutches of a shark's mouth. *Id.*, ¶ 22. Defendants have unabashedly filed takedown notifications en masse against these items on Plaintiff's storefront on Shopify's platform. *Id.*, ¶¶ 24, 26, 28. As a result of these bogus complaints, various of Plaintiff's products bearing the common phrase "NO BAD DAYS" have been removed from Plaintiff's Shopify storefront. *Id.* To address Defendants' anticompetitive conduct, Plaintiff initiated the present litigation, clearly setting forth six coherent and plausible claims for relief. *See*, *passim*, Dkt. 1. After Plaintiff filed its Complaint, Defendants filed a series of motions, including the present motion for preliminary injunction. *See* Dkt. 27. Under these facts, there is no basis to award the "extraordinary remedy" of a preliminary injunction. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

At issue in the present litigation is Plaintiff's aesthetically functional use of the common phrase "NO BAD DAYS," for which Defendants' claim copyright and trademark rights. *Id.*, ¶ 22. So common is the use of the ubiquitous NO BAD DAYS phrase on garments that a simple Google search reveals hundreds of items bearing the phrase that are not affiliated with Defendant. Some examples from page 1 of 9 of said search are exhibited below, and a more comprehensive list can be found on Exhibit B.



Notably, the Ninth Circuit recently affirmed a lower court decision based on nearly identical facts while holding that a trademark holder "merely cannot preclude others from displaying [a] pun on products, ***absent a showing of source-confusion***." *LTTB LLC v. Redbubble, Inc.*, 385 F.Supp.3d 916, 922 (N.D. Cal. Jul. 12, 2019). Another reason why Defendant has failed to demonstrate source-confusion is because Plaintiff marks its products with the COVE Brand proudly displayed where such brands are commonly found; on the front and over the heart as demonstrated below.



**FRONT**                    **FRONT**



**BACK**                    **BACK**

3

Here, because Defendant has provided no viable evidence of source-confusion, and Plaintiff clearly brands its products with the COVE brand prominently displayed, Defendant cannot preclude Plaintiff from displaying this ubiquitous phrase on its products in the manner asserted. Defendant has failed to make the requisite "clear showing" of likelihood of confusion let alone any a likelihood of success on the merits.

Defendant's claim for preliminary relief also fails because the alleged irreparable harm cannot be reconciled with Defendant's delay in bringing this motion. Indeed, while courts have found that as little as two to three months negated irreparable harm, it took Defendant nearly five months to file the present motion after Plaintiff initiated this action ; waiting from early December of 2020 to the end of April of 2021 before filing. *See Vital Pharm., Inc. v. PhD Mktg., Inc.*, No. 2:20-cv-06745-RSWL (JCx), 2020 WL 6545995, at *8 (C.D. Cal. Nov. 6, 2020); *Li v. Home Depot USA Inc.*, No. 12-cv-2151-AG (RNBx), 2013 WL 12120065, at *3 (C.D. Cal. Jan. 7, 2013); *AK Metals, LLC v. Norman Indus. Materials, Inc.*, No. 12-cv-2595-IEG (WVG), 2013 WL 417323, at *10 (S.D. Cal. Jan. 31, 2013). Defendant purports to support its claim of irreparable harm by pointing out four unauthenticated reviews of Plaintiff's products, while ignoring the overwhelming majority of Plaintiff's positive reviews. Defendant has also failed to demonstrate that any harm could not be compensated by monetary damages. In this manner, Defendant has failed to support any assertion of irreparable harm.

The balance of hardships strongly weighs in favor of denying this motion. On the one hand, Defendant will suffer no injury if denied this preliminary relief while, on the other, Plaintiff's business will be negatively impacted to the tune of hundreds of thousands of dollars if granted. Finally, because Defendant has demonstrated no actual or potential consumer confusion arising from Plaintiff's continued, ornamental use of the ubiquitous phrase "NO BAD DAYS" on its products, a preliminary injunction is not in the public's interest.

