Michaela Battista Sozio, Esq., SBN 179148
msozio@tresslerllp.com
TRESSLER LLP
6100 Center Drive, Suite 1175
Los Angeles, California 90045
Telephone: (310) 203-4800
Fax: (323) 486-2704

Attorneys for Defendants
No Bad Days Enterprises, Inc. and Scott Sample

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVE USA LLC, a California limited liability company,<br><br>           Plaintiff,<br><br>    v.<br><br>NO BAD DAYS ENTERPRISES INCORPORATED, a California corporation; SCOTT SAMPLE, an individual; and DOES 1-10, inclusive,<br><br>           Defendants. | Case No. 8:20-cv-02314-JLS-KES<br><br>**COUNTERCLAIMANT'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:         October 8, 2021<br>Time:        10:30 a.m.<br>Courtroom.: 10A<br>Judge:       Hon. Josephine L. Staton |

Counter-Claimant Defendant No Bad Days Enterprises, Inc. ("NBD") hereby submita this Reply in support of its Motion for Preliminary Injunction against Counter-Defendant Cove USA LLC.

/ / /

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This is a straightforward dispute. As alleged in the Complaint, Defendant/Counter-Claimant No Bad Days Enterprises, Inc. ("NBD") and Plaintiff/Counter-Defendant Cove USA LLC ("Cove") are business competitors that both offer beach-inspired clothing. NBD's clothing prominently features the phrase "NO BAD DAYS," (the "Mark"), a recognizable mark for which NBD holds no less than six active Federal trademark registrations, including an incontestable registration issued in 2008 specifically covering clothing.

Cove began selling clothing, primarily through Shopify, which features the "NO BAD DAYS" Mark in or before October 2020. On or about October 9, 2020, NDB emailed Cove, notifying Cove that certain of its products were infringing NBD's Mark. Cove refused to voluntarily remove the infringing articles, NBD submitted notice of infringement to Shopify, alerting Shopify to the dispute. Pursuant to Shopify's terms of use, Shopify removed the accused products from its platform.

Cove continues to blatantly disregard NDB's intellectual property rights and appears to justify its ongoing conduct by claiming that Cove is an "environmentally-friendly clothing brand" that is just "aesthetically" using a "ubiquitous phrase" of "No Bad Days".  This position underscores Cove's disregard for NBD's brand. Indeed, not only is Cove using "No Bad Days" on their products, but Cove's products bear a striking similarity to NBD's own designs (see, e.g. Dkt. 27 at 5:19-25).  Cove also attempts to argue that the doctrine of "aesthetic functionality" should allow them unfettered use of NBD's Mark. However, Cove is not just "aesthetically" using the NO BAD DAYS Mark; it is deliberately infringing on their competitor's mark.

In addition, despite the fact that this Court has already dismissed Cove's claims for alleged tortious interference pursuant to NBD's anti-SLAPP motion, Cove nonetheless persists with the fallacy that NBD had "unlawfully interfered" with

Cove's Business and that NDB is attempting to use the Marks as an "anticompetitive weapon to shakedown third parties." (Oppo. at 6:15-16). Cove, however, conveniently forgets that NDB -in an attempt to protect its Mark- sent a cease and desist request to Cove, which Cove intentionally choose to disregard. Further, it was Cove who raced to the courthouse to file its frivolous motion. Cove cannot play the victim while continuing to profit of its misuse of NBD's Mark.

Here, NBD is seeking a preliminary injuction to prevent Cove its ongoing efforts to trade on NBD's success and prevent Cove from selling products with the NO BAD DAYS Mark. A party seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.,* 609 F.3d 975, 982 (9th Cir. 2010). In its moving papers, NBD has established each of these prongs. NBD has further demonstrated that all eight of *Sleekcraft* factors either favor NBD or are not applicable. In its Opposition, Cove has failed to set forth any legal or factual support that would support a denial of the preliminary injunction.

A preliminary injunction against Cove is warranted. NBD unquestionably has a valid, protectable trademark, as evidenced by its incontestable registration. Moreover, Cove's use of the identical mark on its own clothing and decals creates a likelihood of consumer confusion. Finally, NBD is entitled to a presumption of irreparable harm pursuant to recently amended 15 U.S.C. § 1116.