Defendant cannot establish any of the requisite elements for preliminary relief. Rather, Defendant is utilizing this motion as a litigatory weapon rather than an actual means to seek redress against any alleged injury. Accordingly, Defendant's motion for a preliminary injunction should be denied.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Business and Aesthetically Functional Use of Ubiquitous Phrases

Plaintiff offers ethically sourced clothing with a mission of protecting the environment and ultimately, making a difference in the world. *See* Dkt. 1, ¶¶ 1, 18. Local to Southern California, Plaintiff was inspired by the beauty of the oceans and beaches and sought to eliminate any business practices which harm the same. *See id.* To further its mission, Plaintiff packages and ships each order in 100% biodegradable parcels derived from plant-based materials and has also eliminated the use of harmful plastic in its manufacturing process. *Id.* Even more, Plaintiff donates 10% of its profiles to nonprofit organizations, including those dedicated to beach clean ups and ocean conservation efforts, and also uses its platform and other outreach campaigns to promote nonprofits. *See id.*, ¶ 19.

Plaintiff's apparel is not only sustainable but is also stylish, comfortable and affordable. *Id.*, ¶ 18. As its primary aesthetic, Plaintiff's garments incorporate ubiquitous phrases paired with beachy designs. *Id.*, ¶ 21. Many of these designs playfully conjure a beach/surfing lifestyle, as is prevalent in Southern California, through use of designs and common, beachy phrases. *Id.* As a few examples, Plaintiff has paired "RESPECT THE SEA" with a ship being taken over by an angry octopus, "ENDLESS SUMMER" with a surfboard leaning against a van, "LET'S GET HAMMERED" with a hammerhead shark, "THE SEA WILL PROVIDE" with a skeleton reeling in a large fish, and "LOCALS ONLY" with dolphins and a wave. *See id.*, ¶ 21, Ex. A. As is apparent with reference to Exhibit A appended to Plaintiff's Complaint, each of these designs is displayed across the back of Plaintiff's

garments, with Plaintiff's trademark "Cove" appearing prominently along the front. In this way, Plaintiff's use of the referenced phrases on the back of its garments is highly ornamental and never source-identifying.

### B.    Defendants' Unlawful Interference with Plaintiff's Business

NBD offers t-shirts, sweatshirts, hats, hoodies, bags, decals, keychains, and other products featuring the phrase "NO BAD DAYS." *See* Dkt. 1, ¶ 1. However, NBD was neither the first nor the only provider of apparel and other products bearing this ubiquitous phrase. *See id.*, ¶¶ 22-23, Ex. B. As shown, a simple Google search reveals hundreds of garments using the same ubiquitous phrase. Indeed, "NO BAD DAYS" is *commonly* used on a variety of products, especially apparel. *See id.* As with Plaintiff's use of the phrase, many third-party uses are purely ornamental and do not serve a trademark function. *See id.*, ¶ 22.

Defendants have purportedly acquired numerous trademark registrations for "NO BAD DAYS." *See* Dkt. 23, ¶ 14, Ex. A. Rather than utilize its trademark rights for their intended purpose, Defendants use these registrations as an anticompetitive weapon to shakedown third parties who are likely using the phrase in a lawful manner. *See id.*, ¶ 4. Unfortunately, owing to Plaintiff's commercial success, Plaintiff has been the most recent of Defendants' targets. *See* Dkt. 1, ¶ 2. For months, Defendants have been submitting baseless takedown claims through Shopify based on purported copyright and trademark rights in an effort to have various of Plaintiff's products incorporating the phrase "NO BAD DAYS" removed from Plaintiff's Shopify storefront. *See* Dkt. 1, ¶ 24. On or around October 9, 2020, Sample emailed Plaintiff accusing the Accused Products of trademark and copyright infringement. *See id.*, ¶ 25. Although Plaintiff promptly responded to Defendants' concerns, explaining the relevant law and demonstrating the fact that all of Plaintiff's products prominently display the Cove brand emblazoned on the front, Defendants refused to engaging in any sort of discussion with Plaintiff, thereby blatantly ignoring Plaintiff's valid defense to its allegations of infringement. *Id.*, ¶¶ 25-26. Instead,

Defendants continued to submit takedown claims through Shopify en masse. *Id.*

### C.    Present Dispute

Because Defendants' repeated takedown notices to Shopify so severely disrupted Plaintiff's relationship with Shopify, and business as a whole, Plaintiff initiated the present action. In its Complaint, Plaintiff provided six claims for relief to address Defendant's wrongful conduct and set the record straight with regard to Plaintiff's lawful use of a ubiquitous phrase. *See* Dkt. 1, *passim.* Since the filing of the Complaint, Defendants have continued to lodge takedown notices with Shopify, ultimately resulting in the entire removal of Plaintiff's storefront thereon. *See* Dkt. 33-1, ¶ 6. Defendants, however, did not stop there. Instead, Defendants proceeded to weaponize motion practice in a continued attempt to wrongfully interfere with Plaintiff's lawful business.