Cove should not be permitted to continue to profit off of NDB's brand and designs. Cove's continued use of the identical NO BAD DAYS Mark on Cove's clothing and decals creates a likelihood of consumer confusion and NBD is entitled to a presumption of irreparable harm. A preliminary injunction precluding Cove from selling good with the NO BADY DAYS Mark pending trial is warranted.

## II. ARGUMENT

### A. Cove Incorrectly Claims that its use of NBD's Mark is Merely a "Ubiquitous" Phrase and that Cove's Use of the Mark is "Aesthetically Functional"; NBD's Mark is Clearly Enforceable

NBD's trademark claims against Cove arise under 15 U.S.C. § 1114, and common law, for infringement of NBD's federally registered trademark "NO BAD DAYS." For each claim, the trademark owner is required to show (1) it has a valid, protectable trademark, and (2) that the alleged infringer is using a mark that creates a likelihood of consumer confusion. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046-47 n.8 (9th Cir. 1999).

In its Opposition, Cove contends that NBD has made no "clear showing" that NDB is likely to succeed on the merits. In support of this position, Cove relies on *LTTB LLC v. Redbubble, Inc.,* 840 Fed.Appx. 148 (9th Cir. 2021). *LTTB* involved a dispute among competitors who were both using the pun "Lettuce Turnip the Beet" on their respective t-shits and tote bags. The Ninth Circuit affirmed the lower court's ruling that plaintiff "merely cannot preclude others from displaying the pun on products, absent a showing of source confusion." *LTTB, LLC v. Redbubble*, 385 F.Supp.3d 916, 922. Cove, relying on *LTTB,* then makes the illogical leap that the issues in the case at bar are "identical" to the issues in *LTTB* and therefore NBD has not demonstrated any source confusion. *LTTB* is inapposite and Cove's reliance on that case is misplaced.

Here, the NO BAD DAYS Mark is not some generic pun that NBD is trying to prevent others from using. The doctrine of aesthetic functionality does not apply here. As an initial matter, Moving Party's company name is NO BAD DAYS, which is the same as the Mark. In *LTTB,* neither of the competitors were identified by the "Lettuce Turnip the Beet" pun.

1  Further, and more significantly, NBD has a valid and legal protectable trademark, which was not the case in *LTTB*. "It cannot be disputed that competitors would be unable to sell products bearing the phrase *if LTTB's marks were protected*." *Id.* at 150.  The Ninth Circuit held: "Unlike copyright and patent laws, trademark laws are '*not* designed to protect originality or creativity', **but to 'prevent competitors from copying a 'source-identifying mark'**." 840 Fed.Appx. at 151-152 (*citing Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23,2 7 (2003), quoting *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 163-664), (emphasis added). The Ninth Circuit went onto conclude: "LTTB's marks do not function as trademarks because they are aesthetic only *and do not identify the source of the goods. The allegedly infringing activity dies not deceive or mislead consumers about the source of the goods …" LTTB,* 840 Fed.Appx. at 152.

As set forth in the moving papers, Scott Sample started selling products bearing the Mark in 2001. These products generated a national following for his brand and he eventually incorporated the family business as No Bad Days Enterprises, Inc. in 2012.  NBD and its licensees have sold millions of units of clothing and other items under the Mark, including t-shirts, swim trunks, dresses, decals, mugs, keychains, and license plate holders. *Id.* Products bearing the Mark are distributed to national and regional chains. The NO BAD DAYS Mark is unquestionably an important component of NBD's success and holds tremendous value.

Thus, unlike *LTTB,* here NBD's Marks *do* function as trademarks. Cove's improper use of NDB's Mark serves to confuse "the public into mistakenly purchasing the product in the belief that the product is the product of a competitor", NBD.  *Id.* at 152 (citing *International Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 912, 919 (9th Cir. 1980).  Unlike *LTTB,* NBD is not trying to prevent others from using a ubiquitous pun. Unlike *LTTB,* Cove is confusing the public into

4

mistakenly purchasing a product that is believed to a product of Cove's competitor, NBD. Cove's reliance on *LTTB* is clearly misplaced.