## III.   THE  HIGH  STANDARD  FOR  GRANTING  A  PRELIMINARY INJUNCTION

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter,* 555 U.S. at 24. "To obtain a preliminary injunction, [Defendant] 'must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in [its] favor, and that an injunction is in the public interest." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (quotation omitted).

This drastic remedy "may only be awarded upon a *clear showing* that [Defendant] is entitled to such relief." *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014). Given the drastic nature of this remedy, "[t]he existence of any debate or doubts on the record as to the merits of the claim or the power of the court to act will ordinarily bar the granting of a preliminary injunction." *Sid Berk, Inc. v. Uniroyal, Inc.*, 425 F. Supp. 22, 29 (C.D. Cal. 1977). In other words, "[t]o doubt is to deny." *Pollution Denim & Co. v. Pollution Clothing*

1  *Co.*, 547 F. Supp. 2d 1132, 1143 (C.D. Cal. 2007) (citations omitted).

2  **IV.   ARGUMENT**

3      **A.      Defendant Is Unlikely to Succeed on the Merits Because It Cannot
4  Make a "Clear Showing" of a Likelihood of Confusion**

5          In order to succeed on a motion for a preliminary injunction, Defendant must
6  make a "clear showing" that it is likely to succeed on the merits. *Puma SE v. Forever
7  21*, 2017 U.S. Dist. LEXIS 211144, at *4 (C.D. Cal. Jun. 2, 2017) (*quoting Winter*,
8  555 U.S. at 20). To prevail on a trademark infringement claim, the party alleging
9  infringement "must show that it is '(1) the owner of a valid, protectable mark, and
10  (2) that the alleged infringer is using a confusingly similar mark.'" *Herb Reed
11  Enters., LLC*, 736 F.3d at 1247 (citation omitted). Here, there is certainly no "clear
12  showing" that Defendant is likely to succeed on its claims, including because
13  Plaintiff is not using "NO BAD DAYS" in a confusingly similar manner.

14         Although Defendant identifies the eight factors relevant to determining
15  likelihood of confusion in the Ninth Circuit, as set forth by *AMF, Inc. v. Sleekcraft
16  Boats,* 599 F.2d 341 (9th Cir. 1979), Defendant incorrectly concludes that its analysis
17  of these factors establishes a "clear showing" of likelihood of confusion between the
18  parties' marks. In its motion, Defendant asserts that its "NO BAD DAYS" mark is
19  valid and protectable and that Plaintiff's goods are likely to cause confusion. *See
20  Dkt. 27 at 7-13.

21         However, Defendant completely disregards the recent Ninth Circuit opinion
22  in *LTTB LLC v. Redbubble, Inc.*, 840 Fed. Appx. 148 (9th Cir. 2021). In a case with
23  a nearly identical set of facts, the Ninth Circuit Court of Appeals made clear that the
24  determinative issue was whether the plaintiff "may rely on trademark law to obtain
25  an exclusive right to sell products…displaying the pun." *LTTB LLC v. Redbubble,
26  Inc.*, 385 F.Supp.3d at 920. The parties' use of the disputed phrase is demonstrated
27  below.

**LTTB's Use**         **Use on Redbubble**

   

The lower court held, and the Ninth Circuit affirmed, that the plaintiff "merely cannot preclude others from displaying the pun on products, absent a showing of source-confusion." *Id.* at 922. Here, because Defendant simply has not and cannot demonstrate any source-confusion, Defendant is not entitled to preliminary (or any) relief requiring Plaintiff to cease sale of products displaying the phrase "NO BAD DAYS."