## B. The NO BAD DAYS MARK is Valid and Protectable

NBD's trademark claims against Cove arise under 15 U.S.C. § 1114, and common law, for infringement of NBD's federally registered trademark "NO BAD DAYS." For each claim, the trademark owner is required to show (1) it has a valid, protectable trademark, and (2) that the alleged infringer is using a mark that creates a likelihood of consumer confusion. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046-47 n.8 (9th Cir. 1999). As to the first element, NBD has demonstrated that has a valid, protectable trademark.

When a trademark registration becomes incontestable, subject to a few select defenses, the "validity and legal protectability, as well as the [registrant's] ownership therein, are all conclusively presumed." *Brookfield*, 174 F.3d at 1047 n.10. Here, NBD holds multiple federal registrations for the Mark, including No. 3,396,343, registered on March 11, 2008. That registration has now reached incontestable status, and therefore constitutes "conclusive evidence" of the validity of the Mark and of NBD's exclusive right to use the Mark in commerce. See 15 U.S.C. § 1115(b). Likewise, NBD's other current registrations for the Mark create a presumption of validity. *See Boldface Licensing + Branding v. By Lee Tillett*, Inc., 940 F. Supp. 2d 1178, 1186 (C.D. Cal. 2013) ("Federal registration of a trademark creates a presumption that the mark is valid, and where the PTO registers a mark without proof of secondary meaning, 'the presumption is that the mark is inherently distinctive.' This shifts the burden to the alleged infringer to demonstrate that the mark is not protectable.") (*citing Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113-14 (9th Cir. 2010)).

Here, as noted above, Cove attempted – but failed – to demonstrate that NBD's Mark is not protectable. NBD's registration has reached incontestable status and

Cove's claims that it is only functional and not protectable is without any factual or legal support.

### C. Cove's Goods Are Likely to Cause Confusion

With respect to the second element, NBD has also properly demonstrated that Cove's use of the Mark creates a likelihood of confusion among consumers.

The Ninth Circuit has identified eight factors relevant to determining likelihood of confusion: (1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). In evaluating these eight factors, the Court should examine the "total effect of [Cove]'s product and package on the eye and mind of an ordinary purchaser." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383-84 (9th Cir. 1987).

Here, as set forth in the moving papers, each of the *Sleekcraft* factors either supports a determination that Cove's goods are likely to cause confusion or is inapplicable to the parties' directly competing goods and market overlap. In their Opposition, Cove is unable to refute a single one of these factors. Instead, Cove argues that there can be no clear showing of likelihood of confusion based on *LTTB* and Cove's claim that *LTTB* is any way analogous to the case at bar. As discussed above, the NBD Mark is being infringed and this is not a case where Cove is lawfully using a ubiquitous phrase.

On the contrary, as set forth in the moving papers, Cove is using NBD's Mark is a confusingly similar manner.

### D. NBD Has Met the Legal Standard for a Preliminary Injunction

In the trademark context, 15 U.S.C. § 1116(a) specifically authorizes courts to grant preliminary relief "to prevent the violation of any right of the

registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."

A party seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.,* 609 F.3d 975, 982 (9th Cir. 2010). In deciding a motion for a preliminary injunction, a court has broad discretion to consider all arguments and evidence, including hearsay and evidence that is otherwise inadmissible. *See, e.g., Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

Here, NDB is likely to succeed on the merits for the reasons already set forth above and in detail in the moving papers: NDB has a valid and enforceable trademark and there is a likelihood of confusion with Cove's sales of products that are virtually identical to NBD's products.

Additionally, NDB is entitled to a presumption of irreparable harm. In its Opposition, however, Cove contends that NBD allegedly "delayed" several months in seeking a preliminary injunction, and therefore the harm must not be irreparable. While it was Cove and not NBD that "won the race to the courthouse", that is not tantamount to NBD being "content" with Cove's ongoing use of the NO BAD DAYS Mark. On the contrary, NBD took all appropriate steps to have Cove's infringing products taken off of the Shopify platform – which is the basis for Cove initiating the lawsuit against NBD. *NBD proceeded with filing its Counter-Claim and seeking a preliminary injunction only after it became apparent that the takedown notices were not successful in preventing Cove from its ongoing efforts to profit off of NBD's Mark.* Thus, NBD acted promptly, and Cove's allegations of delay are unsupported.