More particularly, the lower court in *LTTB LLC v. Redbubble* pointed out that, just as in this case, the plaintiff obtained registration of "LETTUCE TURNIP THE BEET" for various products, including apparel, "only after submitting specimens in which the phrase appeared on product labels or 'hang tags,' as opposed to being displayed boldly across the face of the various products." *Id.* at 919. The defendant, on the other hand, sold products on its website which "merely display[ed] the pun" while not "otherwise includ[ing] any indication that they [were] produced, or licensed by, [the plaintiff]." *Id*. Identically, here, Defendant obtained its relevant registration via similar specimen, while Plaintiff merely displays the phrase on its products. *See* Exhibit A.

Importantly, the plaintiff in *LTTB LLC v. Redbubble* "presented no evidence to avoid the conclusion that the marks [] 'serve an aesthetic purpose wholly independent of any source-identifying function' and thus are aesthetically functional." *LTTB LLC v. Redbubble, Inc.*, 840 Fed. Appx. at 151 (*quoting Au-*

9

*Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006)). Defendant not only fails to provide any evidence that Plaintiff is using the mark in a source-identifying manner, Defendant acknowledges that Plaintiff has "prominently displayed [the phrase] on its [] goods." *See* Dkt. 27 at 10. Notably, Plaintiff has never used the phrase on hang tags, labels, or in any manner so as to indicate source. Instead, the phrase used by Plaintiff is "primarily aesthetic…not source-identifying." *LTTB LLC v. Redbubble, Inc.*, 840 Fed. Appx. at 152. Because "the trademark holder cannot prevent others from using the pun in contexts that do not imply source," Defendant, here, has not made a "clear showing" of likelihood of confusion. *See LTTB LLC*, 385 F.Supp.3d at 917.

In addition, the lack of a "clear showing" of confusing similarity between Defendant's mark and Plaintiff's use of the phrase is further made apparent by the fact that Defendant was compelled to doctor images to create the impression of similarity, where none otherwise exists. Specifically, in its motion (and counterclaims), Defendant presented side-by-side images of Plaintiff's "NO BAD DAYS" shirt as advertised on its website and social media and photoshopped images of Defendant's shirts, as shown below. *See* Dkt. 27 at 4; *see also* Declaration of Sean Todd ("Todd Decl."), ¶¶ 3-5.



Nowhere in any of its marketing, including on its website and social media, has Defendant ever displayed such images or even, any images displaying a similar aesthetic. *See* Todd Decl., ¶ 7. On the other hand, Plaintiff almost exclusively utilizes

10

the aesthetic of the back of an individual with beachy scenes in the background, for its marketing efforts. *Id.* at ¶ 6. It is clear Defendant falsified these images to make dissimilar uses of a ubiquitous phrase appear confusingly similar. Overall, Defendant has failed to make a "clear showing" of likelihood of confusion and, therefore, a likelihood to succeed on the merits of its claims.

> **B.    Defendant Does Not Establish Irreparable Harm**
>
> > **1.    Defendant's Delay in Seeking a Preliminary Injunction Belies Irreparable Harm**

Defendant asserts that it is entitled to a presumption of irreparable harm upon a finding of likelihood of success on the merits based on the recently passed Trademark Modernization Act of 2020 (the "TMA"). Dkt. 27 at 13. However, it is unclear whether the particular amendment applicable here (15 U.S.C. § 1116(a)) went into effect immediately (on December 27, 2020), or goes into effect on December 27, 2021.  Assuming arguendo Defendant is entitled to a presumption of irreparable harm, Plaintiff can rebut that presumption decidedly by showing that Defendant long-delayed in seeking a preliminary injunction. *See R. Josephs Licensing, Inc. v. J.L.J., Inc.*, No. 10-cv-1581 PSQ (CWx), 2010 WL 11595789, at *2 (C.D. Cal. Aug. 5, 2010) ("Even where that presumption applies, however, a [non-moving party] may rebut it by demonstrating that the [moving party] unduly delayed in bringing its motion for a preliminary injunction."); *Protech Diamond Tools v. Liao*, No. 08-cv-3684-SBA, 2009 WL 1626587, at *6 (N.D. Cal. June 8, 2009) ("[Moving party's] undue delay in filing its preliminary injunction motion rebuts its assertion of irreparable injury.").