Cove next argues that NBD's harm is purportedly "unfounded and speculative." Cove, however, completely fails to address the fact that NBD is entitled

to a rebuttable presumption of irreparable harm as NBD has established the likelihood of confusion between NBD's Mark and Cove's use of that Mark. 15 U.S.C. § 1116. As of December 2020, Congress specifically amended Section 1116 to provide: "A plaintiff seeking any such injunction **shall be entitled to a rebuttable presumption of irreparable harm** upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order." 15 U.S.C. § 1116(a) (emphasis added); *see also See* Pub. L. 116-260, § 226, 134 Stat. 2208 (2020).

Thus, Congress thus overrode this circuit's precedents mandating affirmative evidence of such harm and created an *automatic presumption* that irreparable harm exists. Because NBD established a likelihood of success on the merits as shown above, it is therefore entitled to a presumption that irreparable harm also exists.

Cove also contends that NBD has not established that monetary relief would be insufficient. However, replete through the moving papers are arguments and evidence that demonstrate that monetary relief would not be sufficient if Cove is permitted to dilute the NBD Mark and sell its infringing items.

Finally, the balance of equities strongly favor NBD. NBD's loss of consumer goodwill outweighs any potential losses arising from Cove's inability to use the Mark until a decision on the merits, particularly as Cove can continue to sell its goods without the infringing use of the Mark. Indeed, "[t]he loss of sales dependent on the continued use of an infringing product does not constitute irreparable harm from which the infringer should be shielded." *Mytee Prods. v. Harris Research, Inc.*, No. 06cv1854 CAB, 2010 U.S. Dist. LEXIS 148461 at *2 (S.D. Cal. June 25, 2010). In its Opposition, Cove contends that it is the one that will be harmed if it is required to stop its infringing conduct. Indeed, Cove has the audacity to argue that it will cost Cove substantial money to stop using the NO BAD DAYS Mark and to cease selling

the infringing products would result in a substantial loss of sales to Cove. However, as Cove's use of the Mark is itself illegal, the enjoining of such use pending trial will not create a realistic likelihood of harm.

For these reasons, the motion for preliminary injunction should be granted.

### III.   CONCLUSION

As NBD satisfies the four requirements for a preliminary injunction, NBD respectfully requests that this Court enter an Order that preliminarily enjoins and restrains Cove, its agents, servants, officers, directors, owners, employees, representatives, attorneys, and all others acting under, or with, them, from:

- Using the NO BAD DAYS Mark or any other mark confusingly similar to the Mark alone or in combination with other words, as a trademark, trade name, component or otherwise, to market, promote, advertise or identify Cove's goods or services;
- Using the designation "No Bad Days" or any colorable imitation thereof upon any product or on Cove's websites, advertising or promotional material, either in print or broadcast or electronic form or other forms either separately or compositely with other words, symbols, or devices as a trademark with any products including clothing or decals;
- Holding themselves out as the owner of, or a company authorized to use, as part of its name, the Mark, or a name confusingly similar thereto; and
- Using any words, names, styles, titles or marks, which create a likelihood of injury to the business reputation of NBD, or a likelihood of misappropriation or dilution of NBD's trademarks and the goodwill associated therewith.

/ / /

/ / /

Dated: September 30, 2021                    TRESSLER LLP

                                  By: ___/s/ *Michaela Battista Sozio*___
                                        Michaela Battista Sozio, Esq.
                                        Attorneys for Defendants
                                        No Bad Days Enterprises, Inc. and
                                        Scott Sample

LA # 4844-6488-8829 (443-340)

# CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2021, a copy of foregoing **COUNTER-CLAIMANT'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated:  September 30, 2021         TRESSLER LLP

                                 By:   /s/ *Michaela Battista Sozio*
                                      Michaela Battista Sozio, Esq.
                                      Attorneys for Defendants
                                      No Bad Days Enterprises, Inc. and
                                      Scott Sample