"Irreparable injury has been defined as that injury which is certain and great." *Coffee Dan's Inc. v. Coffee Don's Charcoal Broiler*, 305 F. Supp. 1210, 1216 (N.D. Cal. 1969) (citation omitted). While Plaintiff initiated the present action in early December 2020, Defendant delayed until the end of April 2021 to seek preliminary injunctive relief. Such delay undercuts any claim that Defendant will suffer

irreparable harm. "A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect [Defendant's] rights. By sleeping on its rights, [Defendant] demonstrates the lack of need for speedy action…" *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213-14 (9th Cir. 1984) (citations omitted). In other words, an "unexplained delay in seeking 'emergency' injunctive relief undercuts a claim that an injunction is necessary to prevent immediate and irreparable injury." *Dahl v. Swith Distrib., Inc.*, No. 10-cv-00551-SJO (RZx), 2010 WL 1458957, at *3 (C.D. Cal. April 1, 2010) (citation omitted); *see also Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (finding that a delay in filing for preliminary relief "implies a lack of urgency and irreparable harm"). Indeed, "delay alone [may be] sufficient to undermine [Defendant's] claim of immediate, irreparable harm." *Protech Diamond Tools*, 2009 WL 1626587, at *6; *see also Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (affirming denial of preliminary injunction based on delay alone, without assessing the likelihood of success on the merits).

Courts in this and other districts have found delays as short as **two to three months** in seeking preliminary injunctive relief sufficient to show that a moving party is not entitled to such drastic relief. *See Vital Pharm., Inc. v. PhD Mktg., Inc.*, 2020 WL 6545995, at *8 (two-month delay weighed against irreparable harm, preliminary injunction denied); *Li v. Home Depot USA Inc.*, 2013 WL 12120065, at *3 (three-month delay weighed against irreparable harm, preliminary injunction denied); *AK Metals, LLC v. Norman Indus. Materials, Inc.*, 2013 WL 417323, at *10 (two-month delay weighed against irreparable harm, preliminary injunction denied).

Here, Defendant's delayed in seeking a preliminary injunction against Plaintiff's use of a ubiquitous phrase for nearly five months after this action was filed. This delay clearly exceeds delays previously found sufficient to deny motions for preliminary injunction. Moreover, it was Plaintiff, not Defendant, who initiated the present action after Defendant filed the aforementioned takedown claims. *See*

Dkt. 1. Defendant is apparently content to allow Plaintiff to continue its use of the common phrase "NO BAD DAYS" ornamentally on apparel. Thus, Defendant cannot now claim that Plaintiff's use of this phrase is so injurious as to warrant a preliminary injunction here.

### 2. Defendant's Alleged Harm is Unfounded and Speculative

The mere "possibility of irreparable harm" is insufficient. *Winter*, 555 U.S. at 22. Indeed, "[t]o establish a likelihood of irreparable harm, conclusory or speculative allegations are not enough." *Titaness Light Shop, LLC.*, 585 Fed. Appx. at 391 (*citing Herb Reed*, 736 F.3d at 1250); *see also Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."); *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (finding irreparable harm not established by statements that "are conclusory and without sufficient support in facts"). Although a preliminary injunction may be ordered to prevent harm to a moving party's reputation and goodwill, reputational harm is not found based on "pronouncements [that] are grounded in platitudes rather than evidence." *Herb Reed*, 736 F.3d at 1250.

Defendant provides purported "evidence" of the "poor quality" of Plaintiff's products in an attempt to demonstrate that Defendant's reputation will be damaged by said "poor quality of Cove's products." *See* Dkt. 27 at 14. In particular, Defendant points to four unauthenticated reviews of more than 2,600 glowing reviews of Plaintiff's t-shirts. *See* Todd Decl., ¶ 8, Ex. C. In fact, of these thousands of reviews, 99% are four out of five stars and 94% are five out of five stars. *Id.* As such, Defendant's conclusion that "there is actual danger that consumers will begin mistakenly associating the poor quality of Cove's products with" Defendant is unfounded. Defendant fails to establish that it has been or is likely to be harmed by Plaintiff's use of "NO BAD DAYS" on its products and is, therefore, not entitled to preliminary relief.

13

### 3.   Defendant Does Not Establish That Monetary Relief Would Be Insufficient

Finally, to the extent there has been any harm to Defendant, it can be measured by damages, rendering a preliminary injunction inappropriate. *See Dahl*, 2010 WL 1458957, at *11 (denying preliminary injunction because "Plaintiff [] failed to provide any evidence of irreparable harm he will suffer [and] any harm to his sales volume that Plaintiff may suffer can be remedied with monetary damages in the event Plaintiff is successful at trial"); *see also Herb Reed*, 736 F.3d at 1249-50 ("[the moving party] must 'establish that remedies available at law, such as monetary damages, are inadequate to compensate' for the injury arising from [Plaintiff's] continuing allegedly infringing use of the mark.") (citation omitted). Here, Defendant has not established that monetary remedies are inadequate to compensate if it ultimately succeeds at trial.

### C.   The Balance of Equities Favors Plaintiff

A party seeking a preliminary injunction must establish that the balance of equities tips in its favor. *Winter*, 555 U.S. at 22. "In evaluating the balance of hardships a court must consider the impact of granting or denying a motion for preliminary injunction will have on the respective enterprises." *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 826 (9th Cir. 1993); *see also Glow Indus., Inc. v. Lopez*, 252 F.Supp.2d 962, 1004 (C.D. Cal. 2002) (finding balance of hardships favored [non-moving party] where [moving party] failed to prove irreparable harm). "At the preliminary injunction stage, the balance-of-hardships question is not whether the defendant will suffer hardship from being enjoined from engaging in unlawful conduct. Instead, the balance of hardships inquiry asks what kind of hardship the defendant or plaintiff will suffer if an injunction is wrongly issued or denied." *Spark Indus., LLC v. Kretek Int'l, Inc.*, No. CV 14-5726-GW (ASx), 2014 U.S. Dist. LEXIS 125538, at *59-60 (C.D. Cal. Aug. 28, 2014) (internal citations omitted).

Denying a preliminary injunction will not result in any (much less, irreparable) harm to Defendant's reputation and goodwill because, as explained above, there is no evidence that Plaintiff is infringing Defendant's mark nor that any association with Plaintiff would necessarily cast Defendant or its mark in a negative light. Hundreds of instances of this phrase predate Plaintiff's use on garments, and yet to date, none have stifled Defendant enough to take similar action against them.

Courts have held that where a party believes in good faith that its conduct is not infringing, a non-moving party's continued use of a mark will not tip the balance against it. *See Alto Velo Racing Club v. Rouleur Sports Grp., LLC*, No. 15-cv-02144, 2015 WL 5462055, at *7 (N.D. Cal. Sept. 17, 2015) (where "[t]he nature of [the movant's] mark is in dispute…use alone does not causing the equities to favor [movant]"). On the other hand, Plaintiff will suffer significant harm if this motion is granted and Plaintiff is forced to halt any use of the common phrase "NO BAD DAYS" on its website and social media pages, thereby costing significant money to ensure compliance, as well as, resulting in a substantial loss of sales from the accused products. Under these facts, this motion should be denied on this factor alone. *See, e.g., Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, No. CV 05-0587 MHP, 2005 U.S. Dist. LEXIS 4581, at *48 (N.D. Cal. Mar. 23, 2005) ("Against the slim evidence that plaintiff will suffer any substantial hardship under the status quo and the absence of any suggestion that defendant adopted its mark in bad faith, the court must weigh the hardship that defendant would suffer if it were forced to halt all sales of [its] wine.").

### D.    A Preliminary Injunction Is Not in the Public's Interest

"The basic function of a preliminary injunction is to preserve the *status quo ante litem* pending a determination of the action on the merits." *Oakland Tribune*, 762 F.2d at 1377. "In trademark cases, the public's interest is in the right 'not to be deceived or confused.'" *Lindeboom v. Plaster City Digital Post, LLC*, No. 08-cv-8077, 2009 U.S. Dist. LEXIS 140499, 2009 WL 10670660, at *12 (C.D. Cal. Apr.

29, 2009) (citation omitted). Here, enjoining Plaintiff to prevent confusion serves no purpose because, consumers are not likely to be deceived by Plaintiff's ornamental use of a ubiquitous phrase. Rather, consumers purchase Plaintiff's products bearing "NO BAD DAYS" due to the aesthetic function of the phrase and not because of any association with Defendant. *See LTTB LLC v. Redbubble, Inc.*, 840 Fed. Appx. at 150-51.

Defendant purports to provide evidence that "there is ***already*** confusion in the marketplace" to support its claim that an injunction is in the public's interest. *See* Dkt. 27 at 15 (emphasis in original). Defendant's "evidence" consists of a bare assertion in its motion that a customer complained on Plaintiff's online storefront that free stickers did not accompany his purchase as was advertised. *See id.* at 12. Defendant maintains that its own website advertises free stickers and that, therefore, the customer believed he was purchasing Defendant's product when he, in fact, purchased Plaintiff's product. *See id.* at 12-13. However, there can be little doubt that this particular customer was well aware that he was purchasing Plaintiff's products, not Defendant's, because Plaintiff also advertised free stickers upon a subscription to its email list. *See* Todd Decl., ¶ 9, Ex. D. Thus, Defendant's sole evidence of "actual confusion" fails to support the existence of potential or actual confusion.

Because Defendant has not demonstrated any cognizable risk of confusion, the public interest will be served, and the status quo maintained, by denial of Defendant's motion for a preliminary injunction.

### E.      Plaintiff Is Entitled to a Bond

Fed. R. Civ. P. 65(c) provides that the Court may issue a preliminary injunction "only if [movant] gives security in an amount that the court considers proper to pay the costs and damages sustained" by Plaintiff if it is wrongfully enjoined. In its motion, Defendant summarily concludes that "[b]ecause [Plaintiff's] use of the Mark is itself illegal, the enjoining of such use pending trial will not create

16

a realistic likelihood of harm" and therefore, "the Court should waive any need for a bond in this case." *See* Dkt. 27 at 15. This conclusion ignores the harm Plaintiff will face if the Court later determines the injunction was improvidently granted. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("The district court may dispense with the filing of a bond only when it concludes there is no realistic likelihood of harm to the [non-movant] from enjoining his or her conduct.")

As discussed above, Defendant cannot establish a likelihood of success on the merits of a trademark infringement claim based on Plaintiff's ornamental use of the ubiquitous phrase "NO BAD DAYS." Moreover, Plaintiff will be significantly damaged should a preliminary injunction issue, including the costs of recalling its products, storing those products pending resale, and lost sales during the pendency of the injunction. Indeed, Plaintiff has earned hundreds of thousands of dollars as a result of its sale of the accused products. As such, because there is a high likelihood of harm to Plaintiff if its conduct is enjoined, an appropriate bond is clearly warranted and further briefing regarding the amount of such bond should be granted. *See Apple, Inc. v. Samsung Elecs. Co.*, 877 F. Supp. 2d 838, 918 (N.D. Cal. 2012) *rev'd on other grounds* 678 F.3d 1314 (Fed. Cir. 2012) (citation and internal quotations omitted) ("[b]ecause the amount of the bond is an upper limit on an injured party's redress for a wrongful injunction,…'district courts should err on the high side.'")

While Plaintiff asserts that the Court need not reach the question of whether a bond is required – as Defendant cannot meet its high burden to show that a preliminary injunction should issue in the first place – if the Court is inclined to grant Defendant's motion, Plaintiff requests that Defendant be ordered to first present a suitable bond to address these damages.

## V.    CONCLUSION

Because Defendants have failed to meet their burden, have not shown Plaintiff's use of the ubiquitous phrase is anything but lawful, as well as for the

myriad of reasons set forth above, Plaintiff respectfully submits that Defendant's Motion should be denied in its entirety.

RESPECTFULLY SUBMITTED this 17th day of September, 2021.

OMNI LEGAL GROUP

/Omid E. Khalifeh/
Omid E. Khalifeh
Ariana Santoro
Lara A. Petersen
Attorneys for
Plaintiff/Counterdefendants,
Cove USA LLC and Sean Todd

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION